**Bruce L. Campbell**, OSB No. 925377
bruce.campbell@millernash.com
**John C. Clarke**, OSB No. 153245
john.clarke@millernash.com
**MILLER NASH GRAHAM & DUNN LLP**
3400 U.S. Bancorp Tower 111 S.W. Fifth Avenue
Portland, Oregon 97204
Phone: 503.224.5858

**Christopher Knauf**, admitted *pro hac vice*
ck@drlcenter.org
**Anthony Pinggera**, admitted *pro hac vice*
acp@drlcenter.org
**DISABILITY RIGHTS LEGAL CENTER**
1541 Wilshire Boulevard, Suite 400
Los Angeles, California 90017
Phone: 213.736.1031

**Amy Robertson**, admitted pro *hac vice*
arobertson@creeclaw.org
**Timothy Fox**, admitted *pro hac vice*
tfox@creeclaw.org
**Pilar Gonzales Morales**, admitted *pro hac vice*
pgonzalez@creeclaw.org
**CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER**
1245 E. Colfax Avenue, Suite 400
Denver, Colorado 80218
Phone: 303.757.7901

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |
|---|---|
| PHILIP WOLFE, KATALINA DURDEN, MELISSA LEWIS, JUNIPER SIMONIS, individually, and DISABILITY RIGHTS OREGON, an Oregon nonprofit and advocacy corporation,<br><br>                  Plaintiffs,<br><br>         v.<br><br>CITY OF PORTLAND, a municipal corporation; TED WHEELER, in his official capacity; CHUCK LOVELL, in his official capacity; MULTNOMAH COUNTY, a political subdivision of the State; MICHAEL REESE, in his official capacity; TERRI DAVIE, in her official capacity; CHAD WOLF, in his individual capacity; ALEJANDRO MAYORKAS, in his official capacity; DONALD WASHINGTON, in his individual and official capacity; and DOES 1-100, individual and supervisory officers of local, state, and federal government,<br><br>                  Defendants. | Case No. 3:20-cv-01882-SI<br><br><br>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION<br><br><br>ORAL ARGUMENT REQUESTED |

## I.    LR 7-1 CERTIFICATION

In accordance with LR 7-1, counsel for Plaintiffs certifies that they conferred with counsel for Defendants by telephone on January 29, 2021, and e-mail correspondence, about this motion for preliminary injunction and were unable to resolve the issues in dispute. Defendants oppose this motion.

Page 2 -    Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

## II.    MOTION

In accordance with Federal Rule of Civil Procedure 65, Plaintiffs Philip Wolfe, Katie Durden, Melissa Lewis, Juniper Simonis, and Disability Rights Oregon ("DRO") (collectively, "Plaintiffs") move for a preliminary injunction against Defendants City of Portland; Mayor Ted Wheeler; Chief Chuck Lovell; Multnomah County; Sheriff Michael Reese; Terri Davie, in her official capacity as superintendent for Oregon State Police (collectively, the "State and Local Defendants"), Alejandro Mayorkas and Donald Washington, in their official capacities on behalf of the U.S. Department of Homeland Security and U.S. Marshals Service (the "Federal Defendants") (collectively, the "Defendants") to protect Plaintiffs and other Oregonians with disabilities from further violations of their rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, as well as their rights under the United States Constitution. This motion is supported by the declarations of John Clarke, Tom Stenson, Philip Wolfe,[1] Katie Durden, Melissa Lewis, Juniper Simonis,[2] Scarlet Passmore, Heather Van Wilde, and Chad Ludwig.

Plaintiffs are residents of Portland, Oregon, and are qualified individuals with disabilities. Plaintiff Wolfe is Deaf[3] and communicates through American Sign Language ("ASL"). Ms. Durden is legally blind. Ms. Lewis has photosensitive epilepsy and a connective tissue disorder. Mx. Simonis has complex Post Traumatic Stress Disorder ("PTSD"). DRO's institutional mission is to promote and defend the rights of all people with disabilities or those perceived to have disabilities in the state of Oregon.

---

[1] Philip Wolfe's gender identity is non-binary and does not use pronouns.

[2] Juniper Simonis's gender identity is non-binary and they use they/them pronouns.

[3] The written distinction between "deaf" and "Deaf," lower- and upper-case, is used to differentiate between those who are deaf and the subset of that population who also identify as a member of distinct linguistic and cultural group. Plaintiff Wolfe identifies as "Deaf."

Page 3 -    Plaintiffs' Motion for Preliminary Injunction

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

In response to Defendants' treatment of Plaintiffs and other people with disabilities during recent protests in Portland, Plaintiffs specifically seek an order requiring Defendants and their agents, employees, and representatives, to:

1. Provide effective communications, such as ASL interpreters and visual messaging systems, when conveying orders or other directions to people who are deaf or hard of hearing at protests;

2. Cease the use of "bull-rushes" and similar practices that do not provide people with disabilities adequate time or directions or provide adequate time and clear and consistent directions for individuals with disabilities to comply with lawful orders;

3. Identify and inform protesters and others of accessible avenues of egress before dispersing a crowd or taking other actions that may place persons with disabilities in danger;

4. Cease using chemical munitions that negatively affect people with respiratory and inflammatory disabilities, and that negatively affect service animals, and remove remaining residue or chemical buildup from areas where such munitions have been used;

5. Cease using strobe lights; and

6. Cease separating people with disabilities from their assistants, interpreters, sighted guides and/or service animals.

This motion, with its supporting materials, confirms that Plaintiffs' request for a preliminary injunction is well-supported by fact and law. As set forth in this motion, Plaintiffs have established that (1) Plaintiffs are likely to succeed on the merits of their claims; (2) Defendants' conduct has caused and threatens to cause irreparable harm to Plaintiffs; (3) the balance of harms weighs in favor of granting the preliminary injunction; and (4) the public interest favors issuing a preliminary injunction. *See Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Accordingly, Plaintiffs respectfully request that the court grant Plaintiffs' motion and enter the requested preliminary injunction.

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

### III.    FACTUAL BACKGROUND

#### A.    Protests against Racism and Police Brutality.

In response to the murder of Breonna Taylor and George Floyd by the police as well as to longstanding and widespread police brutality and violence against people of color, protests have erupted across the country demanding accountability and even a complete reformation of the community approach to public safety. Protesters, journalists, observers, and others in Portland, Oregon—including Plaintiffs and others with disabilities—have assembled nearly every day for the last seven months. People with disabilities have a long and successful history of protest, from the 28-day sit-in leading to the promulgation of the first Section 504 regulations[4] to the "Capitol Crawl" that was one of the key moments in the push for passage of the Americans with Disabilities Act.[5]

#### B.    Defendants' Excessive Force and Discrimination Against People with Disabilities During Protests.

During the more than seven months of protests in Portland, Defendants' law enforcement agencies have engaged with protesters on a daily basis, often forcefully. This use of force—especially as it relates to Plaintiffs—runs counter to Defendants' stated objective to safely provide for the expression of speech. *See, e.g.*, Clarke Decl. ¶ 2, Ex. 1 (Portland Police Bureau ("PPB") Directive 0635.10 (PPB's goal is to "provide for the safe and lawful expression of speech, while also maintaining the public safety, peace and order.")). During these protests, Defendants have denied access and services to people with disabilities or provided them on an unequal basis. Consequently, people with disabilities have been subject to disproportionate and excessive force from law enforcement officers. *See generally* Wolfe Decl., Lewis Decl., Simonis

---

[4] *See, e.g.*, Kitty Cone, *Short History of the 504 Sit In*, https://dredf.org/504-sit-in-20th-anniversary/short-history-of-the-504-sit-in/ (last visited Feb. 3, 2021).

[5] *See, e.g.*, Mike Ervin, *An Oral History of the Capitol Crawl*, https://www.newmobility.com/2020/07/the-capitol-crawl/ (last visited Feb. 3, 2021).

