**Bruce L. Campbell**, OSB No. 925377
bruce.campbell@millernash.com
**John C. Clarke**, OSB No. 153245
john.clarke@millernash.com
**MILLER NASH GRAHAM & DUNN LLP**
3400 U.S. Bancorp Tower 111 S.W. Fifth Avenue
Portland, Oregon 97204
Phone: 503.224.5858

**Christopher Knauf**, admitted *pro hac vice*
ck@drlcenter.org
**Anthony Pinggera**, admitted *pro hac vice*
acp@drlcenter.org
**DISABILITY RIGHTS LEGAL CENTER**
1541 Wilshire Boulevard, Suite 400
Los Angeles, California 90017
Phone: 213.736.1031

**Amy Robertson**, admitted *pro hac vice*
arobertson@creeclaw.org
**Timothy Fox**, admitted *pro hac vice*
tfox@creeclaw.org
**Pilar Gonzales Morales**, admitted *pro hac vice*
pgonzalez@creeclaw.org
**CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER**
1245 E. Colfax Avenue, Suite 400
Denver, Colorado 80218
Phone: 303.757.7901

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PHILIP WOLFE, KATALINA DURDEN, MELISSA LEWIS, JUNIPER SIMONIS, individually, and DISABILITY RIGHTS OREGON, an Oregon nonprofit and advocacy corporation,

Plaintiffs,

v.

CITY OF PORTLAND, a municipal corporation; TED WHEELER, in his official capacity; CHUCK LOVELL, in his official capacity; MULTNOMAH COUNTY, a political subdivision of the State; MICHAEL REESE, in his official capacity; TERRI DAVIE, in her official capacity; CHAD WOLF, in his individual capacity; ALEJANDRO MAYORKAS, in his official capacity; DONALD WASHINGTON, in his individual and official capacity; and DOES 1-100, individual and supervisory officers of local, state, and federal government,

Defendants.

Case No. 3:20-cv-01882-SI

DECLARATION OF HEATHER VAN WILDE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Heather Van Wilde, hereby declare and state as follows:

1. My name is Heather Van Wilde. I am 39 years old and I reside in Portland, Oregon. I make this declaration on personal knowledge of the matters stated in this declaration or from sources deemed reliable.

2. I am a person with several disabilities. I am a veteran of the United States Air Force. As a result of my military service, I am living with multiple disabilities, including Post-Traumatic Stress Disorder (PTSD), chronic migraines, and patellofemoral syndrome, a form

of traumatic arthritis. I have separately been diagnosed with vertigo and fibromyalgia, a disability that is characterized by chronic, unspecified pain throughout my body. My fibromyalgia also results in chronic fatigue that negatively impacts my sleep quality.

3. As a result of my disabilities, I was prescribed and must use a walker. The primary use of my walker is to act as a stabilizer due to my vertigo condition. If I am walking and experience vertigo, I can grab the walker and remain upright or pause and wait for the episode to pass. The walker also helps alleviate some pain from my patellofemoral syndrome and allows me a space to place heavy items, which further reduces stress on my knees and back.

4. My Veterans Affairs care providers have prescribed several health aides to help manage my PTSD. I have an attendant who accompanies me to public places, as my PTSD symptoms of hypersensitivity, jumpiness and dissociation typically occur in public places. My attendant can accompany me on public transit without paying the transit fare. I have also been prescribed a day-to-day aide who lives with me.

5. I attend protests in Oregon as an independent journalist to document the experiences of protesters and hold law enforcement accountable for their actions. I began attending protests in Portland on June 11, 2020.

6. Law enforcement has failed to accommodate my disabilities on multiple occasions, which has caused me to suffer harm.

7. On August 6th, 2020, I attended a nighttime protest at the Portland East Police Precinct as an independent journalist. At approximately 12:37 am on the 7th, law enforcement made their first announcement using a Long Range Acoustic Device (LRAD), declaring that the street in front of the East Precinct was closed.

8. I believe that the volume, inflection or range of the LRAD announcement triggered an extreme vertigo episode. I dropped to my knees, hands pressed to my ears to try to

dampen the volume of the announcement. I was unable to comprehend the specific language of the order that was being given due to the pain that I was in.

9. Unknown people came up to me and tried to lead me away, but I shouted that I couldn't move while the LRAD was in use. Someone also tried to give me earplugs, but I couldn't let go of my ears to put them in.

10. The LRAD briefly stopped and I attempted to get off the ground, only to drop to my knees again as the LRAD was used for another announcement. When the second announcement was over, I was finally able to get the earplugs offered to me into my ears.

11. Since I could not understand the announcements due to the pain I experienced, I assumed that I was in violation of a police order. I attempted to leave the area after the second LRAD announcement, unsure of which direction to travel.