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Decl., Durden Decl., Passmore Decl., Wilde Decl., and DRO Decl. Defendants have also failed to make reasonable modifications to their services to ensure equal access for people with disabilities, despite their affirmative obligation to do so and despite specific requests from people with disabilities, including Plaintiffs, to make such modifications. *Id.*

For people who are deaf or hard of hearing, Defendants have failed to provide effective and accessible communications about law enforcement at protests. Defendants have routinely failed to communicate orders to disperse, including dispersal instructions, warnings about imminent use of force, and declarations of unlawful assemblies and riots. Wolfe Decl. ¶¶ 4-11. When Defendants have communicated orders, they have only done so orally, making no effort to communicate effectively with deaf or hard of hearing protesters. *Id.* As a result, people who are deaf or hard of hearing have been subject to excessive force for failing to comply with orders and warnings that they never had an opportunity to receive. *Id.* Defendants have also used crowd control measures—such as strobe lights and flashbangs—that are disorienting to people who are deaf or hard of hearing and who, as a result, rely almost exclusively on visual information. *Id.*

For people who are blind and low vision, Defendants have similarly failed to provide clear and consistent directions with respect to orders to disperse and sufficient opportunity to comply with those orders. Durden Decl. ¶¶ 6-33. Defendants' dispersal orders and use of excessive force have been disorienting for many protesters who are blind and low vision, as they cannot read street signs or interpret other visual cues without assistance. Durden Decl. ¶ 27. At other times, Defendants have forcibly separated blind protesters from their sighted guides. Durden Decl. ¶¶ 31-32.

Defendants have failed to ensure that people with mobility disabilities receive sufficient time to comply with orders to disperse and have safe routes of egress. *See, e.g.*, Lewis Decl. ¶¶ 6-7, 9-11. Defendants have also used force against persons with disabilities who were attempting to comply with law enforcement orders, *id.*, and have bull rushed protesters without

Page 6 -    Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

warning, *id.* In doing so, Defendants failed to ensure that people with mobility disabilities had safe routes of egress from protests and even blocked people with mobility disabilities from leaving the protests. *Id.*

For people with psychiatric disabilities and service animals, Defendants' use of force has inflicted actual harm and presented a significant threat of further harm. For example, Defendants' repeated use of tear gas, flashbang grenades, and other munitions pose a significant, continued threat to the wellbeing of Mx. Simonis and their service animal, Wallace, by exacerbating Mx. Simonis's PTSD and preventing Wallace from alleviating Mx. Simonis's symptoms. Simonis Decl. ¶¶ 12-30. The presence of heavily armed police officers, particularly those who appear and surround them without warning, has put Mx. Simonis and Wallace into states of hypervigilance that prevent normal social functioning and create physical symptoms. Simonis Decl. ¶ 21. Use of chemical weapons without proper cleanup has also rendered the ground and air physically unsafe for Wallace and other service animals, as many of the weapons are exceptionally toxic to dogs, and their effects can linger in the environment for days or weeks. Simonis Decl. ¶¶ 46-48.

The toxicity of these weapons, however, is not limited to dogs. Defendants' use of chemical weapons also severely impacts individuals with respiratory and inflammatory conditions. People with disabilities that involve respiratory functions (such as asthma) or inflammatory conditions (such as endometriosis) are at significant risk of exacerbated symptoms, acute distress, long-term damage, and even death. Moreover, tear gas and other chemical agents cause coughing and choking, which create respiratory droplets and contribute to the spread of COVID-19. For this reason, the use of chemical agents is particularly concerning for people with compromised immune systems who are at a heightened risk of severe complications from COVID-19.

Page 7 -   Plaintiffs' Motion for Preliminary Injunction

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

C.      **Defendants' Notice of Need for Reasonable Modifications and Effective Communications to Ensure Equal Access for People with Disabilities.**

Defendants not only have an affirmative obligation to make their services, programs, and activities accessible to people with disabilities; they also received and disregarded direct requests for reasonable modifications. Defendants were well aware of the need for reasonable modifications to their practices yet were deliberately indifferent to the resultant harm.

Portland Police Bureau has enacted policies that allow protesters without disabilities to avoid harm by police officers. PPB Directive 0635.10, entitled "Crowd Management/Crowd Control," provides that when feasible, police should make "loud, intelligible and consistent announcements and warnings to the crowd [ . . . ] **to allow the crowd time to comply with orders given from police members.**" Clarke Decl. ¶ 2, Ex. 1 (emphasis added). Police can detain protesters after "providing a lawful order to disperse followed by a reasonable opportunity to comply with that order." *Id.*

Nevertheless, PPB and the other Defendants have failed to enact or implement similar policies to provide protesters with disabilities an equal opportunity to avoid harm by police officers. As far as Plaintiffs are aware, Defendants have no policies that require sign language interpreters or other effective means to communicate dispersal warnings or other orders, provide people with mobility disabilities an accessible route to escape teargas, or otherwise establish procedures to ensure that people with disabilities have a reasonable opportunity to comply with dispersal orders.

Before filing this lawsuit, Plaintiffs and others notified Defendants that they have an affirmative obligation to provide modifications and carry out law enforcement actions at protests in a manner that makes them accessible to people with disabilities. Stenson Decl. ¶ 9. Defendants have additionally been notified of the need for modifications by numerous people on a variety of social media platforms, including Twitter, Facebook, and Instagram, through messages and posts directed at or tagging the agencies or their officials. So far as Plaintiffs are aware, Defendants

Page 8 -     Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

have done nothing to modify their policies to accommodate disabled protesters in response. Indeed, some officers have gone so far as to tell protesters with disabilities that they should not attend protests at all. *See, e.g.*, Wolfe Decl. ¶ 10; Lewis Decl. ¶ 18, Ex. 1.

In addition to the efforts of individual Plaintiffs and other community members, DRO sent letters detailing the need for accommodations to Chief Lovell, Mayor Ted Wheeler, the City of Portland's ADA coordinator, the U.S. Attorney for the District of Oregon, and Acting Secretary Wolf in late July and early August of 2020. Stenson Decl. ¶ 9, Ex. 1. DRO sent a similar letter to Superintendent Hampton and Sheriff Reese in early September. Stenson Decl. ¶ 9, Ex. 1. DRO's letters explained the issues that affect people who use service dogs, are deaf or hard of hearing, are blind or low vision, have asthma, mobility-based disabilities, or epilepsy, or who have inflammatory conditions. Stenson Decl. ¶¶ 9-10, Ex. 1. The letters requested reasonable accommodations and modifications of tactics on behalf of protesters and others with disabilities. *Id.* The Oregon Association of the Deaf has been attempting for a least seven years to get the City and the PPB to make their law enforcement services accessible to people who are deaf or hard of hearing, including, for example, investigating the use of video remote interpreting in critical situations. Ludwig Decl. ¶ 7.

To date, the City of Portland is the sole party to have responded to the letters from DRO. In September and October, DRO and Plaintiffs' counsel met twice with PPB and the City to discuss the ongoing issues regarding the lack of reasonable modifications for protesters with disabilities. Stenson Decl. ¶ 10-12. During those discussions, PPB and the City acknowledged that they do not have any policies governing police interactions with disabled protesters. Stenson Decl. ¶ 10-12. To date, Plaintiffs have not identified any changes in the City's policies or practices in response to those meetings.[6] Stenson Decl. ¶ 10-12.

---

[6] During the meet and confer on this motion, Defendants did not identify any changes in their policies and practices.

Page 9 -    Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Defendants have all responded with significant force to various protests in Portland since May 2020. Defendants have often collaborated and worked jointly in devising responses to specific protests. For instance, in September 2020, federal authorities deputized dozens of PPB and MCSO police officers to serve as federal deputies in responding to these protests.[7] And in August 2020, fifty OSP troopers were federally deputized to engage in joint operations between OSP and the federal authorities. Oregon Governor Kate Brown has on occasion created a unified system allowing joint command and control for OSP and MCSO in responding to protests.[8] Protesters have witnessed obviously coordinated action between federal and local authorities in responding to the protests. Lewis Decl. ¶¶ 23, 28-30; Durden Decl. ¶ 25.

As set forth above, each Defendant has coordinated its response to the protests with other agencies. Each Defendant has individually and jointly failed to provide reasonable modifications to protesters with disabilities. None of the Defendant agencies communicate reasonably accessible notice to protesters who are deaf or hard of hearing before using force or making arrests. None of the agencies appropriately restrict the use of tear gas, bull rush charges, strobes, or other force against protesters with disabilities. After DRO submitted requests for modifications to the agencies, none of the agencies modified their services to provide equal access to law enforcement's services to protesters and others with disabilities. Therefore, Defendants have deprived Plaintiffs of their constitutional and federal statutory rights to attend

---

[7] Jonathan Levinson, *Portland area officers will remain federal deputies through end of year*, OPB, September 29, 2020 (last accessed January 27, 2021) available at: https://www.opb.org/article/2020/09/29/portland-area-officers-will-remain-federal-deputies-through-end-of-year/

[8] Maxine Berstein, *Oregon State Police, Multnomah County sheriff to lead police response in Portland during election, with National Guard on standby*, Oregonian, November 2, 2020 (last accessed January 27, 2021) available at: https://www.oregonlive.com/portland/2020/11/state-police-multnomah-county-sheriffs-office-to-command-police-response-in-portland-during-election-with-national-guard-on-standby.html.