12. I was still shaken from the two LRAD incidents, and I was overcome by a bout of nausea so powerful that I had to hide behind a vehicle in a parking lot to wait for it to pass before going any further. After approximately two to three minutes, I recovered enough to make my way out of the area.

13. After this incident, I attempted to reach out to law enforcement representatives to start a conversation regarding my concerns about my safety and that of other press and protestors with disabilities, and to request ADA accommodations for my disabilities.

14. On August 9, 2020, I sent an email to the PPB's Equity Manager as well as the ADA coordinators for Mayor Wheeler (in his capacity as Police Commissioner) and Commissioner Fritz (in her capacity as Commissioner of the Office of Equity and Human Rights). At the time, the PPB did not have an ADA coordinator.

15. I made several specific requests in this accommodations email: 1) that law enforcement not bull rush at or near me; 2) that I be afforded sufficient time and space to safely comply if a media dispersal order is necessary; 3) that any LRAD that is used in my vicinity be

pointed away from me; and 4) that law enforcement not point strobes, bright lights, or flashing lights at me. I also reminded the city about the federal injunction that was in place and requested that law enforcement not make dispersal orders that do not explicitly exempt media.

16. On August 23rd, 2020, after ensuring that I waited more than five business days since requesting ADA accommodations, I attended a protest at the North Precinct. I positioned myself at the front steps of the Boys & Girls club nearby, where I was out of the way of other press and protesters, as well as leaving the sidewalk clear for the eventual dispersal by police.

17. Any time that I was filming from the day I began covering protests, I wore a press pass on a lanyard with my name and photo. At this particular protest on August 23rd, I also had a Canon DSLR camera with external flash around my neck, a gas mask with a CBRN filter, and a bright pink hard hat with 'PRESS' in two-inch-tall black block letters printed on the left and right sides. The helmet also has a large sticker with my company logo on the back, and a small label-maker style sticker on the front with my full name. The camera was mounted on my walker using an eight-foot 'selfie stick'.

18. I maintained my position in front of the Boys & Girls club until approximately 11:36 pm, when a rush of protestors and police ran by.

19. An officer yelled at me to move. I responded that I was press.

20. The officer made a gesture indicating that he still wanted me to move and, as verified from footage captured by me on my camera, one second later grabbed my walker and started to move it away from me. A true and correct copy of video reflecting this incident has been filed with this declaration via thumb drive and is marked as Exhibit 1.

21. I yelled out that the walker was mine, but the officer dragged my walker out of my reach. I attempted to reach for it, fearing that he was going to continue moving it away from me.

22. In the attempt to grab my walker, I fell, breaking the seal on my gas mask and flooding me with tear gas.

23. The effects of the tear gas were immediate. My eyes burned and watered, making it impossible for me to see for some time. Mucous poured out of my nose, and I coughed uncontrollably.

24. Footage captured of me on the ground just after I fell shows that the officer moved my walker approximately 10-15 feet away from me.

25. The fall itself aggravated my current disabilities. I experience body pain and discomfort often due to my patellofemoral syndrome and fibromyalgia, but the fall caused this pain to noticeably increase. Several days later, I was still experiencing unusual levels of discomfort in my right knee and left shoulder. Approximately ten minutes after being hit with tear gas, I was able to recover enough to move away from the area to a safe location where a support person evacuated me and took me home.

26. Upon review of footage from other journalists on the ground that night, it appears that I was the only press member targeted for dispersal. Several press members were within arms-reach of police officers, and rarely were they asked to step back, much less told to leave or physically engaged with.

27. Approximately three to four days after this encounter, I was treated at the hospital for traumatic pain in my knees and shoulder and respiratory issues, specifically a very raw and sore throat, brought about as a response to inhaling tear gas.

28. In the months since the event, I have had difficulty sleeping, alternating between insomnia and lethargy. I also have an increase in bodily pain associated with my fibromyalgia. Medications that were previously effective have had less effect on this increased pain. My left shoulder, which normally is my better shoulder, has had consistent increased pain that started directly after my fall the night of August 23rd.

29. My PTSD symptoms have increased as well. I dissociate more easily and find it difficult to concentrate, and I am more hyper-vigilant in public settings than I have been before. Leaving the house by myself is much more difficult now without an attendant or my aide with me for social support.

30. Since the incident on August 23rd, I have only documented one protest. Due to my increased anxiety and PTSD symptoms, I positioned myself so far away from the action of the protest that my footage is essentially useless.

31. The actions of law enforcement directly affected my decision to pursue coverage of other topics unrelated to protests, which in turn caused donations from viewers of my livestream to drop significantly. The donations I received from my coverage of the Portland protests were used to upgrade my equipment, pay for transportation, and other expenses related to continuing my independent journalism. Without these donations, I have been unable to move forward in this career path at this time.