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

the protests without suffering actual or threatened injury at the hands of law enforcement officials.

## IV.    LEGAL STANDARD

Under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, injunctive relief is authorized to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2). Injunctive relief is also "appropriate in cases involving challenges to government policies that result in a pattern of constitutional violations." *Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998). In general, plaintiffs seeking a preliminary injunction must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20.

In addition, the Ninth Circuit's "serious questions" test provides an alternative basis for a preliminary injunction. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Accordingly, a preliminary injunction is appropriate "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

## V.    ARGUMENT

### A.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

Title II of the ADA prohibits discrimination on the basis of disability by public entities such as the City of Portland, Multnomah County, and State of Oregon. 42 U.S.C. § 12131 *et seq*. Section 504 of the Rehabilitation Act ("Section 504") prohibits such discrimination by recipients of federal financial assistance, including the city, county, and state, as well as federal agencies

Page 11 -    Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

such as the Department of Homeland Security and the U.S. Marshal Service. 29 U.S.C. § 794(a).

It is appropriate to analyze "ADA and Rehabilitation Act claims together because the statutes

provide identical 'remedies, procedures and rights.'" *Vos v. City of Newport Beach*, 892 F.3d

1024, 1036 (9th Cir. 2018), *cert. denied sub nom. City of Newport Beach, Cal. v. Vos*, 139 S. Ct.

2613 (2019). Plaintiffs are likely to succeed on the merits of both claims.

Defendants discriminated against Plaintiffs based on their disabilities in violation of Title

II of the ADA and Section 504 in several respects, including:

- denying disabled people an equal opportunity to participate in and benefit from Defendants' services, 28 C.F.R. § 35.130(b)(1)(ii), [9] 6 C.F.R. § 15.30(b)(1)(i)—namely, the provision of police services that would allow Plaintiffs to safely and lawfully exercise their free expression rights;

- using methods of administration that have the effect of subjecting disabled people to discrimination or defeating or substantially impairing accomplishment of the objectives of their programs with respect to people with disabilities, 28 C.F.R. § 35.130(b)(3)(i), (ii), 6 C.F.R. § 15.30(b)(4)(i), (ii);

- failing to make reasonable modifications in policies, practices, and procedures necessary to avoid disability discrimination, 28 C.F.R. § 35.130(b)(7)(i), *Alexander v. Choate*, 469 U.S. 287, 301 (1985);

- failing to provide people with disabilities with communication that is as effective as that provided to others and failing to provide auxiliary aids and services necessary to ensure such people have an equal opportunity to participate in Defendants' programs, 28 C.F.R. § 35.160(a)(1), (b)(1); *see also* 6 C.F.R. § 15.60(a); and

- mistaking Plaintiffs' inaction as refusals to comply with law enforcement. *See Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015) ("Courts have

---

[9] The Department of Justice regulations implementing Title II, 28 C.F.R. pt. 35, have the force of law. *Helen L. v. DiDario*, 46 F.3d 325, 332 (3rd Cir. 1995) ("[B]ecause Congress mandated that the ADA regulations be patterned after the section 504 coordination regulations, the former regulations have the force of law."); *see also Marks v. Colorado Dep't of Corr.*, 976 F.3d 1087, 1097 n.5 (10th Cir. 2020) (holding that Title II regulations "carry the force of law").

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

recognized at least two types of Title II claims applicable to arrests [including] wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity").

To state a claim under Title II of the ADA and Section 504, Plaintiffs must show: (1) they are individuals with disabilities; (2) they are otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities; (3) they were either excluded from participation in or denied the benefits of Defendants' services, programs or activities or were otherwise discriminated against by Defendants; and (4) such exclusion, denial of benefits, or discrimination was by reason of their disabilities. *Sheehan*, 743 F.3d at 1232.

### 1.    Plaintiffs Are Qualified Individuals with Disabilities.

Under the ADA, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices" meets the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. A disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(9)(B) (Section 504 incorporates by reference Section 12102).

All the individual Plaintiffs are people with disabilities:

- Philip Wolfe is Deaf. Wolfe Decl. ¶ 2.

- Katie Durden is legally blind. Durden Decl. ¶ 3.

- Melissa Lewis has both photosensitive epilepsy and Ehlers-Danlos Syndrome, a connective tissue disorder that results in susceptibility to soft tissue tears and slow healing from those injuries. As a result, Melissa is not able to run or move quickly. Lewis Decl. ¶¶ 2-3.

- Juniper Simonis has complex PTSD that manifests as obsessive-compulsive tendencies, hypervigilance, panic attacks, and dissociative episodes. Simonis Decl. ¶¶ 2-8.

Page 13 -    Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

2.    **Title II and Section 504 Apply to Law Enforcement Encounters with Disabled People.**

The State and Local Defendants provide law enforcement services to the general public; thus, they are covered by Title II. *Sheehan*, 743 F.3d at 1232 ("The ADA applies broadly to police 'services, programs, or activities.' We have interpreted these terms to encompass 'anything a public entity does.'" (internal citations omitted)). The law enforcement activities of the State and Local Defendants, as recipients of federal funding, and the Federal Defendants, as federal agencies, are covered by Section 504. 29 U.S.C. 794(a). As members of the general public in Portland, Oregon, Plaintiffs meet all eligibility requirements for the receipt of services from local, state, and federal law enforcement in that city, including access to equal and safe crowd management services and effective communication of law enforcement activities during protests and while in custody. *Cf. Haberle v. Troxell*, 885 F.3d 170, 179 (3d Cir. 2018) (holding that arrestees are qualified individuals under the ADA); *see also Vos*, 892 F.3d at 1036 (holding ADA protects individual with mental illness in police encounters).

Title II and Section 504 "include an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities." *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017). It is settled law in this Circuit that the ADA applies to encounters between law enforcement and people with disabilities. *Vos*, 892 F.3d at 1036; *Sheehan*, 743 F.3d 1232. Police officers are required to make reasonable modifications and/or accommodations[10] during such encounters, *see, e.g.*, *id.* at 1232, and to provide effective communication, *see, e.g.*, *Ulibarri v. City and County of Denver*, 742 F. Supp. 2d 1192, 1213 (D. Colo. 2010) (recognizing duty to accommodate deaf people during arrest). Although "exigent circumstances inform the reasonableness analysis under the ADA, just as they inform the distinct

---

[10] Although Title II uses the term "reasonable modification," while *Choate*, interpreting Section 504, uses the term "reasonable accommodation," 469 U.S. at 301, these terms are used interchangeably, *McGary v. City of Portland*, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004).

Page 14 -    Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

reasonableness analysis under the Fourth Amendment," *Sheehan*, 743 F.3d at 1232, such circumstances normally require a "potentially life-threatening situation or threat to human life." *Wilson v. City of Southlake*, 936 F.3d 326, 331 (5th Cir. 2019). As set forth in Section III.A.6 below, no exigent circumstances exist that would excuse Defendants from complying with the law.

> ### 3.    Defendants Failed to Provide Equal Access to City Services for Disabled People and Used Methods of Administration that Have a Disparate Impact on Such People.

Defendants' crowd management policies, directives, and other measures constitute programs and/or activities under Title II and Section 504. *Sheehan*, 743 F.3d at 1232. Section 504 requires that disabled people have "meaningful access" to the programs or activities of covered entities, *Alexander v. Choate*, 469 U.S. 287, 301 (1985), and Title II and Section 504 both "include an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities," *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017).

PPB's directives make it clear that one of the purposes of its crowd control policies is to "provide for the safe and lawful expression of speech, while also maintaining the public safety, peace and order." Clarke Decl. ¶ 2, Ex. 2 (Directive 0635.10). Defendants' crowd control measures—specifically those taken against Plaintiffs here—deny protesters with disabilities an opportunity to safely participate in protests, to avoid harm by police, and to benefit from PPB's obligation to protect free expression and public safety. These measures also have a disparate impact on people with certain disabilities, in violation of 28 C.F.R. § 35.130(b)(3)(i), and have the effect of "defeating or substantially impairing accomplishments of the objectives of [Defendants'] program with respect to individuals with disabilities," in violation of 28 C.F.R. § 35.130(b)(3)(ii).