32. After sending my ADA accommodations email requests on August 9th, I waited 17 calendar days, a total of 12 business days, with no response from any recipient of my emails. On August 22, 2020, I opened public records requests with the city to attempt to track my emails, so that I might know whether my ADA requests had been forwarded to any other persons.

33. I was not able to request public records information from the PPB Liaison office because I could not find information on how to request this type of record.

34. On September 10th, 2020, I finally received a response to my records request from the city, confirming that my ADA accommodation request that was sent to Mr. Washington, the ADA coordinator for Mayor Wheeler, had not been responded to, forwarded, or used in any other way. On September 21st, 2020, the city also confirmed that my email to Ms.

Adamsick, ADA coordinator for Commissioner Fritz, also was not responded to, forwarded, or used in any other way. It seems that my ADA requests had been entirely ignored.

**I declare under penalty of perjury and under the laws of the United States, pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, memory, and belief.**

Executed on February 5th, 2021, in Portland, Oregon.

*s/ Heather Van Wilde*
Heather Van Wilde

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DECLARATION OF HEATHER VAN WILDE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION on the attorney or party listed below on the date set forth below by the method(s) indicated:

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
JOHN V. COGHLAN
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
MICHAEL P. CLENDENEN, DC #1660091
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 353-0693
Facsimile: (202) 616-8460

*Attorneys for Defendants Wolf and Washington in their official capacity*

- ☐ First-class mail, postage prepaid
- ☐ Facsimile, pursuant to ORCP 9 F
- ☐ Hand-delivery
- ☐ Overnight courier, delivery prepaid
- ☐ E-mail, pursuant to ORCP 9 G
- ☒ E-mail copy, as a courtesy only
- ☒ OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100.
- ☐ Other

ELLEN F. ROSENBLUM, OSB #753239
Attorney General
DREW K. BAUMCHEN, OSB #045032
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Facsimile: (503) 947-4791
Email: ellen.f.rosenblum@doj.state.or.us
Drew.Baumchen@doj.state.or.us

*Attorneys for Defendant Terri Davie*

- ☐ First-class mail, postage prepaid
- ☐ Facsimile, pursuant to ORCP 9 F
- ☐ Hand-delivery
- ☐ Overnight courier, delivery prepaid
- ☐ E-mail, pursuant to ORCP 9 G
- ☒ E-mail copy, as a courtesy only
- ☒ OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100.
- ☐ Other

DANIEL SIMON, OSB #124544
Deputy City Attorney
LINDA LAW, OSB #943660
Chief Deputy City Attorney
linda.law@portlandoregon.gov
LINH T. VU, OSB #004164
Senior Deputy City Attorney
linh.vu@portlandoregon.gov
ELIZABETH C. WOODARD, OSB #075667
Deputy City Attorney
beth.woodard@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
Email: dan.simon@portlandoregon.gov
linda.law@portlandoregon.gov
linh.vu@portlandoregon.gov
beth.woodard@portlandoregon.gov

*Attorneys for City of Portland, Ted Wheeler and Chuck Lovell*

☐ First-class mail, postage prepaid
☐ Facsimile, pursuant to ORCP 9 F
☐ Hand-delivery
☐ Overnight courier, delivery prepaid
☐ E-mail, pursuant to ORCP 9 G
☒ E-mail copy, as a courtesy only
☒ OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100.
☐ Other

GLENN GREENE
New York State Bar No. 2674448
Senior Trial Attorney
DAVID G. CUTLER
Illinois State Bar No. 6303130
Trial Attorney
Torts Branch, Civil Division
Constitutional and Specialized Tort Litigation
PO Box 7146
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Facsimile: (202) 616-4314
Email: glenn.greene@usdoj.gov

*Attorneys for Defendants Wolf and Washington in their individual capacity*

☐ First-class mail, postage prepaid
☐ Facsimile, pursuant to ORCP 9 F
☐ Hand-delivery
☐ Overnight courier, delivery prepaid
☐ E-mail, pursuant to ORCP 9 G
☒ E-mail copy, as a courtesy only
☒ OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100.
☐ Other

CHRIS GILMORE, OSB #980570
Multnomah County Attorney's Office
501 SE Hawthorne Blvd., Ste. 500
Portland, OR 97214
Telephone: (503) 988-3138
Facsimile: (503) 988-3377
Email: chris.gilmore@multco.us

*Attorney for Multnomah County and Michael Reese*

- ☐ First-class mail, postage prepaid
- ☐ Facsimile, pursuant to ORCP 9 F
- ☐ Hand-delivery
- ☐ Overnight courier, delivery prepaid
- ☐ E-mail, pursuant to ORCP 9 G
- ☒ E-mail copy, as a courtesy only
- ☒ OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100.
- ☐ Other

DATED: February 8th, 2021.

*s/ John C. Clarke*___________
Attorneys for Plaintiffs