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Ultimately, Defendants have denied Plaintiffs, and other people with disabilities, meaningful access to their crowd management programs and activities. Specifically, Defendants' crowd control measures that depend on auditory communication discriminate against deaf or hard of hearing protesters. Bull rushes and other forms of crowd control that depend on the ability to move quickly as directed discriminate against people with mobility impairments, such as Ms. Lewis, and those who are blind or low vision, such as Ms. Durden. Unlike people without disabilities, Plaintiffs and DRO constituents with hearing, mobility, and vision disabilities are unable to disperse quickly or respond in the same way to other police commands, putting them at significant risk of injury from Defendants. The lack of accessible directions and clear egress routes for dispersal, and barriers to egress erected by Defendants, also put Plaintiffs and other individuals with mobility impairments at higher risks of stampedes and trampling from other protesters, violence from law enforcement officers, and other grievous harm. *See, e.g.*, Lewis Decl. ¶ 10.

Additionally, Defendants' use of strobe lights discriminates against individuals, such as Ms. Lewis and other DRO constituents, with photosensitive epilepsy. Lewis Decl. ¶¶ 5-7. Defendants' indiscriminate use of teargas, pepperballs, and other chemical weapons poses a significant risk of harm or death for people with respiratory and inflammatory conditions. Scarlett Decl. ¶ 3.

### 4. Defendants Failed to Provide Effective Communication for Deaf and Blind People at Protests.

Title II requires Defendants to ensure that communications with people with disabilities "are as effective as communications with others," 28 C.F.R. § 35.160(a)(1), and to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity," *id*. § 35.160(b)(1); *see also* 6 C.F.R. 15.60(a). "[D]eaf individuals lack meaningful access to government activities or programs without the provision of interpretive assistance." *Am. Council*

Page 16 -   Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

*of the Blind v. Paulson*, 525 F.3d 1256, 1268 (D.C. Cir. 2008), *quoted in Nat'l Ass'n of the Deaf*

*v. Trump*, --- F. Supp. 3d ---, No. CV 20-2107 (JEB), 2020 WL 5411171, at *9 (D.D.C. Sept. 9,

2020) (holding that the National Association of the Deaf was entitled to a preliminary injunction

requiring the White House to provide interpreters for coronavirus briefings).

 Although Defendants have communicated with hearing protesters throughout the

interactions at issue in this case, they have made no effort to communicate with protesters who

are deaf or hard of hearing, including when they declare unlawful assemblies and issue orders to

disperse. PPB Captain Craig Dobson testified that, during these protests, PPB's "goal has been to

facilitate First Amendment activity by all persons in the City of Portland," and that it does this by

"reaching out to protestors, directing traffic away from marches, and encouraging peaceful

assembly through words directly from officers to demonstrators, PPB's Twitter feed and other

social media platforms, demonstration liaison teams, demonstration liaison, and the Sound

Truck." Clarke Decl. ¶ 3, Ex. 2 (Dobson Decl. ¶¶ 15-16). None of PPB's "reaching out" has been

accessible to deaf protesters, as they did not, for example, provide sign language interpreters or

written communications on site and in real time, such as through LED displays; instead, the

"words [communicated] directly from officers to demonstrators" are all verbal. This violates the

right of deaf protesters to receive communication that is as effective as that received by others.

28 C.F.R. § 35.160(a)(1).

 Specifically, Plaintiff Wolfe has been subjected to tear gas and other chemical agents on

multiple occasions by Defendants without ever receiving effective communications that would

have allowed Plaintiff Wolfe to exit the situation. Wolfe Decl. ¶¶ 5-6. Defendants'

announcements ordering protesters to move toward a specified location discriminate against

Plaintiff Durden and other blind or low vision constituents of DRO by failing to provide

sufficient guidance to ensure they will know where to go to avoid law enforcement

repercussions. Durden Decl. ¶ 25.

Page 17 -   Plaintiffs' Motion for Preliminary Injunction

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

In addition to Defendants' affirmative obligation to ensure effective communication, 28 C.F.R. § 35.160(a)(1), Defendant City of Portland has also long been on notice of the need for effective communication based on, among other things, a lawsuit filed by Plaintiff Wolfe in 2012 as well as ensuing discussions among Philip, the Oregon Association of the Deaf, and PPB. Wolfe Dec. ¶¶ 12; Ludwig Decl. 9, Ex. 1. Despite the 2012 lawsuit and resultant settlement, PPB's policy for effective communications with deaf people has been in draft form for the last two years, and Multnomah County has been aware of its obligations at the very least since the Ninth Circuit issued its opinion in *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017), which identified the County's duties to a deaf detainee in the County jail.

5.    **Defendants Failed to Provide Reasonable Modifications to Policies, Practices and Procedures Necessary to Avoid Disability Discrimination.**

Title II and Section 504 require Defendants to make reasonable modifications in policies, practices, or procedures where necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7)(i) (Title II); *Choate*, 469 U.S. at 301 ("[T]o assure meaningful access [under Section 504], reasonable accommodations . . . may have to be made."). As the DOJ has explained in guidance, "[t]he general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities." Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services Originally Published July 26, 1991, 28 C.F.R. pt. 35, app. B (2020). Plaintiffs "bear[ ] the initial burden of producing evidence of the existence of a reasonable accommodation. . . . [Defendants] may defeat a reasonable accommodation claim by showing 'that making the modifications would fundamentally alter the nature of the service, program, or activity.'" *Sheehan*, 743 F.3d at 1233 (quoting 28 C.F.R. § 35.130(b)(7); other citations omitted).

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Defendants have failed to make reasonable modifications in their crowd control and use of force policies necessary to avoid disability discrimination despite ample warning—let alone common sense—that such modifications were necessary. For example, by letters dated July 30 and 31, 2020, DRO informed the PPB and the DHS of their specific acts of discrimination and need for modifications. Stenson Decl. ¶ 9, Ex. 1.

The individual Plaintiffs also put Defendants on notice. On July 9, 2020, Plaintiff Simonis explained to federal officers that they had PTSD, that they had a service dog to assist with that condition, and that it would trigger them to be unexpectedly surrounded. Simonis Decl. ¶ 20. Despite being on specific notice, the following evening, some of those same federal officers ignored Mx. Simonis's entreaty: they attempted to grab Mx. Simonis, triggering a panic response, and then tackled them, arrested them, and separated them from their dog. Simonis Decl. ¶¶ 18-21. A night of severe abuse and panic ensued—as well as harm to their service dog and his training—that could have been prevented had officers made reasonable accommodations for Mx. Simonis's known disabilities. Mx. Simonis was chalking the boundary of the federal building when they were tackled, and at no time did they pose a threat to officers. Simonis Decl. ¶¶ 18-39. As such, there were no exigent circumstances justifying the failure to accommodate their disabilities.

Similarly, Plaintiff Lewis informed officers that strobe lights would trigger her epilepsy. Lewis Decl. ¶¶ 5, 18, Ex. 1. Despite this, even though Ms. Lewis was not engaging in behavior that would threaten the officers or members of the public, officers have continued to use strobe lights in her vicinity, and at least one PPB officer has gone out of his way to use strobe lights against her. Lewis Decl. ¶¶ 5, 18, Ex. 2.

Plaintiffs Durden and Lewis and other DRO constituents with vision and mobility disabilities all have disabilities that make it difficult for them to respond to law enforcement orders and disperse quickly. After the first day of protests, Defendants were on notice that

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

actions designed to move crowds—upon pain of injury by shoving, baton strikes, and rubber bullets—would need to be modified to accommodate individuals with mobility disabilities who could not move quickly. Rather than make the required modifications, Defendants treated Plaintiffs' inability to quickly disperse as a failure or hesitation to comply and used this as a reason to inflict violence against Plaintiffs and other people with disabilities. *See, e.g.*, Lewis Decl. ¶¶ 9, 22, Ex. 3.

There are a number of reasonable modifications available that would avoid this discrimination—for example, ceasing the use of chemical weapons and related tactics entirely and instead making targeted arrests of those who violate the law. As Chief Judge Hernandez recognized, with respect to others involved in the protests at issue here,

> there is no dispute that Plaintiffs engaged only in peaceful and non-destructive protest. There is no record of criminal activity on the part of Plaintiffs. To the contrary, there is even evidence that some protesters were confronted with tear gas while trying to follow police orders and leave the demonstrations. Given the effects of tear gas, and the potential deadly harm posed by the spread of COVID-19, Plaintiffs have established a strong likelihood that Defendant engaged in excessive force contrary to the Fourth Amendment.

*Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1155 (D. Or. 2020). Similarly here, there is no evidence Plaintiffs were engaged in criminal activity. If use of chemical weapons in that circumstance constitutes excessive force, avoiding the use of such weapons on protesters with disabilities is a reasonable modification. Likewise, Defendants can identify and inform protesters of accessible avenues of egress before using force or other tactics that may harm people with a variety of disabilities and provide sufficient time for people with disabilities to comply. Defendants have failed to enact any of these, or other, reasonable modifications even as the protests have continued over many months and, even in instances when Plaintiffs specifically informed Defendants of the need for reasonable modifications.

Furthermore, Plaintiffs' requests for reasonable modifications would not require a fundamental alteration of Defendants' programs and services. For example, Defendants are

Page 20 -    Plaintiffs' Motion for Preliminary Injunction

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

already constitutionally required to provide adequate notice and an opportunity to comply before dispersing crowds. *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999) (dispersal orders must provide fair notice). PPB's own policies already require the same, and further require that officers "should differentiate between groups or individuals who are engaging in criminal behavior or otherwise posing a threat to the safety of others and those in the crowd who are lawfully demonstrating." Clarke Decl. ¶ 2, Ex. 1 (Directive 0635.10). Indeed, providing reasonable modifications and effective communication would actually further the goals of Defendants' programs and services by allowing protesters with disabilities to make informed decisions and more safely exit a situation or comply with other law enforcement orders.

### 6.  No Exigent Circumstances Excuse Defendants from Complying with the Law.

As set forth above, Defendants have failed to provide equal services and benefits to people with disabilities, failed to make reasonable accommodations, and failed to provide effective communication. None of the interactions at issue in this litigation involve exigent circumstances that would excuse Defendants from complying with these requirements. Moreover, after two hundred days of consecutive protests, Defendants were more than capable of providing the necessary modifications.

In *Sheehan*, the Ninth Circuit addressed the applicability and scope of the exigent circumstances defense to an ADA claim. The case challenged the actions of police who had arrived at a group home to assist in transporting a woman with mental illness to a mental health facility. When officers initially entered her home, she reacted violently, so they retreated to the hallway outside her locked door. They called for backup, but without waiting, forced their way back into the home, sparking a violent confrontation during which officers shot the woman. *Sheehan*, 743 F.3d at 1215-16. The Ninth Circuit held that while the initial entry may have been reasonable, "[a] reasonable jury nevertheless could find that the situation had been defused sufficiently, following the initial retreat from Sheehan's room, to afford the officers an

Page 21 -   Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

opportunity to wait for backup and to employ less confrontational tactics, including the accommodations that Sheehan asserts were necessary." *Id.* at 1233; *see also Wilson v. City of Southlake*, 936 F.3d 326, 331 (5th Cir. 2019) (no exigent circumstances present when disruptive student posed no "threat to human life"); *Vos*, 892 F.3d at 1037 ("Similar to the situation in [*Sheehan*], the officers here had the time and the opportunity to assess the situation and potentially employ the accommodations identified by the [plaintiffs], including de-escalation, communication, or specialized help."); *Adams-Chevalier v. Spurlock*, No. 16-CV-02691-WYD-STV, 2017 WL 5665149, at *6 (D. Colo. Sept. 25, 2017) (no exigent circumstances while deputies were interviewing witnesses at the scene).

The officers in *Sheehan*, *Wilson*, and *Vos* were all reacting within the context of a single event. By contrast, Defendants here were responding to nightly events over the course of several months. They had ample opportunity to assess and account for the needs of protesters with disabilities and to offer required accommodations and communication when providing law enforcement services. At the same time, there were no instances where disabled protesters posed a "threat to human life" sufficient for Defendants to disregard their statutory obligations. Put simply, there were no exigent circumstances that would have prevented reasonable modifications, effective communication, or generally nondiscriminatory conduct toward disabled protesters.

### B.    Plaintiffs are Likely to Succeed on Their First Amendment Claim.

Plaintiffs are likely to succeed on their claim that Defendants' conduct, including the use of unnecessary force and failure to accommodate their disabilities and to ensure equal access to the right to protest, violates their First Amendment rights. The First Amendment prohibits any law "abridging the freedom of speech, or of the press." U.S. Const. amend. I. "Restrictions on First Amendment activities in public fora are 'subject to a particularly high degree of scrutiny.'" *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996). To obtain a preliminary injunction,

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

plaintiffs need only "mak[e] a colorable claim that [their] First Amendment rights have been infringed, or are threatened with infringement." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014). After that, the government bears the burden of justifying the restriction on Plaintiffs' speech. *Id.*

### 1.    Plaintiffs' Speech Is Protected by the First Amendment.

Plaintiffs were engaged in constitutionally protected First Amendment activity as protesters or, in some cases, members of the press. "Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment." *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996). Likewise, "newsgathering is an activity protected by the First Amendment." *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978) (citing *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)).

"[E]xpression on public issues "has always rested on the highest rung of the hierarchy of First Amendment values.' '[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.'" *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (internal citations omitted). These demonstrations demand police accountability and an end to systemic racism and other forms of oppression that Black, Indigenous, and people of color face in our country. Indeed, the demonstrations have opposed the very tactics that the police have used to disperse Plaintiffs and others.

Moreover, Plaintiffs' statements that Defendants' agents failed to reasonably accommodate their and others' disabilities and that Defendants used excessive force also constitute protected First Amendment activity. "The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *United States*

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

*v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) (internal citations omitted); *see generally* Lewis, Durden, and Simonis Decl.

> **2.     Defendants' Disability Discrimination and Failure to Provide Reasonable Modifications Violates Plaintiffs' First Amendment Rights.**

Defendants' systemic failure to ensure that people with disabilities are protected by their crowd management and control policies and to provide reasonable modifications of their policies and tactics violates Plaintiffs' First Amendment right to free speech. "[G]overnmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 12–13 (1972). Violations of the ADA and Rehabilitation Act can violate basic constitutional guarantees. *See Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004) (holding that lack of wheelchair access to courthouse violated Fourteenth Amendment right of access to court). Indeed, "Congress enacted Title II to 'enforce [the Fourteenth Amendment's] prohibition on irrational disability discrimination,' along with 'a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review.'" *Reininger v. Oklahoma*, 292 F. Supp. 3d 1254, 1261 (W.D. Okla. 2017) (quoting *Lane*, 541 U.S. at 522-23).

*Reininger*, for example, held that the failure to provide effective communication in the form of captioning for livestreamed legislative hearings violated the First Amendment. *Id*. The court reasoned that "[p]hysical access to a public forum is meaningless if the individual is denied, due to a [disability], access to…equal participation in the political process. This right is encompassed in the First Amendment right to 'petition the government for a redress of grievances.'" *Id*. at 1262.

Here, as in *Reininger*, the failure to provide reasonable modifications, including effective communication, denies Plaintiffs their right to "equal participation in the political process" as well as other First Amendment activity. *See id*. Plaintiffs seek to exercise their fundamental First

Page 24 -    Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Amendment right to speech, to "petition the government for a redress of grievances," and to engage in journalistic activity, but are unable to do so on an equal basis with people without disabilities.

### 3.    Defendants' Acts and Omissions Chill Plaintiffs' Speech.

Defendants' actions and inactions, including failure to provide people with disabilities the benefits of their crowd control policies, overwhelming use of force, and failure to provide reasonable modifications, chill Plaintiffs' speech. As the Ninth Circuit has held, "government officials violate [the First Amendment] when their acts 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (internal citations omitted). To demonstrate an unconstitutional chilling effect on speech, "a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's protected] speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999) (quoting *Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994)).

Defendants' violations of the ADA and Section 504 have a severe chilling effect on Plaintiffs' speech. Plaintiffs have been forced to leave protests far earlier than they otherwise would have for fear of being subjected to tactics that individuals without disabilities would be able to avoid or would not impact as severely.  Wolfe Decl. ¶ 9. Plaintiff Lewis has been repeatedly subjected to the use of seizure-inducing strobe lights because Defendants have refused to modify their policies and practices or have intentionally targeted her with them. Lewis Decl. ¶ 5. Lewis has also been repeatedly shoved and tackled to the ground by Defendants because they fail to afford sufficient time for people with disabilities to comply with police orders. Lewis Decl. ¶ 14. As a result of Defendants' use of force, lack of reasonable modifications, and other disability discrimination, Plaintiffs Wolfe and Durden have stopped attending protests and Plaintiff Simonis has restricted their protest activities to a supporting role. Wolfe Decl. ¶ 14,

Page 25 -    Plaintiffs' Motion for Preliminary Injunction

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Durden Decl. ¶ 36, Simonis Decl. ¶ 48. In addition, numerous people with disabilities have refrained from protesting at all because they reasonably fear that Defendants' failure to accommodate them will lead to injury or arrest, including fear of the effect of chemical weapons on their disabilities.

Moreover, Defendants' use of force, including the indiscriminate use of chemical weapons, would chill the speech of "a person of ordinary firmness." As this Court held in *Index Newspapers*, "being shot with less-lethal munitions like pepper balls, tear gas, and paint-marking munitions, being pepper sprayed at close range, or being shoved by a law enforcement officer would chill a person of ordinary firmness from continuing to exercise their First Amendment rights." *See Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 827 n. 4 (9th Cir. 2020). And that is precisely the type of force used against Plaintiffs here—Plaintiffs have been repeatedly subjected to the use of pepperballs, tear gas, rubber bullets, baton strikes, and other uses of force. As the Ninth Circuit observed in upholding this Court's injunction in *Index Newspapers*, there does not "appear to be a good faith basis for" arguing to the contrary. 977 F.3d at 827.

Indeed, as Chief Judge Hernandez held in addressing the protests and law enforcement responses at issue in the present case, "Plaintiffs have submitted evidence demonstrating that officers indiscriminately used force against peaceful protestors on multiple occasions . . . These incidents demonstrate that preventing criminal activity near the Justice Center was not the sole purpose of PPB's use of force. Instead, officers may have been substantially motivated by an intent to interfere with Plaintiffs' constitutionally protected expression." *Don't Shoot Portland*, 465 F. Supp. 3d at 1155-56.

Page 26 -    Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

C.    **Plaintiffs are Likely to Succeed on their Claims for Unlawful Seizure and Excessive Force Under the Fourth and Fourteenth Amendments to the U.S. Constitution.**

Plaintiffs are likely to succeed on their claims that Defendants violated their right to be free from unlawful seizure and excessive force under the Fourth and Fourteenth Amendments. "To determine whether the use of force was objectively reasonable, the court balances the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Vos*, 892 F.3d at 1030-31 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotations and citations omitted)).

1.    **Plaintiffs Were Seized under the Fourth Amendment.**

A person is seized by the police, and the Fourth Amendment implicated, when an officer uses physical force or authority to intentionally restrict the person's freedom of movement. *Brendlin v. California*, 551 U.S. 249, 254 (2007). It does not matter whether officers target specific individuals; rather, it matters only that the government intentionally tried to restrict a person's movement. *Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir. 2012) (plaintiff was seized when police intentionally fired projectiles into a crowd, of which the plaintiff was a member). "[W]hether the officers intended to encourage the [crowd] to disperse is of no importance when determining whether a seizure occurred." *Id.* Thus, when Plaintiffs and others are subjected to Defendants' crowd control methods, they are seized within the meaning of the Fourth Amendment, and they have a right to challenge Defendants' use of force.

2.    **Defendants Significantly Intruded on Plaintiffs' Rights.**

Defendants' intrusion on the rights of Plaintiffs and others with disabilities is significant. Plaintiffs and others have been repeatedly subjected to bull rushes, shoving, baton strikes, tear gas, pepperballs, pepper spray, rubber bullets, and other crowd control munitions and tactics. Defendants' use of force goes far beyond minimal intrusions on Fourth Amendment interests. *See, e.g.*, *Nelson*, 685 F.3d at 878 (pepper spray is a "dangerous weapon" that may result in

Page 27 -    Plaintiffs' Motion for Preliminary Injunction

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

"serious bodily injury" (internal citations omitted)); *Deorle v. Rutherford*, 272 F.3d 1272, 1279-80 (9th Cir. 2001) ("the degree of force [resulting from an impact weapon] is permissible only when a strong governmental interest compels the employment of such force" because an "impact weapon [is] high on the schedule of force" and a "cloth-cased shot, which is something akin to a rubber bullet" is potentially lethal up to 50 feet away); *Don't Shoot Portland*, 465 F. Supp. 3d at 1155 (plaintiffs offered evidenced that "tear gas was used indiscriminately," and therefore established a strong likelihood that defendant engaged in excessive force).

Indeed, as the Ninth Circuit has held, "force can be unreasonable even without physical blows or injuries." *Nelson*, 685 F.3d at 878 (citing*, e.g., Robinson v. Solano County,* 278 F.3d 1007 (9th Cir. 2002) (*en banc*) (pointing a weapon at unarmed and non-threatening individual was unreasonable)). Thus, even the use of something as ostensibly benign as a strobe light against individuals with epilepsy constitutes an invasion of Fourth Amendment interests.

### 3. Countervailing Government Interests Do Not Justify the Intrusion on Plaintiffs' Rights.

The invasion of Plaintiffs' Fourth Amendment interests cannot be justified by the government's need to use force. Factors used to assess the need for force include, "'(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others ... (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight,' and any other 'exigent circumstances [that] existed at the time of the arrest.'" *Deorle*, 272 F.3d at 1280. In addition, the Ninth Circuit also considers whether a warning was given and the availability of alternative means, and, critically here, an individual's disabilities. *Id*. at 1284; *Vos*, 892 F.3d at 1033-34. These factors all weigh heavily in favor of Plaintiffs.

As for the first factor, the severity of the crime at issue, Plaintiffs and other individuals with disabilities were peacefully and lawfully engaged in protected First Amendment activity. Plaintiffs were frequently subjected to force even as they attempted to comply with police orders or were present where they had a right to be. Lewis Decl. ¶¶ 22, 26-27, Ex. 3-4. Even assuming,

Page 28 -   Plaintiffs' Motion for Preliminary Injunction

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

however, that Plaintiffs had failed to disperse when ordered by Defendants, for example, they at most committed a misdemeanor. *See* ORS 166.025(e). Such "a minor infraction [] justifies, at most, only a minimal use of force." *Nelson*, 685 F.3d at 879-80. Moreover, even if Defendants have a legitimate interest in dispersing individuals after declaring an unlawful assembly, "the desire to do so quickly, in the absence of any actual exigency, cannot legitimize the application of force when it is not otherwise justified." *Id.* at 880.

The second factor, the threat posed by Plaintiffs and others with disabilities, also militates against Defendants' use of force. This is "[t]he most important factor" in the *Graham* analysis. *Vos*, 892 F.3d at 1031-32. Plaintiffs and the countless other people with disabilities at protests posed no threat whatsoever to Defendants. Plaintiffs were, at all times, peaceful and non-violent.

Whether law enforcement considered the protests an unlawful assembly or a riot makes no difference to the analysis. "The use of less-than-deadly force in the context of a riot against an individual displaying no aggression is not reasonable." *Ciminillo v. Streicher,* 434 F.3d 461, 468 (6th Cir. 2006) (citing *Otero v. Wood,* 316 F.Supp.2d 612, 622 (S.D. Ohio 2004) (reasonable jury could find that the use of wooden baton rounds on a non-violent individual during a riot was excessive force, even where individuals in the crowd threw bottles at officers)). "Even affording due weight to the tumultuous circumstances in which the use of force took place, there was no indication [Plaintiffs] represented a threat to anyone's safety. . . [and] the general disorder . . . cannot be used to legitimize the use of pepperball projectiles against non-threatening individuals." *Nelson*, 685 F.3d at 880-81 (use of force on non-violent Plaintiff not justified where over 1,000 drunk and disorderly students were unlawfully assembled, police car had been surrounded, and bottles were thrown at officers).

The third factor also counsels against Defendants' use of force. Plaintiffs were neither actively resisting nor attempting to flee. Indeed, Plaintiffs were either actively complying with Defendants' orders—albeit not as quickly as Defendants would have liked because of their

Page 29 -   Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

disabilities—or would have complied with orders had Defendants conveyed them in an accessible manner. Lewis Decl. ¶¶ 22, 26-27, Ex. 3-4. Often, what officers have deemed to be acts of "resistance" are manifestations of the person's disabilities. A handcuffed wheelchair user was charged with resisting arrest after he had to brace himself against his wheels with his feet to keep from tipping out of his chair.[11] Stenson Decl. ¶ 14, Ex. 2. Plaintiff Simonis was charged with resisting arrest after federal officers tackled them to the ground and their body locked up in a panic attack. Simonis Decl. ¶¶ 18, 21.

The Ninth Circuit has also held that "the giving of a warning or the failure to do so is a factor to be considered in applying the *Graham* balancing test" because the absence of a warning makes the use of force more unreasonable. *Deorle*, 272 F.3d at 1284; *Nelson*, 685 F.3d at 882 (police gave insufficient warnings, weighing against officers' use of force, where police could not "be heard over the din of the crowd" and the group was not told how they were supposed to comply with the order).

Here, in many instances, law enforcement did not provide a warning to anyone. When law enforcement did provide a warning, they communicated orally, meaning that people who are deaf or hard of hearing received no warning whatsoever. Wolfe Decl. ¶ 8. People who are blind or low vision were not given adequate instructions as to how to comply with law enforcement orders. Durden Decl. ¶ 18. Likewise, people with mobility disabilities were not given adequate time to comply with orders. Lewis Decl. ¶ 26.

Additionally, "'the availability of alternative methods of capturing or subduing a suspect may be a factor to consider.'" *Vos*, 892 F.3d at 1033 (quoting *Smith v. City of Hemet*, 394 F.3d

---

[11] Andrew Buncombe, *Disabled protester in wheelchair accuses Portland police of trying to 'break his arms' while arresting him*, The Independent, September 4, 2020, https://www.independent.co.uk/news/world/americas/us-politics/portland-protests-blm-wheelchair-arrest-disabled-wheeler-trump-dustin-brandon-latest-a9704341.html

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

689, 701 (9th Cir. 2005)). As discussed above, Defendants could have and should have made reasonable modifications to their tactics to avoid harm to disabled individuals.

Finally, and significantly here, Plaintiffs' disabilities must be taken into consideration in determining the amount of force that is reasonable. *See Vos*, 892 F.3d at 1033-34. In *Vos*, the Ninth Circuit stated that "whether it should have been apparent to the officers that the subject of the force used was mentally disturbed" was an important consideration in the use of force analysis. *Id.* The court there held that "indications of mental illness create a genuine issue of material fact about whether the government's interest in using deadly force was diminished." *Id.* at 1034. This principle holds equally true for other disabilities. *See, e.g.*, *Trevino v. City of Bakersfield*, 2016 WL 1090307, at *8 (E.D. Cal. Mar. 21, 2016) (finding that plaintiff's deafness was relevant to Fourth Amendment analysis). Here, not only are Plaintiffs all people with disabilities, but Defendants have repeatedly been put on notice of the effect of their tactics on such individuals.

Defendants have consistently used excessive force against individuals with a variety of disabilities without regard to the effect of the person's disability on their need for force. In doing so, Defendants violated Plaintiffs' Fourth Amendment rights.

### D.    Plaintiffs are Likely to Succeed on the Due Process Claims under the Fifth and Fourteenth Amendments to the U.S. Constitution.

Plaintiffs are likely to succeed on their claims that Defendants violated their right to due process under the Fifth and Fourteenth Amendments. Due process requires that law enforcement provide fair notice and an opportunity to comply before enforcing orders, including orders to disperse. *City of Chicago v. Morales*, 527 U.S. 41, 58-59 (1999) (dispersal orders must provide fair notice); *Washington Mobilization Comm. v. Cullinane*, 566 F.2d 107, 120 (D.C. Cir. 1977) (dispersal orders must provide "fair notice and opportunity to comply"); *see also Cox v. Louisiana*, 379 U.S. 559, 574 (1965). These are required by "basic principles of due process." *United States v. Huizar*, 762 F. App'x 391, 392 (9th Cir. 2019) (citing *Kolender v. Lawson*, 461

Page 31 -   Plaintiffs' Motion for Preliminary Injunction

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

U.S. 352, 357-60 (1983)). "[T]he purpose of the fair notice requirement [in disorderly conduct statutes] is to enable the ordinary citizen to conform his or her conduct to the law." *Morales*, 527 U.S. at 58.

For this reason, Oregon law requires law enforcement, before dispersing an unlawful assembly or riot,[12] to "go among the persons assembled, or as near to them as they can with safety, and command them in the name of the State of Oregon to disperse." ORS 131.675. Similarly, PPB's policies provide that "members shall make loud, intelligible and consistent announcements and warnings to the crowd" and that before dispersing a crowd "members shall issue a minimum of two warnings at reasonable intervals to allow the crowd to comply." Clarke Decl. ¶ 2, Ex. 1 (PPB Directive 635.10 Crowd Management/Crowd Control 8.1, 9.1.2).

Defendants' failure to provide reasonable accommodations, however, has systematically denied many individuals with disabilities of these basic due process protections. Denying people with disabilities reasonable accommodations can violate due process. *Bonner v. Arizona Dept. of Corrections*, 714 F. Supp. 420, 425 (D. Ariz. 1989) (requiring people who are deaf or blind to navigate prison disciplinary proceedings without an interpreter violates due process); *Clarkson v. Coughlin,* 898 F. Supp. 1019, 1049-50 (S.D.N.Y. 1995) (failure to offer interpretive services or assistive devices in disciplinary, grievance and parole hearings constituted denial of due process); *Holmes v. Godinez*, 311 F.R.D. 177, 238 (N.D. Ill. 2015) ("hearing impaired inmates who are not fluent in English may have a due process right to a qualified interpreter at prison disciplinary hearings.").

Here, Plaintiffs who are Deaf or hard of hearing receive no notice whatsoever of police orders, including critical orders to disperse, because Defendants communicate those orders only orally. As a result, Plaintiff Wolfe and others who are Deaf or hard of hearing have been

---

[12] Oregon law defines an unlawful assembly as "five or more persons, whether armed or not, [who are] unlawfully or riotously assembled." ORS 131.675.

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

subjected to excessive force and risk of arrest for failing to comply with orders of which they never received fair, or indeed any, notice. Wolfe Decl. ¶¶ 4, 8.

People with mobility disabilities, like Plaintiff Lewis, are similarly denied these rudiments of due process. Because of her connective tissue disorder, Ehlers-Danlos syndrome, she is unable to run without risking severe injury and lasting pain. Lewis Decl. ¶ 2. As a result of her disability and Defendants' failure to provide adequate time to comply with police orders, Plaintiff Lewis has been repeatedly subjected to law enforcement violence, including tear gas, flashbang grenades, baton strikes, rubber bullets, pepperballs, shoving, and other unnecessary uses of force. Lewis Decl. ¶¶ 12, 14, 16, 19, 25.

The same is true of people who are blind or low vision, like Plaintiff Durden. Defendants' failure to provide consistent, accessible directions and adequate time to comply with orders has resulted in Plaintiff Durden being repeatedly subjected to excessive force. *See, e.g.*, Durden Decl. ¶¶ 11, 16, 19, 28.

### E.    Plaintiffs Will Suffer Irreparable Harm in the Absence of an Injunction.

"[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F. 3d 990, 1002 (9th Cir. 2012) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and the deprivation of civil rights and injuries to individual dignity also constitute irreparable injury. *Cupolo v. Bay Area Rapid Transit*, 5 F.Supp.2d 1078, 1084 (N.D. Cal. 1997) (citing *Chalk v. United States Dist. Court*, 840 F.2d 701, 710 (9th Cir. 1988); *Sullivan v. Vallejo City Unified School Dist.*, 731 F. Supp. 947, 961 (E.D. Cal. 1990) (injury to ability to function as independent person constitutes irreparable injury). Furthermore, a plaintiff seeking injunctive relief may demonstrate sufficient likelihood of future harm by establishing that a plaintiff is deterred from attending or visiting a noncompliant covered entity because plaintiff has encountered barriers to equal access related to plaintiff's disability. *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 948 (9th Cir. 2011).

Page 33 -    Plaintiffs' Motion for Preliminary Injunction

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Equal access to law enforcement's services is critically important. A monetary award cannot remedy the harm caused by unequal access to those services. Therefore, disability discrimination that interferes with equal access to these services poses a clear threat of irreparable injury. Because of the lack of equal access to law enforcement services, Plaintiffs and other individuals with disabilities have been deterred from attending protests, knowing that they are likely to face discrimination in the form of excessive use of force and arrest. *See, e.g.*, Wolfe Decl. ¶ 14. Thus, Plaintiffs can establish that they will suffer irreparable harm in the absence of an injunction.

**F.    The Balance of Equities Weights Strongly in Favor of Plaintiffs.**

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted).

Plaintiffs have shown that they have not presented any danger to the public, to property, or to Defendants. To the contrary, Plaintiffs have attended or participated in protests to exercise their constitutional right to free expression. As set forth above, Defendants have substantially and irreparably harmed Plaintiffs.

On the other side of the scale, any harm to the Defendants would be negligible. Indeed, many of the measures Plaintiffs request in this motion are required by PPB policy. The government can have no interest in using excessive force where—as Plaintiffs have demonstrated here—it is not necessary. Consequently, the irreparable and significant harm to Plaintiffs stemming from Defendants' actions greatly outweighs any harm that Defendant might sustain.

**G.    The Public's Interest Weighs Strongly in Favor of Plaintiffs.**

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

F.3d 755, 766 (9th Cir. 2014) (internal quotation marks omitted). The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Tennessee v. Lane*, 541 U.S. 509, 516 (2004). "In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities." *Enyart v. National Conference of Bar Examiners*, 630 F. 3d 1153, 1167 (9th Cir. 2011).

Furthermore, "[t]his public interest is served by requiring entities to take steps to 'assure equality of opportunity' for people with disabilities." *Id.* at 1168 (citing current 42 U.S.C. § 12101(a)(8)); *see also Featherstone v. Pac. Nw. Univ. of Health Scis.*, No. 1:CV-14-3084-SMJ, 2014 WL 3640803, at *7 (E.D. Wash. July 22, 2014) ("In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities;" holding deaf medical student entitled to preliminary injunction requiring sign language interpreters for classes); *Jordan v. Greater Dayton Premier Mgmt.*, 9 F. Supp. 3d 847, 863 (S.D. Ohio 2014) (issuing preliminary injunction requiring landlord to provide blind tenant with audio materials, holding "[i]t is clearly in the public interest for the Court to enforce compliance with federal law prohibiting discrimination on the basis of disability."). Granting Plaintiffs' preliminary injunctive relief request furthers the ADA's anti-discrimination mandate, thereby serving the public interest.

For constitutional rights, the Ninth Circuit has found that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal citations and quotations omitted); *Cuviello v. City of Vallejo*, 944 F.3d 816, 834 (9th Cir. 2019) ("We have consistently recognized the significant public interest in upholding free speech principles." (internal quotations and brackets omitted)). Because the public interest is always served by preventing violation of a party's constitutional rights, the public's interest in preventing the violation of Plaintiffs' constitutional rights weighs in Plaintiffs' favor.

Page 35 -    Plaintiffs' Motion for Preliminary Injunction

4829-3798-4979.8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

## VI.    CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the court enter a preliminary injunction against Defendants.

DATED this 8th day of February, 2021.

MILLER NASH GRAHAM & DUNN LLP

*s/ Bruce L. Campbell*
Bruce L. Campbell, OSB No. 925377
bruce.campbell@millernash.com
John C. Clarke, OSB No. 153245
john.clarke@millernash.com
111 S.W. Fifth Ave., Suite 3400
Portland, OR  97204
Phone: 503.224.5858

DISABILITY RIGHTS LEGAL CENTER
Christopher Knauf, (*Pro Hac Vice*)
ck@drlcenter.org
Anthony Pinggera, (*Pro Hac Vice*)
acp@drlcenter.org
1541 Wilshire Boulevard, Suite 400
Los Angeles, California 90017
Phone:  213.736.1031

CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
Timothy Fox, (*Pro Hac Vice*)
tfox@creeclaw.org
Amy Robertson, (*Pro Hac Vice*)
arobertson@creeclaw.org
Pilar Gonzales Morales, (*Pro Hac Vice*)
pgonzalez@creeclaw.org
1245 E. Colfax Avenue, Suite 400
Denver, Colorado 80218
Phone:  303.757.7901

*Attorneys for Plaintiffs*

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Motion for Preliminary Injunction on

the attorney or party listed below on the date set forth below by the method(s) indicated below

on the date set forth below by the method(s) indicated:

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
JOHN V. COGHLAN
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
MICHAEL P. CLENDENEN, DC #1660091
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 353-0693
Facsimile: (202) 616-8460

*Attorneys for Defendants Wolf and*
*Washington in their official capacity*

☐ First-class mail, postage prepaid
☐ Facsimile, pursuant to ORCP 9 F
☐ Hand-delivery
☐ Overnight courier, delivery prepaid
☐ E-mail, pursuant to ORCP 9 G
☒ E-mail copy, as a courtesy only
☒ OJD EFILING SYSTEM, if
registered at the party's email
address as recorded on the date of
service in the eFiling system,
pursuant to UTCR 21.100.
☐ Other

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

ELLEN F. ROSENBLUM, OSB #753239
Attorney General
DREW K. BAUMCHEN, OSB #045032
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Facsimile: (503) 947-4791
Email: ellen.f.rosenblum@doj.state.or.us
   Drew.Baumchen@doj.state.or.us

*Attorneys for Defendant Terri Davie*

| | |
|---|---|
| ☐ | First-class mail, postage prepaid |
| ☐ | Facsimile, pursuant to ORCP 9 F |
| ☐ | Hand-delivery |
| ☐ | Overnight courier, delivery prepaid |
| ☐ | E-mail, pursuant to ORCP 9 G |
| ☒ | E-mail copy, as a courtesy only |
| ☒ | OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100. |
| ☐ | Other |

DANIEL SIMON, OSB #124544
Deputy City Attorney
LINDA LAW, OSB #943660
Chief Deputy City Attorney
linda.law@portlandoregon.gov
LINH T. VU, OSB #004164
Senior Deputy City Attorney
linh.vu@portlandoregon.gov
ELIZABETH C. WOODARD, OSB #075667
Deputy City Attorney
beth.woodard@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
Email: dan.simon@portlandoregon.gov
   linda.law@portlandoregon.gov
   linh.vu@portlandoregon.gov
   beth.woodard@portlandoregon.gov

*Attorneys for City of Portland, Ted Wheeler and Chuck Lovell*

| | |
|---|---|
| ☐ | First-class mail, postage prepaid |
| ☐ | Facsimile, pursuant to ORCP 9 F |
| ☐ | Hand-delivery |
| ☐ | Overnight courier, delivery prepaid |
| ☐ | E-mail, pursuant to ORCP 9 G |
| ☒ | E-mail copy, as a courtesy only |
| ☒ | OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100. |
| ☐ | Other |

Page 2 - Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

GLENN GREENE
New York State Bar No. 2674448
Senior Trial Attorney
DAVID G. CUTLER
Illinois State Bar No. 6303130
Trial Attorney
Torts Branch, Civil Division
Constitutional and Specialized Tort Litigation
PO Box 7146
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Facsimile: (202) 616-4314
Email: glenn.greene@usdoj.gov

    ☐ First-class mail, postage prepaid
    ☐ Facsimile, pursuant to ORCP 9 F
    ☐ Hand-delivery
    ☐ Overnight courier, delivery prepaid
    ☐ E-mail, pursuant to ORCP 9 G
    ☒ E-mail copy, as a courtesy only
    ☒ OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100.
    ☒ Other

*Attorneys for Defendants Wolf and Washington in their individual capacity*

CHRIS GILMORE, OSB #980570
Multnomah County Attorney's Office
501 SE Hawthorne Blvd., Ste. 500
Portland, OR 97214
Telephone: (503) 988-3138
Facsimile: (503) 988-3377
Email: chris.gilmore@multco.us

*Attorney for Multnomah County and Michael Reese*

    ☐ First-class mail, postage prepaid
    ☐ Facsimile, pursuant to ORCP 9 F
    ☐ Hand-delivery
    ☐ Overnight courier, delivery prepaid
    ☐ E-mail, pursuant to ORCP 9 G
    ☒ E-mail copy, as a courtesy only
    ☒ OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100.
    ☐ Other

DATED: February 8th, 2021.

*s/ Bruce L. Campbell*
Attorneys for Plaintiffs

Page 3 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204