BRIAN M. BOYNTON
Acting Assistant Attorney General
SCOTT ERIK ASPHAUG
Acting United States Attorney
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
ANDREA W. MCCARTHY
Senior Trial Counsel
GLENN S. GREENE
(New York State Bar No. 2674448)
Senior Trial Attorney
DAVID G. CUTLER
(Illinois Bar No. 6303130)
Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314

*Attorneys for Defendants Wolf and Washington
in their individual capacities*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PHILIP WOLFE, *et al.*, | Case No. 3:20-cv-01882-SI |
| Plaintiffs, | |
| | **INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF** |
| v. | |
| CITY OF PORTLAND, *et al.*, | |
| Defendants. | **Oral Argument Requested** |

INDIVIDUAL CAPACITY DEFENDANTS'MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Chad Wolf and Donald Washington, in their individual capacities, respectfully move for an order dismissing all of the claims asserted against them in Plaintiffs' Amended Complaint. Defendants' motion is based upon the following Memorandum in Support.

## LR 7-1 CERTIFICATION

Counsel for defendants certifies that in compliance with Local Rule 7-1(a), the parties conferred on this motion and were unable to resolve the disputes at issue therein.

BRIAN M. BOYNTON
Acting Assistant Attorney General
SCOTT ERIK ASPHAUG
Acting United States Attorney
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
ANDREA W. MCCARTHY
Senior Trial Counsel
GLENN S. GREENE
(New York State Bar No. 2674448)
Senior Trial Attorney
DAVID G. CUTLER
(Illinois Bar No. 6303130)
Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314

*Attorneys for Defendants Wolf and Washington*
*In their individual capacities*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PHILIP WOLFE, *et al.*, | Case No. 3:20-cv-01882-SI |
| Plaintiffs, | |
| v. | **MEMORANDUM IN SUPPORT OF INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS** |
| CITY OF PORTLAND, *et al.*, | |
| Defendants. | |

INDIVIDUAL CAPACITY DEFENDANTS'MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iv

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND ........................................................................... 2

LEGAL STANDARD UNDER FEDERAL RULE 12(b)(6) ........................... 3

ARGUMENT .................................................................................................. 3

I.      BIVENS IS NOT AVAILABLE TO CHALLENGE HIGH-LEVEL POLICY
        DECISIONS TO PROTECT FEDERAL PROPERTY AND PERSONNEL IN
        RESPONSE TO CIVIL UNREST. .................................................................. 3

        A.      *Bivens* is a disfavored extra-statutory remedy. ........................................... 4

        B.      *Bivens* should not be extended into this novel context. .............................. 6

        C.      Special factors preclude a *Bivens* remedy against the former Acting Homeland
                Security Secretary and the Marshals Service Director for decisions associated with
                protecting federal property and personnel. .............................................. 11

                i.       *Bivens* should not be extended to challenge high-level government policy........ 12

                ii.      The Court should pause before allowing a suit that invites intrusive discovery
                         into the government's decision-making processes. ........................................ 15

                iii.     There are a host of alternative processes that preclude a *Bivens* remedy. .......... 18

                         a.      Equitable relief against official-capacity defendants. ........................................18

                         b.      Statutory relief under the Rehabilitation Act & Americans with Disabilities
                                 Act. ....................................................................................................20

                         c.      Damages under the Federal Tort Claims Act. ................................................23

                         d.      Internal checks on misconduct. ..........................................................24

II.     WOLF AND WASHINGTON ARE ENTITLED TO QUALIFIED IMMUNITY. ....... 25

        A.      The framework of the qualified immunity defense. ................................. 25

        B.      Plaintiffs fail to allege the personal participation of Wolf or Washington in a
                violation of any constitutional right. ..................................................... 27

        C.      Plaintiffs fail to state any clearly established constitutional violation. ..................... 30

D.     Plaintiffs fail to state any clearly established statutory violation................................ 33

**CONCLUSION** ........................................................................................................................ 35

# TABLE OF AUTHORITIES

**Cases**

*Adderley v. Florida,*
  385 U.S. 39 (1966) ........................................................................................................ 4, 9

*Aldabe v. Aldabe,*
  616 F.2d 1089 (9th Cir. 1980) ............................................................................................26

*Anderson v. Creighton,*
  483 U.S. 635 (1987) .............................................................................................................27

*Arar v. Ashcroft,*
  585 F.3d 559 (2d Cir. 2009) ...............................................................................................33

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) .......................................................................................................26, 27

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................................................passim

*Barnes v. Gorman,*
  536 U.S. 181 (2002) .............................................................................................................20

*Barren v. Harrington,*
  152 F.3d 1193 (9th Cir. 1998) ............................................................................................26

*Beddow v. Rhodes,*
  No. 2:18-CV-2442-JAR-TJJ, 2020 WL 1873565 (D. Kan. Apr. 15, 2020) ........................21

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................................3, 28, 29

*Bernini v. City of St. Paul,*
  665 F.3d 997 (8th Cir. 2012) ..............................................................................................31

*Big Cats of Serenity Springs, Inc. v. Rhodes,*
  843 F.3d 853 (10th Cir. 2016) ............................................................................................35

*Billings v. United States,*
  57 F.3d 797 (9th Cir. 1995) ...........................................................................................33, 35

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) .................................................................................................. 1, 5, 10, 35

*Boule v. Egbert,*
    980 F.3d 1309 (9th Cir. 2020) ................................................................................. 24

*Bozgoz v. James,*
    No. CV 19-0239 (ABJ), 2020 WL 4732085 (D.D.C. Aug. 14, 2020) ...................... 21

*Brazil v. U.S. Dep't of Navy,*
    66 F.3d 193 (9th Cir. 1995) ..................................................................................... 21, 23

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ................................................................................................. 26

*Bush v. Lucas,*
    462 U.S. 367 (1983) ................................................................................................. 6, 7, 21

*Cabrera v. Martin,*
    973 F.2d 735 (9th Cir. 1992) ................................................................................... 33, 34

*Camreta v. Greene,*
    563 U.S. 692 (2011) ................................................................................................. 25

*Cantu v. Moody,*
    933 F.3d 414 (5th Cir. 2019) ................................................................................... 10, 24

*Carlson v. Green,*
    446 U.S. 14 (1980) ................................................................................................... 5, 23

*Chappell v. Wallace,*
    462 U.S. 296 (1983) ................................................................................................. 15

*Cheney v. U.S. Dist. Court for D.C.,*
    542 U.S. 367 (2004) ................................................................................................. 15, 16

*Chuman v. Wright,*
    76 F.3d 292 (9th Cir. 1996) ..................................................................................... 26, 28

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) ................................................................................................. 23

*City of Los Angeles v. AECOM Servs., Inc.,*
    854 F.3d 1149 (9th Cir. 2017) ................................................................................. 20

*Clark v. Cmty. for Creative Non-Violence,*

    468 U.S. 288 (1984) ...................................................................................14

*Clinton v. Jones,*

    520 U.S. 681 (1997) ...................................................................................16

*Consol. Rail Corp. v. Darrone,*

    465 U.S. 624 (1984) ...................................................................................21

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*

    473 U.S. 788 (1985) ...................................................................................12

*Corr. Servs. Corp. v. Malesko,*

    534 U.S. 61 (2001) ................................................................ 13, 19, 23, 26

*Cox v. Louisiana,*

    379 U.S. 536 (1965) .............................................................................12, 15

*Cox v. New Hampshire,*

    312 U.S. 569 (1941) ...................................................................................10

*Crawford-El v. Britton,*

    523 U.S. 574 (1998) ...................................................................................17

*Daly-Murphy v. Winston,*

    837 F.2d 348 (9th Cir. 1987) ...............................................................33, 35

*Dare v. California,*

    191 F.3d 1167 (9th Cir. 1999) ..............................................................22, 23

*Davis v. Passman,*

    442 U.S. 228 (1979) .....................................................................................5

*F.D.I.C. v. Meyer,*

    510 U.S. 471 (1994) ...................................................................................18

*Farah v. Weyker,*

    926 F.3d 492 (8th Cir. 2019) .................................................................. 8, 10

*Fazaga v. Fed. Bureau of Investigation,*

    965 F.3d 1015 (9th Cir. 2020) .....................................................................4

*Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,*

    443 U.S. 340 (1979) ...................................................................................16

*Felarca v. Birgeneau,*
  891 F.3d 809 (9th Cir. 2018) .................................................................... 29, 30

*Florer v. Congregation Pidyon Shevuyim, N.A.,*
  639 F.3d 916 (9th Cir. 2011) .................................................................... 35

*Franklin v. Fox,*
  312 F.3d 423 (9th Cir. 2002) .................................................................... 33, 35

*Gale v. SAIF Corp.,*
  No. 3:18-CV-00707-AC, 2020 WL 809381 (D. Or. Jan. 3, 2020) ............. 34

*Gillette v. Malheur Cty.,*
  737 F. App'x 811 (9th Cir. 2018) ............................................................. 34

*Graham v. Connor,*
  490 U.S. 386 (1989) ................................................................................. 31

*Graves v. Clinton,*
  No. 2:10-CV-03156 MCE, 2011 WL 5024500 (E.D. Cal. Oct. 20, 2011) .......... 21

*Griffin v. Zurbano,*
  813 F. App'x 330 (9th Cir. 2020) ............................................................. 34

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ................................................................................. 26

*Hart v. Parks,*
  450 F.3d 1059 (9th Cir. 2006) .................................................................. 33

*Hayes v. Voong,*
  709 F. App'x 494 (9th Cir. 2018) ............................................................. 22

*Hernandez v. Foster,*
  657 F.3d 463 (7th Cir. 2011) .................................................................... 26

*Hernandez v. Mesa,*
  137 S. Ct. 2003 (2017) ............................................................................. 4, 25

*Hernandez v. Mesa,*
  140 S. Ct. 735 (2020) ............................................................................... passim

*Hobbs v. Devine,*
  819 F. App'x 543 (9th Cir. 2020) ............................................................. 25

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - vii

*Ibrahim v. Dep't of Homeland Sec.,*
    538 F.3d 1250 (9th Cir. 2008) ............................................................................ 33, 34

*Index Newspapers LLC v. U.S. Marshals Serv.,*
    977 F.3d 817 (9th Cir. 2020) ................................................................................. 31

*K.O. v. ICE,*
    468 F. Supp. 3d 350 (D.D.C. 2020) .................................................................. 16, 17

*King v. United States,*
    917 F.3d 409 (6th Cir. 2019) ................................................................................. 35

*Koala v. Khosla,*
    931 F.3d 887 (9th Cir. 2019) ................................................................................... 9

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ................................................................................. 32

*Lillemoe v. U.S. Dep't of Agric., Foreign Agric. Serv.,*
    344 F. Supp. 3d 215 (D.D.C. 2018) ...................................................................... 17

*LKQ Corp. v. United States,*
    No. 18-CV-1562 (DLF), 2019 WL 3304708 (D.D.C. July 23, 2019) ...................... 8

*Lloyd v. Gerhard,*
    No. 3:17-CV-00582-MK, 2019 WL 1450531 (D. Or. Jan. 2, 2019) ...................... 34

*Loumiet v. United States,*
    948 F.3d 376 (D.C. Cir. 2020) ........................................................................ 6, 7, 8

*Lucas v. United States,*
    443 F. Supp. 539 (D.D.C. 1977) ........................................................................... 32

*Lyall v. City of Los Angeles,*
    807 F.3d 1178 (9th Cir. 2015) ............................................................................... 31

*Malley v. Briggs,*
    475 U.S. 335 (1986) .............................................................................................. 26

*Malnes v. U.S. Dep't of Educ.,*
    No. CV-16-08128-PCT-JJT, 2017 WL 2834144 (D. Ariz. June 30, 2017) ........... 21

*McClintock v. United States,*
    No. 3:18-CV-01937-SB, 2020 WL 1868264 (D. Or. Mar. 18, 2020) .................... 21

*McDonough v. Anoka Cty.*,

   799 F.3d 931 (8th Cir. 2015) ................................................................................28

*Mejia-Mejia v. ICE*,

   No. CV 18-1445 (PLF), 2019 WL 4707150 (D.D.C. Sept. 26, 2019) ............................ 13, 16, 19, 20

*Meshal v. Higgenbotham*,

   804 F.3d 417 (D.C. Cir. 2015) .......................................................................... 7, 18

*Minneci v. Pollard*,

   565 U.S. 118 (2012) ..................................................................................23

*Mitchell v. Forsyth*,

   472 U.S. 511 (1985) ..................................................................................27

*Morse v. N. Coast Opportunities, Inc.*,

   118 F.3d 1338 (9th Cir. 1997) ..........................................................................35

*Navarro v. Block*,

   72 F.3d 712 (9th Cir. 1995) ............................................................................32

*Occupy Eugene v. U.S. Gen. Servs. Admin.*,

   No. 6:12-CV-02286-MC, 2013 WL 6331013 (D. Or. Dec. 3, 2013) ..............................................20

*Okwu v. McKim*,

   682 F.3d 841 (9th Cir. 2012) ...........................................................................21

*Oliva v. Nivar*,

   973 F.3d 438 (5th Cir. 2020) ...........................................................................24

*Oliveras v. Basile*,

   440 F. Supp. 3d 365 (S.D.N.Y. 2020) .....................................................................24

*Payton v. New York*,

   445 U.S. 573 (1980) ...................................................................................9

*Pers. Adm'r of Mass. v. Feeney*,

   442 U.S. 256 (1979) ..................................................................................32

*Quaker Action Grp. v. Hickel*,

   421 F.2d 1111 (D.C. Cir. 1969) .........................................................................9

*Ramirez v. Parker*,

   No. 3:13-CV-01772-AC, 2014 WL 7187463 (D. Or. Dec. 16, 2014) ............................................23

*Reichle v. Howards,*

    566 U.S. 658 (2012) ................................................................................................ 6, 7

*Reininger v. Oklahoma,*

    292 F. Supp. 3d 1254 (W.D. Okla. 2017) .................................................................22

*Rosebrock v. Beiter,*

    788 F. Supp. 2d 1127 (C.D. Cal. 2011) ................................................................. 4, 9

*Schwarz v. Meinberg,*

    761 F. App'x 732 (9th Cir. 2019) ..................................................................... passim

*Schweiker v. Chilicky,*

    487 U.S. 412 (1988) ...............................................................................................21

*Sheehan v. City & Cty. of San Francisco,*

    743 F.3d 1211 (9th Cir. 2014) .................................................................................14

*Sherman v. Kelly,*

    No. 3:16-CV-00865-MO, 2017 WL 539583 (D. Or. Feb. 8, 2017) ...........................22

*Smith v. Potter,*

    No. 1:09CV00587, 2010 WL 1500876 (M.D.N.C. Apr. 14, 2010) ...........................21

*Tennessee v. Garner,*

    471 U.S. 1 (1985) ...................................................................................................31

*Tennessee v. Lane,*

    541 U.S. 509 (2004) ...............................................................................................22

*Terrell v. Brewer,*

    935 F.2d 1015 (9th Cir. 1991) .................................................................................28

*United States v. Allen,*

    760 F.2d 447 (2d Cir. 1985) ...................................................................................10

*United States v. Grace,*

    461 U.S. 171 (1983) .................................................................................................9

*United States v. Griefen,*

    200 F.3d 1256 (9th Cir. 2000) .................................................................................10

*United States v. Stanley,*

    483 U.S. 669 (1987) ............................................................................................ 4, 17

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - x

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    865 F.2d 1539 (9th Cir. 1989) ................................................................................33

*Vanderklok v. United States*,
    868 F.3d 189 (3d Cir. 2017) ....................................................................... 6, 16, 25

*Vega v. United States*,
    881 F.3d 1146 (9th Cir. 2018) .......................................................................passim

*Vinson v. Thomas*,
    288 F.3d 1145 (9th Cir. 2002) ...................................................................... 20, 22

*W. Radio Servs. Co. v. U.S. Forest Serv.*,
    578 F.3d 1116 (9th Cir. 2009) ................................................................................20

*West v. City of Mesa*,
    128 F. Supp. 3d 1233 (D. Ariz. 2015) ....................................................................35

*Wilkie v. Robbins*,
    551 U.S. 537 (2007) ........................................................................................passim

*Wilson v. Ark. Dep't of Human Servs.*,
    850 F.3d 368 (8th Cir. 2017) ................................................................................28

*Wilson v. Libby*,
    498 F. Supp. 2d 74 (D.D.C. 2007) ........................................................................19

*Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. 2008) ...................................................................... 17, 19

*Wood v. Moss*,
    572 U.S. 744 (2014) .....................................................................6, 9, 17, 26

*Woodrum v. Woodward Cty.*,
    866 F.2d 1121 (9th Cir. 1989) ................................................................................34

*Zavala v. Rios*,
    721 F. App'x 720 (9th Cir. 2018) ...................................................................... 11, 13

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ....................................................................................passim

**Statutes, Rules, & Regulations**

5 U.S.C. App. 3 § 12 ................................................................................................24

5 U.S.C. App. 3 § 8E ...............................................................................................24

5 U.S.C. App. § 8I ...................................................................................................24

6 U.S.C. §§ 111-122 ..................................................................................................3

6 U.S.C. § 345 ..........................................................................................................24

6 U.S.C. § 611(b)(1)(G) ...........................................................................................24

6 U.S.C. § 613(d)(3) .................................................................................................24

8 U.S.C. § 561(a) .......................................................................................................3

18 U.S.C. § 2 ............................................................................................................12

18 U.S.C. § 111(a)(1) ...............................................................................................32

18 U.S.C. § 3056(d) .................................................................................................32

18 U.S.C. § 371 ........................................................................................................12

18 U.S.C. § 1361 ...................................................................................................8, 12

18 U.S.C. § 1369 ......................................................................................................12

18 U.S.C. § 2101 ......................................................................................................12

18 U.S.C. § 2339A ...................................................................................................12

28 U.S.C. §§ 241-42 ................................................................................................25

28 U.S.C. § 566 ..........................................................................................................8

28 U.S.C. § 1346(b) .................................................................................................23

28 U.S.C. §§ 2671-80 ..............................................................................................23

28 U.S.C. § 2680(a) .................................................................................................14

29 U.S.C. § 794a ......................................................................................................20

40 U.S.C. § 1315 ...................................................................................................8, 12

42 U.S.C. § 1983 ......................................................................................................33

42 U.S.C. § 2000d .....................................................................................................20

42 U.S.C. § 12101(b)(4) ...........................................................................................22

54 U.S.C. § 100722 ...................................................................................................12

28 C.F.R. § 0.51(b)(3) ..............................................................................................14

28 C.F.R. § 41.4(b) ...................................................................................................14

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - xii

28 C.F.R. § 35.130(b)(7) ................................................................................................................14

Pub. L. No. 95-602, 92 Stat. 2982 (1978). ...................................................................................22

Pub. L. No. 107-56, § 1001(3), 115 Stat. 272, 391 (2001). .........................................................24

**Other Authorities**

Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (Nov. 4, 1980) ...........................................13, 14

Exec. Order No. 13,933, 85 Fed. Reg. 40,081 (June 26, 2020) .............................................8, 12

H.R. Rep. 102-822 (Aug. 10, 1992) .............................................................................................22

S. Rep. 102-357 (Aug. 3, 1992) ....................................................................................................22

**INTRODUCTION**

Following the tragic deaths of Breonna Taylor and George Floyd at the hands of local police officers, large demonstrations broke out across the country. Many of the protests were peaceful, but several localities experienced violence and property destruction. One of those localities is Portland, Oregon. Plaintiffs—a disability-rights advocacy group and four individual plaintiffs—allege that local, state, and federal officials discriminated against protesters with disabilities by dispersing or detaining them using means that did not reasonably accommodate their disabilities. Invoking the limited remedy recognized in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiffs assert First, Fourth, and Fifth Amendment claims seeking money damages from the personal assets of former Acting Secretary of the Department of Homeland Security ("DHS"), Chad Wolf, and the Director of the U.S. Marshals Service, Donald Washington, for their alleged role in the injuries allegedly caused by federal officers. Plaintiffs also assert damages claims against Wolf and Washington under 42 U.S.C. § 1983 for an alleged state-law conspiracy to deprive Plaintiffs of their constitutional rights.

As shown below, Plaintiffs' personal-capacity claims against Wolf and Washington should be dismissed under Federal Rule 12(b)(6) for failure to state a claim. Plaintiffs' constitutional claims fail because in the more than forty years since deciding *Bivens*, the Supreme Court has recognized a new *Bivens* remedy against federal officials only twice, and it has never done so in the context pled here, particularly where there are a number of alternate processes and remedies available. In the alternative, even if the Court were to recognize a *Bivens* remedy where none has ever been permitted, Wolf and Washington are entitled to qualified immunity because Plaintiffs do not plausibly allege a violation of a clearly established constitutional or statutory right.

INDIVIDUAL CAPACITY DEFENDANTS'MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF

## FACTUAL BACKGROUND

Protests erupted nationwide following the tragic deaths of Breonna Taylor and George Floyd. Complaint ("Compl.") ¶¶ 26-28. Beginning May 29, 2020, demonstrators took to the streets of Portland and have protested nearly "every day." *Id.* ¶ 30. These protests have at times numbered in the "thousands," *id.* ¶ 34, and have occurred in several areas in Downtown Portland near federal property, including the Justice Center, *id.* ¶¶ 39, 52, 72, 84, 86, 93, an ICE detention center, ¶¶ 63, 95, 103, and the Wyatt Federal Building, *id.* ¶¶ 128-130.[1] On multiple occasions, police have declared these protests "unlawful assemblies," *id.* ¶¶ 55, 61, 66, 74, 91, or "riots," *id.* ¶¶ 55, 106.

Plaintiffs allege that unidentified law-enforcement officers at the federal, state, and local level have used aggressive "tactics," including a variety of non-lethal munitions, in responding to and dispersing some of these protests. *Id.* ¶¶ 28-29. In doing so, Plaintiffs claim that officers do not reasonably accommodate the needs of protesters with disabilities (*e.g.*, officers allegedly fail to effectively communicate dispersal orders, *id.* ¶ 32). As a result of these and other alleged failures to provide reasonable accommodations to persons with disabilities, Plaintiffs claim that they suffered a host of serious physical and mental injuries while attending the protests. *Id.* ¶¶ 32-152.

There are no allegations that former Acting Secretary Wolf or Director Washington were present or involved in the dispersals, detentions, or uses of force that led to Plaintiffs' alleged injuries. *See generally id.* ¶¶ 26-180 ("Factual Background"). Plaintiffs claim that Wolf "repeatedly and publicly justified the actions of DHS agents while ignoring Plaintiffs' requests for modifications,"

---

[1] The Wyatt Federal Building houses 16 federal agencies and 1,200 federal employees. U.S. General Services Administration, *Edith Green-Wendell Wyatt Modernization Project*, https://www.gsa. gov/about-us/regions/welcome-to-the-northwest-arctic-region-10/buildings-and-facilities /oregon/edith-greenwendell-wyatt-modernization-project (last visited Mar. 15, 2021).

but they fail to state whether the actions Wolf is alleged to have "justified" involved the Plaintiffs. *Id.* ¶ 175. There are no factual allegations at all against Washington. *See generally id.* ¶¶ 26-180.

Plaintiffs pursue damages from Wolf and Washington under *Bivens* for alleged violations of their First, Fourth, and Fifth Amendment rights. Claims 3-6, Count 4. Plaintiffs also seek damages from them under § 1983 based on an alleged state-law conspiracy. Claims 3-6, Count 2. In addition, Plaintiffs pursue equitable remedies from the United States under Section 504 of the Rehabilitation Act. Count 2. They also pursue equitable and compensatory relief from state and local officials under § 1983, Section 504, and Title II of the Americans with Disabilities Act. Counts 1-6.

## LEGAL STANDARD UNDER FEDERAL RULE 12(b)(6)

Dismissal is required when a plaintiff fails to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## ARGUMENT

### I. *BIVENS* IS NOT AVAILABLE TO CHALLENGE HIGH-LEVEL POLICY DECISIONS TO PROTECT FEDERAL PROPERTY AND PERSONNEL IN RESPONSE TO CIVIL UNREST.

The Supreme Court has repeatedly warned that "a *Bivens* action is not a proper vehicle for altering an entity's policy" and is "not designed to hold officers responsible for acts of their subordinates." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1849 (2017) (internal quotation marks and citations omitted). Plaintiffs' *Bivens* action against former Acting Secretary Wolf and Director Washington— two of the Nation's highest-ranking law-enforcement officials, *see* 6 U.S.C. §§ 111-122 (DHS), 8 U.S.C. § 561(a) (Marshals Service)—ignores both of these tenets. Plaintiffs do not allege that Wolf

or Washington were personally involved in the physical acts that caused their purported injuries. Nevertheless, they seek to hold these high-level officials personally liable for alleged policy decisions associated with the federal government's response to civil unrest, including decisions about how to accommodate persons with disabilities who attend these protests.

Plaintiffs' challenge implicates the "'power to preserve the property under its control for the use to which it is lawfully dedicated.'" *Rosebrock v. Beiter*, 788 F. Supp. 2d 1127, 1135 (C.D. Cal. 2011) (quoting *Adderley v. Florida*, 385 U.S. 39, 47 (1966)). "[I]n accord with the [Supreme] Court's frequent warning that it has "refused to extend *Bivens* to any new context or new category of defendants," this Court should refuse to impose personal liability on Wolf and Washington through a suit aimed at altering federal policy and law. *Abbasi*, 137 S. Ct. at 1857 (internal quotation marks and citations omitted). Rather, there are a host of "alternative, existing process[es]" through which Plaintiffs can—and do—seek potential redress for the purported absence of accommodations and other alleged injuries. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

### A. *Bivens* is a disfavored extra-statutory remedy.

The "antecedent" question in this case is whether the Court should devise a freestanding damages remedy under the Constitution. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017). Indeed, whether to authorize a "damages action under the Constitution for particular *injuries*" in a particular context is a "question logically distinct from immunity to such an action on the part of particular *defendants*." *United States v. Stanley*, 483 U.S. 669, 684 (1987) (emphasis in original). The Supreme Court's answer—in a variety of contexts over the past "40 years"—has been frequent and unequivocal: No. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (collecting cases). As explained below, "the availability of *Bivens* actions for new claims and contexts" is now "severely restricted." *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1055 (9th Cir. 2020) (citing *Abbasi*, 137 S. Ct. at 1856-57).

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 4

In 1971, the Supreme Court created a private cause of action directly under the Fourth Amendment after holding there were "no special factors counselling hesitation." *Bivens*, 403 U.S. at 396. Since the *Bivens* decision, however, the Supreme Court has extended that remedy only twice. *See Davis v. Passman*, 442 U.S. 228, 245 (1979); *Carlson v. Green*, 446 U.S. 14, 18-19 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. Since *Carlson*, the Supreme Court has "consistently rebuffed requests to add to the [three] claims allowed under *Bivens*." *Hernandez*, 140 S. Ct. at 743 (collecting cases).

Authorizing a new *Bivens* action is thus "a 'disfavored' judicial activity." *Hernandez*, 140 S. Ct. at 742 (quoting *Abbasi*, 137 S. Ct. at 1857) (quoting *Iqbal*, 556 U.S. at 675). Twice in the past four years, the Supreme Court has declared that the arguments underpinning *Bivens* have "los[t] their force" and that "the Court's three *Bivens* cases [implying a remedy] might have been different if they were decided today." *Abbasi,* 137 S. Ct. at 1855-57; *accord Hernandez*, 140 S. Ct. at 742-43. While *Bivens* has not been overruled, it is the product of an "'*ancien regime*'" in which the Supreme Court was effectively "arrogating legislative power." *Hernandez*, 140 S. Ct. at 741 (quoting *Abbasi*, 137 S. Ct. at 1855).

Respect for "separation-of powers" means the creation of damages claims should be "committed to those who write the laws rather than those who interpret them." *Abbasi*, 137 S. Ct. at 1857 (quotation marks and citations omitted). "Congress," not the Judiciary, "is best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Hernandez,* 140 S. Ct. at 742 (quoting *Abbasi*, 137 S. Ct. at 1856). This Court should "decline[] to expand this limited [*Bivens*] remedy" here. *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018).

**B.** *Bivens* **should not be extended into this novel context.**

Because *Bivens* is both a limited and disfavored remedy, "the first question a court must ask" before potentially imposing new liability on a federal officer is "whether the claim arises in a new *Bivens* context." *Abbasi*, 137 S. Ct. at 1864; *accord id.* at 1860. A case presents a new context when it differs "in a meaningful way" from the three "previous *Bivens* cases" in which the Supreme Court created a damages remedy (*Bivens*, *Davis*, and *Carlson*). *Id.* at 1859. Notably, the inquiry is strictly limited to "[t]hese three" Supreme Court "cases." *Id.* at 1855. That strict limitation means that earlier, lower-court decisions extending *Bivens* have now been "overtaken" by *Abbasi*'s holding that "the new-context analysis may consider *only* Supreme Court decisions approving *Bivens* actions." *Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (emphasis added). A lower court's "past pronouncements" on *Bivens* are "not controlling" after *Abbasi. Vanderklok v. United States*, 868 F.3d 189, 199-200 (3d Cir. 2017); *cf. Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019).

The Supreme Court's "understanding of a 'new context' is," in a word, "broad." *Hernandez*, 140 S. Ct. at 743. In *Abbasi*, the Court provided numerous examples of the ways in which a case might meaningfully differ from *Bivens*, *Davis*, and *Carlson. Abbasi*, 137 S. Ct. at 1860 (listing seven non-exhaustive factors). Even a case with "significant parallels to one of the [Supreme] Court's [three] previous *Bivens* cases," or a case presenting just a "modest extension" of one of them, "is still an extension" into a brand-new context. *Id.* at 1864.

Plaintiffs' *Bivens* case against the former Acting Secretary of Homeland Security and the Marshals Service Director broadly and meaningfully differs from the trio of Supreme Court *Bivens* cases decided over 40 years ago. "The Supreme Court has never explicitly recognized a *Bivens* remedy for a First Amendment claim." *Vega*, 881 F.3d at 1153 (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)); *see also Wood v. Moss*, 572 U.S. 744, 757 (2014); *Iqbal*, 556 U.S. at 675; *Bush v.*

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 6

*Lucas*, 462 U.S. 367, 368 (1983).[2] Put "plainly," that alone means Plaintiffs' First Amendment claim (Claim Three) "present[s] a 'new context' under *Abbasi*." *Vega*, 881 F.3d at 1153 (declining First Amendment *Bivens* remedy); *see Schwarz*, 761 F. App'x at 734 (same); *Loumiet*, 948 F.3d at 382 (same).

It is also "glaringly obvious" that Plaintiffs' Fourth Amendment *Bivens* claim (Claim Four) presents a new context. *Hernandez*, 140 S. Ct. at 743. While *Bivens* itself was a Fourth Amendment case, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Id.* (collecting cases). Notably, the Supreme Court in *Abbasi* clarified that *Bivens* authorizes damages for Fourth Amendment violations only in the narrow "search-and-seizure context in which [that case] arose"—*i.e.*, a claim against line-level narcotics agents for "handcuffing a man in his own home without a warrant." 137 S. Ct. at 1856, 1860. *Bivens* simply did not involve anything like Plaintiffs' challenge to alleged decisions made by Cabinet and other senior officials responding to protests during a time of civil unrest. Therefore, if allowed to proceed, this suit would "assume dimensions far greater than those present in *Bivens* itself" based on at least five key differences. *Id.* at 1861.

First, "a 'new context' is present whenever the plaintiff seeks damages from a 'new category of defendants.'" *Loumiet*, 948 F.3d at 382 (quoting *Abbasi*, 137 S. Ct. at 1857) (citing *Meshal v. Higginbotham*, 804 F.3d 417, 424 (D.C. Cir. 2015)). Both the Secretary of Homeland Security and the Marshals Service Director, two of the Nation's highest law-enforcement officials, are quintessential examples of a new *Bivens* defendant. *See Abbasi*, 137 S. Ct. at 1860 (dismissing high-level "Executive Officials"). Claims against "high-ranking, government officials within the executive branch" are

---

[2] While the Supreme Court previously *assumed* that a First Amendment *Bivens* remedy might be available, *see Vega*, 881 F.3d at 1153, it has "never *held* that *Bivens* extends to First Amendment claims," *Reichle*, 566 U.S. at 663-64 n.4 (emphasis added); *see Loumiet*, 948 F.3d at 382.

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 7

meaningfully different from those filed against the "line-level" agents in *Bivens*. *LKQ Corp. v. United States*, No. 18-CV-1562 (DLF), 2019 WL 3304708, at *11 (D.D.C. July 23, 2019) (dismissing former Attorney General, two former DHS Secretaries, and former CBP Commissioner).

Second, the "legal mandate" then-Acting Secretary Wolf and Director Washington allegedly operated under to protect federal property and personnel in Portland is meaningfully different from *Bivens*. *Abbasi*, 137 S. Ct. at 1860. "*Bivens* involved the enforcement of federal drug laws." *Loumiet*, 948 F.3d at 382 (holding that the enforcement of federal banking laws presented a new context from *Bivens*). By contrast, this case implicates (1) the Executive Branch's authority to deploy Homeland Security officials to protect federal property and personnel, 40 U.S.C. § 1315; (2) the enforcement of federal laws against the destruction of federal property, *e.g.*, 18 U.S.C. § 1361; and (3) former President Trump's order setting Executive Branch policy concerning the protection of federal property in the wake of ongoing civil unrest, Exec. Order No. 13,933, 85 Fed. Reg. 40,081 (June 26, 2020)). This case likewise implicates the "primary role and mission" of the Marshals Service: "to provide for the security" of federal courts. 28 U.S.C. § 566. The high-level policy decisions associated with protecting federal property and people in the midst of unrest—including alleged decisions about providing certain accommodations before dispersing large crowds—form "a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*." *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019) (dismissing Fourth Amendment *Bivens* claim alleging evidence fabrication).

Third, "the extent of judicial guidance" regarding how the Executive Branch should have "respond[ed] to the problem or emergency" is also markedly different here from *Bivens*. *Abbasi*, 137 S. Ct. at 1860. The question in *Bivens* was whether a line-level officer could enter a person's home without a warrant, consent, or exigent circumstances—a question extensively addressed by courts at

the time. Indeed, the prohibition on "the physical entry of the home" has deep historical and constitutional roots: it is the "chief evil against which the wording of the Fourth Amendment is directed," and in no setting "is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York*, 445 U.S. 573, 585, 589 (1980) (internal quotations marks and citation omitted). Here, in contrast, the key question presented in plaintiffs' complaint is whether (consonant with the Constitution) the DHS Secretary and Marshals Service Director were required to authorize certain accommodations before line officers dispersed large, disruptive crowds near federal property. *Cf. Moss*, 572 U.S. at 764 (granting qualified immunity to Secret Service agents who moved protesters). Unlike the clear constitutional prohibition on breaching a home absent a warrant or other cause, "[t]he decisions of the Supreme Court demonstrate the difficulty of balancing the vital right of protest against the legitimate governmental interests of public order and safety." *Quaker Action Grp. v. Hickel*, 421 F.2d 1111, 1116 (D.C. Cir. 1969) (collecting cases). That is particularly true where protest occurs near federal property. *See Adderley*, 385 U.S. at 48 ("The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose."); *United States v. Grace*, 461 U.S. 171, 182 (1983); *Koala v. Khosla*, 931 F.3d 887, 899-900 (9th Cir. 2019).

The lack of clear judicial guidance in this context flows into a fourth, related factor: "the risk of disruptive intrusion by the Judiciary into the functioning of other branches[.]" *Abbasi*, 137 S. Ct. at 1860. Indeed, "[t]he Government 'has power to preserve the property under its control for the use to which it is lawfully dedicated.'" *Rosebrock*, 788 F. Supp. 2d at 1135 (quoting *Adderley*, 385 U.S. at 47); *cf. Wilkie*, 551 U.S. at 557 ("[T]he Government too may stand firm on its rights and use its power to protect public property interests."). That important governmental power intersects with preserving individual rights: "Civil liberties, as guaranteed by the Constitution, imply the existence of

an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses." *United States v. Griefen*, 200 F.3d 1256, 1263 (9th Cir. 2000) (quoting *Cox v. New Hampshire*, 312 U.S. 569, 574 (1941)). "Protecting government property," whether a federal courthouse or an immigration facility (along with federal personnel), is "essential to public peace, order, and safety." *United States v. Allen*, 760 F.2d 447, 452 (2d Cir. 1985); *cf. Griefen*, 200 F.3d at 1263 (observing there would be "good reasons" to temporarily close "a street engulfed in a riot or an unlawful assembly"). But the government's ability to maintain public order by protecting federal property and personnel would likely be compromised by new personal damages liability that "cause[s] an official to second-guess difficult but necessary decisions," including decisions about providing certain accommodations to persons with disabilities when dispersing large crowds in the midst of unrest. *Abbasi*, 137 S. Ct. at 1861. As detailed below, the "proper balance" between "deterring constitutional violations and freeing high officials to make the lawful decisions necessary to protect" federal property and personnel at a time of unrest "is one for the Congress, not the Judiciary, to undertake." *Id.* at 1863.

Fifth, even if that balance were one for this Court to strike, the "purpose of *Bivens*"—*i.e.*, to deter wrongdoing by "the *officer*" who allegedly injured Plaintiffs—cannot be achieved in a suit brought against these defendants. *Abbasi*, 137 S. Ct. at 1860 (internal quotation marks and citation omitted). That is because the "mechanism of injury" underlying Plaintiffs' claim is entirely different from *Bivens*. *Farah*, 926 F.3d at 499. "In *Bivens*, the plaintiff's injuries—'humiliation, embarrassment, and mental suffering'—were directly caused by the officers' conduct." *Id.* (quoting *Bivens*, 403 U.S. at 389-90). By contrast, Plaintiffs' alleged physical injuries were not directly caused by these high-level federal officials. *Id.* The "indirect mechanism of injury" that Plaintiffs allege "bears little resemblance to the straightforward claims from *Bivens*." *Id.*; *cf. Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019).

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 10

Plaintiffs' due-process and equal-protection claims under the Fifth Amendment (Claims Five and Six) present new *Bivens* contexts for essentially the same five reasons just discussed. In short, the due-process claim in *Carlson* and the equal-protection claim in *Davis* involved, respectively, a warden's deliberate indifference to medical needs (resulting in the prisoner's death) and employment discrimination (by a Congressman). *See Abbasi*, 137 S. Ct. at 1860. By contrast, law-enforcement judgments about how to protect federal property in response to unrest—including appropriate accommodations for persons with disabilities—do not meaningfully resemble the questions at issue in those cases. *Cf. Zavala v. Rios*, 721 F. App'x 720, 721 (9th Cir. 2018) (distinguishing procedural due-process claim from discrimination claim in *Davis*) (citing *Vega*, 881 F.3d at 1153); *Schwarz*, 761 F. App'x at 734 (holding the plaintiffs' due process and discrimination claims presented new contexts).

Plaintiffs' claims against Acting Secretary Wolf and Director Washington ultimately "bear little resemblance to the three *Bivens* claims the [Supreme] Court ha[d] approved" 40-plus years ago. *Abbasi*, 137 S. Ct. at 1860. Instead, the claims more closely resemble the claims in *Abbasi*, where the Supreme Court held that high-level detention policy claims against the Attorney General and FBI Director, including a Fourth Amendment strip-search claim, presented a new context for which there was no *Bivens* remedy. *Id.* at 1853-54, 1858. To hold otherwise, as discussed next, would expand *Bivens* in an unprecedented manner and upend settled law that "a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Id.* at 1860.

### C. Special factors preclude a *Bivens* remedy against the former Acting Homeland Security Secretary and the Marshals Service Director for decisions associated with protecting federal property and personnel.

Where a claim presents a new *Bivens* context, the Court must conduct an analysis of the "special factors" the Supreme Court identified in *Abbasi*. Here, that analysis dictates that this Court should decline plaintiffs' invitation to create a new damages remedy. *Abbasi*, 137 S. Ct. at 1858.

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 11

i.    *Bivens* **should not be extended to challenge high-level government policy.**

At the time of suit, it was the "policy" of the Executive Branch to "prosecute to the fullest extent permitted under Federal law" any person who "vandalizes government property" or who "participates in efforts to incite violence or other illegal activity in connection with [] riots and acts of vandalism." Exec. Order No. 13,933, 85 Fed. Reg. 40,081 § 2(b) (June 26, 2020). This policy, as detailed in former President Trump's executive order, was rooted in numerous federal statutes criminalizing the destruction or desecration of federal property. *Id.* § 2(a) (citing 18 U.S.C. § 1361; 18 U.S.C. § 1369; 54 U.S.C. § 100722). It was also rooted in laws prohibiting looting, vandalism, rioting, and other violence. *Id.* § 2(b) (citing 18 U.S.C. § 2101; 18 U.S.C. § 371; 18 U.S.C. § 2; 18 U.S.C. § 2339A); *see also* 40 U.S.C. § 1315. Apart from these statutory authorities, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985). Rather, "[t]he constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy." *Cox v. Louisiana*, 379 U.S. 536, 554 (1965).

Plaintiffs' *Bivens* claims implicate the manner in which DHS and Marshals Service personnel were deployed to protect federal property and personnel in response to civil unrest. While Plaintiffs' purported injuries were allegedly caused by lower-level line agents on the ground in Portland, their complaint is largely built upon high-level policy decisions regarding crowd dispersal measures and the alleged lack of accommodations for persons with disabilities who participated in these protests.

But the Supreme Court has repeatedly observed that a *Bivens* action may not be brought against a high-level federal official to "'alter[ ] an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860 (quoting

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)); *cf.* Findings & Recommendation, *Finicum v. United States*, No. 2:18-cv-00160-SU, ECF No. 161 at 35 (D. Or. July 24, 2020) (declining to extend *Bivens* remedy where plaintiffs' claims "implicate[d] questions of executive policy, particularly those claims concerning the planning of law enforcement operations . . . ."). Relatedly, imposing liability on then-Acting Secretary Wolf and Director Washington, both of whom "lack[ed] direct connection" to the "grievances" that caused alleged physical harm to Plaintiffs, would also effectively "undermine[] the purpose of *Bivens* liability—to deter individual government officers, not their supervisors or the agency, from engaging in unconstitutional conduct." *Schwarz*, 761 F. App'x at 735 (dismissing *Bivens* claims against high-ranking prison officials); *cf. Zavala*, 721 F. App'x at 721-22 (dismissing *Bivens* claim premised upon an alleged "prison-wide policy"). For example, in dismissing policy-based claims against former high-level officials, a district court observed that *Bivens* claims "have generally been made against individuals—a police officer, a supervisor, or a federal prison guard—who have engaged in some personal misconduct in a direct and particularized interaction with a plaintiff." *See Mejia-Mejia v. ICE*, No. CV 18-1445 (PLF), 2019 WL 4707150, at *4 (D.D.C. Sept. 26, 2019). They are "not" usually available "against individuals who have applied a general policy that affected plaintiff and others in similar ways." *Id.* Indeed, "[t]here are serious separation of powers problems with using individual capacity constitutional claims for money damages to lodge facial challenges to generally applicable laws and policies." *Id.* (citing *Abbasi*, 137 S. Ct. at 1860). But that is precisely what Plaintiffs do by challenging alleged high-level decisions associated with protecting federal property and personnel, including their associated effects on persons with disabilities amidst unrest.[3]

---

[3] For example, DOJ coordinates the implementation and enforcement of the Rehabilitation Act and other nondiscrimination statutes. Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (Nov. 4, 1980). Federal agencies must issue "implementing directives (whether in the nature of regulations or

While Plaintiffs are free to disagree with these alleged policy decisions, deciding how to address ongoing unrest on or near federal property necessarily required high-level deliberation and the exercise of judgment. Indeed, to resolve Plaintiffs' *Bivens* claims, the Court would need to wrestle with the requisite level of protection for federal property and personnel, acceptable justifications for that level of protection, and the acceptable means of achieving it, including how to accommodate persons with disabilities. *See Abbasi*, 137 S. Ct. at 1858 ("[T]he decision to recognize a [*Bivens*] damages remedy requires an assessment of its impact on governmental operations systemwide."); *cf. Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984) (criticizing lower court's lack of deference in finding Park Service regulation "unnecessary," and stating the time, place, and manner decisions do not "assign to the judiciary the authority to replace the Park Service as the manager of the Nation's parks or endow the judiciary with the competence to judge how much protection of park lands is wise and how that level of conservation is to be attained"); *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232-33 (9th Cir. 2014) (observing that "exigent circumstances inform the reasonableness" of an accommodation claim and entities are not required to make modifications that "'fundamentally alter the nature'" of a program) (quoting 28 C.F.R. § 35.130(b)(7)), *rev'd in part on other grounds, cert. dismissed in part sub nom. City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600 (2015).[4] Plaintiffs ask this Court to re-weigh the equities faced by high-ranking members of a

___

policy guidance)" that are "consistent with the requirements prescribed by the Attorney General[.]" *Id.* § 1-402. The Assistant Attorney General for Civil Rights must also approve all Section 504 regulations. *See* 28 C.F.R. § 41.4(b); 28 C.F.R. § 0.51(b)(3). Section 504 is discussed more fully below.

[4] That Congress has immunized policy judgments of the sort made by Wolf and Washington from tort liability under the Federal Tort Claims Act, *see* 28 U.S.C. § 2680(a), is further proof that courts should not create liability under *Bivens* for discretionary actions. *See Abbasi*, 137 S. Ct. at 1858; *Hernandez*, 140 S. Ct. at 748 (dismissing *Bivens* claim in part based on FTCA's "foreign-country" bar).

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 14

coordinate branch in addressing ongoing civil unrest and require the government to exercise its discretion in a highly particularized way, all in the context of a personal-capacity suit that Congress never authorized. *See Abbasi*, 137 S. Ct. at 1857-58. This Court should decline Plaintiffs' invitation.

      **ii.**    **The Court should pause before allowing a suit that invites intrusive discovery into the government's decision-making processes.**

Plaintiffs' core contention is that former Acting Secretary Wolf and Director Washington failed to authorize certain accommodations to protesters with disabilities. But probing the specific reasons for these high-ranking Defendants' actions "necessarily require[s] inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Abbasi*, 137 S. Ct. at 1860. And that counsels hesitation for at least two reasons.

The first "significant" factor is "the time and administrative costs attendant upon intrusions resulting from the discovery and trial process." *Abbasi*, 137 S. Ct. at 1856. This consideration is especially relevant where, as here, the Plaintiffs seek to subject the former DHS Secretary and Marshals Service Director to the burdens of discovery, among them depositions. As noted above, "the burden and demand of litigation might well prevent them—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties." *Id.* at 1860 (citing *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 382 (2004)). That in turn could chill Executive Branch officials from fulfilling their "duty and responsibility" to protect federal property and personnel, especially where there is ongoing unrest or disruption. *Cox*, 379 U.S. at 555. Imposing *Bivens* liability for the exercise of that authority and discretion would intrude on the "need for unhesitating and decisive action," thus hampering the government's ability to protect federal property and personnel. *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (declining to extend *Bivens* to

the military context); *Vanderklok*, 868 F.3d at 207 (declining to extend *Bivens* because "[t]he threat of damages liability" might cause a TSA agent to "hesitate").

A "closely related problem" arises from a "discovery and litigation process [that] would either border upon or directly implicate the discussion and deliberations that led to the formation of the policy in question," in this case high-level decisions associated with protecting federal property and personnel amidst unrest, including their effects on persons with disabilities. *Abbasi*, 137 S. Ct. at 1860-61 (citing *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360 (1979)). Disclosing confidential communications between the former Acting DHS Secretary, the Marshals Service Director, and other senior officials may "interfere in an intrusive way with sensitive functions of the Executive Branch." *Id.* at 1861 (citing *Clinton v. Jones*, 520 U.S. 681, 701 (1997)). As the Supreme Court reaffirmed in *Abbasi*, "'special considerations control' when a case implicates 'the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications.'" *Id.* (quoting *Cheney*, 542 U.S. at 385). Those special considerations double as special factors here.

Courts in recent years have dismissed *Bivens* claims against cabinet-rank officials (including several former Homeland Security Secretaries) based on similar concerns. *See Mejia-Mejia*, 2019 WL 4707150; *K.O. v. ICE*, 468 F. Supp. 3d 350 (D.D.C. 2020). In *Mejia-Mejia*, the court warned of a chilling effect "[i]f the courts were to entertain challenges to Executive Branch policies that are pursued through personal lawsuits against the officials of departments and agencies of government." 2019 WL 4707150, at *5. In particular, "the discovery required to gain details on individual defendants' motivations could dampen the candor of conversations and advice rendered by officials within the executive branch." *Id.* Whether or not these conversations would be "privileged or discoverable," they provide "more reason to pause before allowing a *Bivens* action that could reach

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 16

them." *K.O.*, 468 F. Supp. 3d at 365; *cf. Lillemoe v. U.S. Dep't of Agric., Foreign Agric. Serv.*, 344 F. Supp. 3d 215, 232-33 (D.D.C. 2018) (*Bivens* should not be extended to "high-level policy determinations").

Because bad motive "is easy to allege and hard to disprove," Plaintiffs' *Bivens* claims may require this Court to scrutinize Acting Secretary Wolf's communications with senior officials like Director Washington or to probe intelligence regarding threats to federal property in Portland. *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1998) (internal quotation marks and citation omitted). Given the "high rank[]" of Secretary Wolf and Director Washington, it is hard to "see how prosecution of [Plaintiffs'] claims could avoid looking into" deliberations and decisions made "at the highest levels[.]" *K.O.*, 468 F. Supp. 3d at 366. Even if Wolf or Washington later received qualified immunity, that would not allay the "difficulties" of subjecting high-level communications and sensitive material to "judicial and public scrutiny" in the context of a damages suit Congress never approved. *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008); *cf. Stanley*, 483 U.S. at 682-83 (potential for intrusive discovery into military decisions counseled against *Bivens*); *Moss*, 572 U.S. at 762 (examining sensitive security manual before granting immunity). Allowing Plaintiffs to probe these issues through a novel extension of *Bivens* "would substantially affect government operations" and also "unduly burden" the former Acting DHS Secretary, the Marshals Service Director, and others "who must defend against this suit in their personal capacities." *Schwarz*, 761 F. App'x at 735.

Indeed, allowing Plaintiffs' policy-based claims to proceed by way of a personal-capacity damages action—and, in turn, endorsing the filing of thousands of additional *Bivens* cases by other protesters wanting to challenge the same policy decision—would saddle former Acting Secretary Wolf, Director Washington, and the government itself with extraordinarily burdensome and time-consuming discovery while also creating an unacceptable financial disincentive to public servants considering high-level office. *See Abbasi*, 137 S. Ct. at 1857 (constitutional tort suits create

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 17

"substantial costs" against both the individual federal officer and the government). An avalanche of personal damages claims, based on high-level decisions designed to protect federal property and personnel, would "creat[e] a potentially enormous financial burden" on Wolf and Washington—a burden best left "to Congress to weigh." *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994).

It is true that nobody "knows exactly what discovery will entail" in this case "because no similar *Bivens* claim" against a Homeland Security Secretary and Marshals Service Director involving decisions to protect federal property and personnel in the wake of civil unrest has "survived the motion to dismiss stage." *Meshal*, 804 F.3d at 426. But when weighty concerns like these are at stake, "the unknown itself" is enough to counsel hesitation. *Id.* Because "the costs and difficulties" of this litigation "might intrude upon and interfere with the proper exercise" of the Executive Branch in this context, the Court should hesitate before imposing personal damages. *Abbasi*, 137 S. Ct. at 1863.

### iii.    There are a host of alternative processes that preclude a *Bivens* remedy.

Perhaps the most "'convincing reason'" why this Court should not create a "'freestanding remedy'" against Secretary Wolf or Director Washington is that Plaintiffs already have several "'alternative, existing process[es]'" to vindicate their interests. *Id.* at 1858 (quoting *Wilkie*, 551 U.S. at 550) (collecting cases). In fact, Plaintiffs seek a variety of injunctive and declaratory remedies in this very case as a means to do so. *See* Claims 1-6; Prayer for Relief.

### a.    Equitable relief against official-capacity defendants.

The Supreme Court has observed that the opportunity to seek an "injunction" or "some other form of equitable relief" (or both, as Plaintiffs seek here) is precisely the kind of alternative process that "usually precludes" extending *Bivens* into a new context. *Abbasi*, 137 S. Ct. at 1865 (observing that detainees' ability to enjoin unconstitutional conditions of confinement counsels against *Bivens* relief); *accord Vega*, 881 F.3d at 1154 (observing that "'[a]lternative remedial structures'"

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 18

precluding a *Bivens* remedy "can take many forms," including "equitable" relief). Through their

detailed requests for equitable relief, *see* Compl. § Prayer For Relief ¶¶ 1-3, Plaintiffs seek to enact,

overturn, or modify "large-scale policy decisions" regarding how federal law enforcement officers

protect federal property and personnel in response to unrest, including what measures may be

used—and what accommodations should be made for persons with disabilities. *Abbasi*, 137 S. Ct. at

1862. Among other things, Plaintiffs ask for an order requiring federal law-enforcement agencies to:

> (1)  modify use-of-force plans to address the needs of people with disabilities;
> (2)  cease use of certain munitions, such as flashbangs and strobe lights;
> (3)  provide sign-language interpreters and visual messaging systems;
> (4)  identify accessible avenues of retreat before dispersal;
> (5)  detain persons according to their gender identity.

Prayer for Relief ¶ 3(a)-(j); *see also* Pls.' Mot. for Preliminary Injunction at 4, ECF No. 35. "[U]nlike

the *Bivens* remedy," Plaintiffs' detailed request for "injunctive relief has long been recognized as the

proper means for preventing entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74.

Many courts have declined to extend *Bivens* where equitable relief was an alternative option

for seeking to vindicate constitutional interests—whether or not the plaintiffs may ultimately

succeed in obtaining the injunctive relief they seek.[5] For example, in *Mejia-Mejia*, the district court

observed that in the "numerous cases" of immigrant children separated from their parents (including

"two class actions") the availability of "alternative mechanisms" precluded *Bivens* relief. 2019 WL

---

[5] It is the availability of the avenue, not the ultimate success of such claims, that forecloses
the implication of a *Bivens* remedy. *See Malesko*, 534 U.S. at 73-74 (refusing to imply a remedy in part
because plaintiff could seek injunctive relief, not because he successfully did so); *Vega*, 881 F.3d at
1155 ("That Vega's state law claims ultimately failed to satisfy the requirements of [state] law, or
federal pleading standards, does not mean that he did not have access to alternative or meaningful
remedies"); *cf. Wilkie*, 551 U.S. at 552 (plaintiff "took advantage of some opportunities, and let
others pass; although he had mixed success, he had the means to be heard."); *see also Wilson v. Libby*,
498 F. Supp. 2d 74, 91 (D.D.C. 2007) ("[I]t is the availability of an alternative avenue of relief, rather
than the plaintiff's level of success in pursuing other remedies, that is the relevant consideration."),
*aff'd*, 535 F.3d 697 (D.C. Cir. 2008).

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 19

4707150, at *5. Those alternative mechanisms included the same relief sought here: "injunctive relief against the relevant agencies and government officials in their official capacities[.]" *Id.* In a similar vein, the Ninth Circuit has held that the availability of equitable relief under the Administrative Procedure Act "leaves no room for *Bivens.*" *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009); *cf. Occupy Eugene v. U.S. Gen. Servs. Admin.*, No. 6:12-CV-02286-MC, 2013 WL 6331013, at *5-7 (D. Or. Dec. 3, 2013) (availability of APA precluded First and Fifth Amendment *Bivens* claims brought by protesters). There is likewise no room for Plaintiffs' *Bivens* claims in light of the multiple "injunctive remedies" they seek here. *Schwarz*, 761 F. App'x at 734-35 (rejecting First, Fifth, and Eighth Amendment *Bivens* claims for unconstitutional conditions and discrimination).

   **b.  Statutory relief under the Rehabilitation Act & Americans with Disabilities Act.**

   The opportunity to pursue statutory relief under both the Rehabilitation Act and the Americans with Disabilities Act—which Plaintiffs pursue through their first and second claims for relief—further precludes an extra-statutory damages remedy. These federal laws were carefully designed for the "fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *City of Los Angeles v. AECOM Servs., Inc.*, 854 F.3d 1149, 1154 (9th Cir. 2017) (citation omitted); *see also id.* at 1159-60. Notably, the remedies under Title II of the ADA and the Section 504 of the Rehabilitation Act are "coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964" and allow for both equitable relief and compensatory damages. *Barnes v. Gorman*, 536 U.S. 181, 185, 188-200 (2002); *see* 29 U.S.C. § 794a; 42 U.S.C. § 2000d et seq.

   In light of the "comprehensive" nature of these federal schemes, "a plaintiff cannot bring an action under [Section] 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or [S]ection 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 20

F.3d 1145, 1156 (9th Cir. 2002); *see also Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012) (observing

the "specificity and comprehensiveness of these remedies"); *McClintock v. United States*, No. 3:18-CV-

01937-SB, 2020 WL 1868264, at *3 (D. Or. Mar. 18, 2020) ("[F]ederal employees may not be sued in

their individual capacity for claims of disability discrimination."), *report and recommendation adopted*, No.

3:18-CV-01937-SB, 2020 WL 1865862 (D. Or. Apr. 14, 2020). Courts have also held the opportunity

for relief through these "deliberately crafted statutory remedial systems" similarly "preclude[s]" an

implied "*Bivens* remedy" for constitutional violations. *Graves v. Clinton*, No. 2:10-CV-03156 MCE,

2011 WL 5024500, at *9 (E.D. Cal. Oct. 20, 2011) (collecting cases); *Malnes v. U.S. Dep't of Educ.*, No.

CV-16-08128-PCT-JJT, 2017 WL 2834144, at *2 (D. Ariz. June 30, 2017) (describing § 504 as a

"comprehensive statutory scheme[] with adequate remedial mechanisms" rendering "*Bivens* remedies

unavailable"), *aff'd*, No. 17-16375, 2018 WL 3374753 (9th Cir. May 22, 2018).[6] These "alternative

remedial structure[s]," standing "alone," may preclude the new *Bivens* remedy Plaintiffs seek here.

*Abbasi*, 137 S. Ct. at 1858; *see Schweiker v. Chilicky*, 487 U.S. 412, 428 (1988); *Bush*, 462 U.S. at 388.

It is also "telling" that Congress has never authorized a personal-capacity damages remedy

under these remedial schemes despite "frequent and intense" attention to the issue of disability

discrimination. *Abbasi*, 137 S. Ct. at 1862 (quoting *Schweiker*, 487 U.S. at 425). Through the

Rehabilitation Act of 1973, Congress "establishe[d] a comprehensive federal program" to prohibit

discrimination based on disability. *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 626 (1984). But the

---

[6] *See also Bozgoz v. James*, No. CV 19-0239 (ABJ), 2020 WL 4732085, at *10 (D.D.C. Aug. 14, 2020) ("Title VII, the Rehabilitation Act, and the ADEA are comprehensive remedial schemes that specifically prescribe a remedy for these sorts of violations."); *Smith v. Potter*, No. 1:09CV00587, 2010 WL 1500876, at *5 (M.D.N.C. Apr. 14, 2010); *Beddow v. Rhodes*, No. 2:18-CV-2442-JAR-TJJ, 2020 WL 1873565, at *6 (D. Kan. Apr. 15, 2020) (dismissing equal protection *Bivens* claim in part because "there is an extensive alternative remedial structure in place for Plaintiff to address discrimination on the basis of her disability and accessibility"); *cf. Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 197-98 (9th Cir. 1995) (affirming dismissal of *Bivens* claim where, in part, Title VII was exclusive remedy).

original Act was just the start. Congress has amended the program frequently to broaden its scope, including in 1978 when it expressly incorporated the remedies, procedures, and rights of Title VI of the Civil Rights Act. *See* Pub. L. No. 95-602, 92 Stat. 2982 (1978). And in 1990, "after decades of deliberation and investigation into the need for [additional] comprehensive legislation to address discrimination against persons with disabilities," lawmakers passed the ADA with "large majorities in both Houses of Congress." *Tennessee v. Lane*, 541 U.S. 509, 516 (2004). Congress held 13 hearings and established a task force that "gathered evidence" from all 50 states. *Id.* In short, Congress invoked "the sweep of congressional authority" to tackle "the major areas of discrimination faced day-to-day by people with disabilities. *Id.* (quoting 42 U.S.C. § 12101(b)(4)); *see Dare v. California*, 191 F.3d 1167, 1175 (9th Cir. 1999) ("Congress's findings were sufficiently extensive and related to the ADA's provisions that the provisions can be understood as responsive to or designed to prevent, *unconstitutional* behavior.") (internal quotation marks and citation omitted) (emphasis added)).[7]

Despite Congress's extensive findings and repeated efforts to eliminate unconstitutional discrimination through increasingly sweeping legislation—legislation that lawmakers hailed as the "emancipation proclamation for individuals with disabilities"[8]—Congress never authorized a personal damages remedy against federal officers who allegedly discriminate based on disability. Indeed, the ADA and Section 504 "do not authorize claims against State [or federal] officials in their individual capacities." *Hayes v. Voong*, 709 F. App'x 494, 495 (9th Cir. 2018) (citing *Vinson*, 288 F.3d at 1156); *accord Sherman v. Kelly*, No. 3:16-CV-00865-MO, 2017 WL 539583, at *2 (D. Or. Feb. 8,

---

[7] Notably, Plaintiffs also observe in their motion for preliminary injunctive relief that these statutes were enacted to enforce *constitutional* prohibitions on disability discrimination. ECF 35 at 24 (citing *Reininger v. Oklahoma*, 292 F. Supp. 3d 1254, 1261 (W.D. Okla. 2017)).

[8] S. REP. 102-357 at 12 (Aug. 3, 1992); *see also* H.R. REP. 102-822 at 81 (Aug. 10, 1992).

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 22

2017); *Ramirez v. Parker*, No. 3:13-CV-01772-AC, 2014 WL 7187463, at *13 (D. Or. Dec. 16, 2014).

"[W]hen Congress fails to provide a damages remedy in circumstances like these, it is much more

difficult to believe that congressional inaction was 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1862 (internal

quotation marks and citation omitted) (Congress's failure to provide damages to aliens claiming they

were harshly treated after the 9/11 terrorist attacks counseled against *Bivens* relief); *see Brazil*, 66 F.3d

at 198 (Congress's failure to provide a Title VII remedy for alleged discrimination in terminating a

security clearance was not "inadvertent" and precluded the plaintiffs' *Bivens* claim). Because "[t]he

Supreme Court has specifically found protections for people with disabilities to be an area in which

Congressional judgment should be given great deference," *Dare*, 191 F.3d at 1175 (citing *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442-43 (1985)), this Court should defer to Congress's

considered judgment and decline to enact a new personal damages remedy here.

### c.   Damages under the Federal Tort Claims Act.

In addition to the mix of equitable and statutory remedies that Plaintiffs are currently

seeking, Plaintiffs may have alternative mechanisms for seeking recourse: depending on the facts, for

certain claims they could seek to pursue a damages claim under the Federal Tort Claims Act, 28

U.S.C. § 1346(b), *id.* §§ 2671-80, or against state or local actors under state tort law (or under federal

civil rights statutes like § 1983, as Plaintiffs pursue here). While the Supreme Court in 1980 ruled

that the FTCA is not a special factor precluding *Bivens*, *see Carlson*, 446 U.S. at 23, the Supreme Court

has held or observed—on at least *four* occasions since *Carlson*—that the availability of "state tort

law" may "provide[] alternative means for relief" precluding a new *Bivens* remedy. *Abbasi*, 137 S. Ct.

at 1858; *see Minneci v. Pollard*, 565 U.S. 118, 120 (2012); *Wilkie*, 551 U.S. at 551; *Malesko*, 534 U.S. at

72-73. The Ninth Circuit has held the same thing. *See Vega*, 881 F.3d at 1154-55 & n.3 (state-law and

FTCA remedies precluded *Bivens*); *Schwarz*, 761 F. App'x at 734-35 (the FTCA with other remedies

precluded *Bivens*).[9] *Cf. Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020); *Oliva v. Nivar*, 973 F.3d 438, 443-44 (5th Cir. 2020); *Cantu*, 933 F.3d at 423.

The possible availability of damages under the FTCA (or against state actors under state tort law or § 1983)—when paired with all of the special factors above—provides ample reason for this Court to "pause." *Abbasi*, 137 S. Ct. at 1858; *see also Wilkie*, 551 U.S. at 560 (noting that where "torts by Government employees would be so clearly actionable under the general law . . . it would furnish only the weakest argument for recognizing a generally available constitutional tort").

### d.  Internal checks on misconduct.

Finally, there are several other ways for Plaintiffs to vindicate their interests and to deter the type of alleged misconduct in the federal government's exercise of law-enforcement authority. Congress has authorized Inspectors General throughout the Executive Branch to investigate and report abuses by federal law-enforcement officers. *See* The Inspector General Act of 1978, 5 U.S.C. App. 3 § 12; *see also id.* § 8E (DOJ). This includes alleged abuses of civil rights and liberties by DOJ officials, including Marshals Service employees. *See* USA Patriot Act, Pub. L. No. 107-56, § 1001(3), 115 Stat. 272, 391 (2001). Of equal importance, the DHS Inspector General is specifically required to investigate alleged abuses of civil rights and civil liberties and must report to Congress twice a year. *See* 5 U.S.C. App. § 8I. Through its Office of Civil Rights and Civil Liberties, DHS is also required to investigate and report constitutional abuses to Congress. 6 U.S.C. §§ 611(b)(1)(G), 613(d)(3), 345.[10] By exposing misconduct, these processes allow DHS to render "swift and certain"

---

[9] By contrast, the Ninth Circuit recently cited *Carlson* in determining that the FCTA *alone* did not qualify as an alternative process. *Boule v. Egbert*, 980 F.3d 1309, 1316-17 (9th Cir. 2020).

[10] This office is specifically charged with investigating alleged violations of Section 504. *See CRCL Compliance Branch*, https://www.dhs.gov/compliance-branch; *Make a Civil Rights Complaint*,

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 24

discipline where appropriate. *Vanderklok*, 868 F.3d at 209 (declining to extend *Bivens* in the context

of airport security screening); *cf. Vega*, 881 F.3d at 1154 (BOP administrative remedies precluded

*Bivens* relief). They may expose criminal violations of constitutional rights, *see* 28 U.S.C. §§ 241-42,

another deterrent of official abuse. And they may prompt Congress to investigate and craft

appropriate new remedies in response to alleged abuses. *Cf. Abbasi*, 137 S. Ct. at 1862 (Congress's

failure to provide remedies for alleged abuses documented in OIG report counseled hesitation).[11]

     All told, Plaintiffs fail to meet the "demanding" standard required to expand *Bivens* into a

new context. *Hobbs v. Devine*, 819 F. App'x 543 (9th Cir. 2020). Because there are "sound reasons to

think Congress might doubt the efficacy or necessity of a damages remedy" against Wolf and

Washington, this Court "must refrain from creating the remedy." *Abbasi*, 137 S. Ct. at 1858.

## II.    WOLF AND WASHINGTON ARE ENTITLED TO QUALIFIED IMMUNITY.

     This Court need not examine Plaintiffs' constitutional claims any further because, as shown

above, governing precedent and the many special factors implicated by Plaintiffs' claims compel

dismissal. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011); *Hernandez*, 137 S. Ct. at 2007. However,

even if the Court does not find that special factors preclude creation of a *Bivens* remedy in this new

context, former Acting Secretary Wolf and Director Washington are entitled to qualified immunity.

### A.  The framework of the qualified immunity defense.

     Qualified immunity protects government officials from personal liability for civil damages in

the absence of facts pled by a plaintiff showing (1) that the official violated a statutory or

---

https://www.dhs.gov/file-civil-rights-complaint; *Disability Access at the Department of Homeland Security*, https://www.dhs.gov/disability-access-department-homeland-security.

    [11] Both Congress and multiple Inspectors General are currently investigating the government's response to the unrest in Portland and elsewhere.

constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). This protection "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity is not merely a defense to liability. Government officials are accorded qualified immunity "to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).

After a defendant asserts entitlement to qualified immunity, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. To overcome the first prong of the qualified immunity defense, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Since the purpose of *Bivens* is to "deter individual federal officers from committing constitutional violations[;]" those officers may only be subject to suit for constitutional violations if they are "directly responsible" for them. *Malesko*, 534 U.S. at 70-71. Therefore, in order for Plaintiffs to establish a *Bivens* claim against defendants Wolf and Washington, Plaintiffs must establish each defendant's "integral participation" in the alleged unconstitutional conduct, *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996), and Plaintiffs must set forth the specific factual basis upon which they claim each defendant is liable, *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).

To overcome the second prong of the qualified immunity defense, a plaintiff must show that the right allegedly violated by a particular defendant was clearly established at the time of the conduct. *Moss*, 572 U.S. at 757; *Hernandez ex re. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). Clearly established rights are not defined as a "broad general proposition," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam), but in a "particularized" sense so that the "contours of the right"

are clear to a "reasonable official," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *al-Kidd*, 563 U.S. at 741. In other words, qualified immunity applies unless existing precedent shows that the unlawfulness of a defendant's conduct is "beyond debate." *al-Kidd*, 563 U.S. at 741.

### B. Plaintiffs fail to allege the personal participation of Wolf or Washington in a violation of any constitutional right.

When high-ranking government officials are sued for purported violations of constitutional rights, it is critical that there be sufficient allegations of their personal involvement in the alleged violations. High-level government positions require the supervision of large numbers of subordinates, often nationwide and across multiple layers of a department or agency, and thus rarely entail involvement in the particular actions of line-level employees. Accordingly, officials who hold such positions should not be lightly diverted from their responsibilities to answer conclusory claims. *See Iqbal*, 556 U.S. at 676-78; *cf. al-Kidd*, 563 U.S. at 745-46 (Kennedy, J., concurring) ("The fact that the Attorney General holds a high office in the Government must inform what law is clearly established for the purposes of this case.") (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)). Plaintiffs cannot overcome the first prong of qualified immunity because they fail to establish the personal involvement of former Acting Secretary Wolf or Director Washington in any alleged constitutional violation. *See Iqbal*, 556 U.S. at 675.

Plaintiffs do not plausibly allege that either Wolf or Washington "actively participated" in any specific act that violated Plaintiffs' constitutional rights. Compl. ¶¶ 244, 283, 303. There are *no* allegations of conduct directly attributed to Director Washington. There is only *one* allegation of conduct directly attributed to Acting Secretary Wolf. This allegation—that Wolf "repeatedly and publicly justified the actions of DHS agents while ignoring Plaintiffs' requests for modifications," Compl. ¶ 175—does not plausibly establish that Wolf engaged in any conduct involving the

plaintiffs, let alone wrongful conduct. Plaintiffs do not allege that the actions Wolf is alleged to have "justified" involved the Plaintiffs at all. Moreover, an "obvious alternative explanation" for the conduct alleged in ¶ 175 is Wolf's belief that DHS agents had not acted inappropriately. *Iqbal*, 556 U.S. at 682 ("As between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.") (citing *Twombly*, 550 U.S. at 567); *see also Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 373 (8th Cir. 2017) (noting that court must consider "whether there are lawful, 'obvious alternative explanation[s]' for the alleged conduct" that would render complaint "implausible") (citing *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 682)).

Apart from the one allegation of conduct directly attributed to Wolf, Plaintiffs' Complaint rests entirely on repeated assertions of wrongful conduct by undifferentiated and collective "Defendants." *See, e.g.*, Compl. ¶¶ 29, 32-33, 47, 81-82, 88-90, 112, 117, 125, 150. Many of the allegations of wrongful conduct identify only Portland Police Bureau officers as the perpetrators. *See, e.g., id.* ¶¶ 34, 36-37, 42-43, 55, 61, 69, 74, 84, 86, 91, 96-99, 108, 117-18, 165. Moreover, it is well established that respondeat superior is inapplicable to *Bivens* cases. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, Plaintiffs' conclusory allegations of collective liability for unconstitutional conduct do not demonstrate the "integral participation" of Wolf or Washington in any constitutional violations, which is necessary for Plaintiffs' Complaint to satisfy the first prong of the qualified immunity standard. *Chuman*, 76 F.3d at 294.

As the Supreme Court recognized in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678 (citing *Twombly*,

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 28

550 U.S. at 555). In *Iqbal*, the Supreme Court held that allegations that the U.S. Attorney General

and the FBI Director "knew of, condoned, and willfully and maliciously agreed to subject [plaintiff]

to harsh conditions of confinement as a matter of policy" based solely upon discriminatory purpose

"amount[ed] to nothing more than a formulaic recitation of the elements of a constitutional

discrimination claim." *Id.* at 680-81 (citing *Twombly*, 550 U.S. at 555) (internal quotations marks

omitted). Similarly, Plaintiffs' bare allegation that Wolf and Washington "were aware of and

deliberately indifferent to," "ratified," or "ordered others to participate in" violations of Plaintiffs'

constitutional rights, *see* Compl. ¶¶ 244, 283, 303, are "formulaic recitations" of the personal

participation requirement for a constitutional claim. "[The Court is] not bound to accept as true

[such] legal conclusion[s] couched as [ ] factual allegation[s]." *Iqbal*, 556 U.S. 678 (quoting *Twombly*,

550 U.S. at 555 (internal quotation marks omitted)).

 Moreover, even if Plaintiffs' allegations of direction, knowledge, or acquiescence are taken at

face value, they are insufficient to establish personal liability here. Wolf and Washington cannot be

held liable for specific unlawful arrests and unlawful uses of force by line-level officers that occurred

during the Portland protests simply because they generally authorized or had awareness of arrests

and uses of force during the protests. *Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2018), proves the

point. The plaintiffs in *Felarca* sued university administrators for injuries allegedly caused when

campus police responded to a protest. *Id.* The plaintiffs alleged that the administrators planned the

police response and failed to stop assaults by the police. *Id.* at 819. The Ninth Circuit first rejected

supervisory liability for those administrators who were not in the police chain of command, finding

that "[t]hey cannot be supervisors of persons beyond their control." *Id.* at 820 (citation omitted).

Turning to those administrators within the police chain of command, the court assumed that, as

alleged by the plaintiffs, "these officials ordered police to remove the tents, acquiesced in the use of

INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF - 29

batons to effectuate removal of the tents, and learned that batons had been used during the afternoon protest and injuries had occurred." *Id.* The Ninth Circuit found that the administrators' directive did not "supply the missing connection" between the administrators and the force applied by each officer, particularly where the administrators had no reason to assume that police would use force beyond the bounds of university police policy. *Id.* at 820-21. Nor was personal liability supported by the administrators' alleged awareness that some protestors had been injured during an earlier protest. *Id.* at 821. Noting that "[i]njuries could be caused by lawful uses of the batons or by others in the crowd," the Ninth Circuit found that the administrators' awareness that some protestors had been injured during an afternoon protest did not establish that police had exceeded the bounds of university policy in that protest *or* that they would do so in a future protest. *Id.*

*Felarca* illustrates the insufficiency of Plaintiffs' allegations. Plaintiffs offer no plausible, non-conclusory allegations that either Wolf or Washington gave any orders with respect to the unlawful arrest or use of force against any protesters. Nor do Plaintiffs assert a plausible, non-conclusory reason for Wolf or Washington to assume that federal agents on the ground in Portland would use unconstitutional efforts to implement such directives. Nor would knowledge of injuries sustained by protesters establish that federal officers had acted unlawfully or would act unlawfully in the future.

Plaintiffs cannot circumvent the personal participation requirement through a *Bivens* lawsuit that seeks to hold high-level officials personally liable for alleged injuries claimed by protesters with whom those officials had no direct interaction.

### C.  Plaintiffs fail to state any clearly established constitutional violation.

Not only have Plaintiffs failed to sufficiently allege that either Wolf or Washington personally participated in a violation of Plaintiffs' constitutional rights, they also fail to show that

either official violated any clearly established constitutional rights. The general standards governing Plaintiffs' constitutional claims do not clearly establish that their alleged treatment was unlawful.

The reasonableness of an officer's use of force to seize an individual depends on a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The government's interest in public order and law enforcement can sometimes permit law enforcement officers to "seize" in the Fourth Amendment sense a large cohesive crowd based on probable cause to believe that some, though not all, of its members engaged in criminal behavior, for example when acting as a unit. *See Bernini v. City of St. Paul*, 665 F.3d 997, 1003-04 (8th Cir. 2012) ("a reasonable officer in St. Paul could have believed that the Fourth Amendment did not require a probable cause determination with respect to each individual in a large and potentially riotous group before making arrests"); *cf. Lyall v. City of Los Angeles*, 807 F.3d 1178, 1195 (9th Cir. 2015) ("If a group or crowd of people is behaving as a unit and it is not possible (as it was in *Ybarra*) for the police to tell who is armed and dangerous or engaging in criminal acts and who is not, the police can have reasonable suspicion as to the members of the group."). In *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020), the Ninth Circuit noted that it was "undisputed" that "the intensity of the [Portland] protests escalated" after law enforcement agents from DHS and USMS were deployed to Portland "[i]n response to the threat to federal property." *Id.* at 822. The court also noted that

> Most of the [Portland] protests have been peaceful, but some have become violent. There have been incidents of vandalism, destruction of property, looting, arson, and assault, particularly late at night.

*Id.* at 821. Thus federal officers, faced with actual and potential acts of violence at these protests, could have thought it reasonable to use significant force to control crowds surrounding federal

buildings in order to further the government's interest in law enforcement and prevent bad actors from using the crowd as cover to endanger the officers. *See generally* 18 U.S.C. §§ 111(a)(1), 3056(d) (prohibiting even minor forcible, non-contact interference with federal officers' duties); *see also Lucas v. United States*, 443 F. Supp. 539, 544 (D.D.C. 1977), *aff'd*, 590 F.2d 356 (D.C. Cir. 1979).

With respect to Plaintiffs' Equal Protection claim, even if the alleged (in a wholly conclusory manner) actions of Wolf or Washington had a foreseeably disproportionate impact on an identifiable group, that does not equate to a violation of the Equal Protection Clause. *See Navarro v. Block,* 72 F.3d 712, 716 n.5 (9th Cir. 1995). The requisite "discriminatory purpose" mandates that "a particular course of action was selected at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (quoting *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979) (alteration in original)). Plaintiffs do not plausibly allege such a purpose here. Moreover, Plaintiffs do not allege they were treated differently as a protected class than other protesters. To the contrary, their complaint is that law enforcement officials failed to treat protesters with disabilities differently than other protesters. Compl. ¶¶ 288-90. This does not state a violation of a clearly established right to equal protection. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).

Nor do Plaintiffs' allegations of disparate treatment state a violation of a clearly established First Amendment or Due Process right. Both of these claims are premised upon the assertion that Defendants Wolf and Washington were required to enact special accommodations for persons with disabilities as part of the federal government's response to the protests. Compl. ¶¶ 227, 270. Defendants are aware of no binding authority holding that such accommodations by law enforcement or other officials are constitutionally mandated, particularly under the exigent circumstances attending the Portland protests. In sum, in the context of protest, crime control, and the protection of federal property and personnel presented, no clear principle of law makes it

indisputable that Plaintiffs' constitutional rights were violated *and* that Wolf and Washington can be held personally liable for those violations.

### D.  Plaintiffs fail to state any clearly established statutory violation.

Former Acting Secretary Wolf and Director Washington also have qualified immunity from Plaintiffs' § 1983 claims. It is well established that "§ 1983 provides no cause of action against federal agents acting under color of federal law." *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995) (citing *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987)). While the Ninth Circuit has observed that federal actors may face § 1983 liability if they conspire with or act jointly with state officials, *see Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008), such liability is rare and attaches only, if at all, where there is "substantial" coordination between federal and state actors, *Cabrera v. Martin*, 973 F.2d 735, 743-44 (9th Cir. 1992) (reversing holding that federal officials conspired under § 1983); *see e.g.*, *Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009) (en banc) (federal officials "are rarely deemed to have acted under color of state law"). Here, Plaintiffs fail to allege an illegal state-law conspiracy involving two of the highest-ranking federal law-enforcement officials.

First, there can be no actionable § 1983 conspiracy without an underlying constitutional violation. *See Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006). Plaintiffs fail, as shown above, to plausibly allege that Wolf or Washington personally violated their constitutional rights.

Second, Plaintiffs fail to plausibly allege that Wolf or Washington conspired through "an agreement or 'meeting of the minds' to violate [Plaintiffs'] constitutional rights." *Franklin v. Fox,* 312 F.3d 423, 441 (9th Cir. 2002) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc)). The two factual allegations involving Wolf are limited, vague, and conclusory, *see* Compl. ¶¶ 170, 175, and there are no factual allegations at all involving Washington. Stripped of conclusory allegations of "coordination," *see* Compl. ¶¶ 177-179, the complaint fails to

plausibly allege that Wolf and Washington *agreed* with state or local officials to violate Plaintiffs' rights. *See Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989) ("Woodrum's conclusory allegations that Rosson and the social workers conspired do not support a claim for violation of his constitutional rights under § 1983."); *Griffin v. Zurbano*, 813 F. App'x 330, 331 (9th Cir. 2020) ("Griffin fails to identify specific facts from which a 'meeting of the minds' could be inferred."); *Gillette v. Malheur Cty.*, 737 F. App'x 811, 814 (9th Cir. 2018) ("Plaintiffs provide no facts to support their allegations that Defendants *agreed* to deprive Plaintiffs of their rights.").[12]

Third, it is not plausible to infer that the conduct of these high-level federal defendants occurred under color of *state* law. The Ninth Circuit abides by "the long-standing principle that federal officials can only be liable under section 1983 where there is a 'sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself.'" *Ibrahim*, 538 F.3d at 1257 (quoting *Cabrera*, 973 F.2d at 744). There is no sufficiently close nexus that would subject the high-level federal officials here to § 1983 liability. At best, Plaintiffs allege "federal authorities" obtained assistance in responding to the unrest, Compl. ¶ 178, but it is neither plausible nor appropriate to attribute that action—namely, the *federal deputization* of local officers to "enforce federal law," *id,* ¶ 22—to state or local entities. *See Ibrahim*, 538 F.3d at 1257 (rejecting contention that § 1983 liability attaches when "federal officials

---

[12] *See also, e.g., Gale v. SAIF Corp.*, No. 3:18-CV-00707-AC, 2020 WL 809381, at *9 (D. Or. Jan. 3, 2020), *report and recommendation adopted*, No. 3:18-CV-00707-AC, 2020 WL 798142 (D. Or. Feb. 16, 2020); *Lloyd v. Gerhard*, No. 3:17-CV-00582-MK, 2019 WL 1450531, at *5 (D. Or. Jan. 2, 2019), *report and recommendation adopted*, No. 3:17-CV-00582-MK, 2019 WL 1446984 (D. Or. Mar. 31, 2019), *aff'd,* 802 F. App'x 302 (9th Cir. 2020).

recruit local police to help enforce federal law"); *Billings*, 57 F.3d at 801 ("If the Secret Service Agents and the Sheriff's officers acted jointly, it was under the color of federal law.").[13]

In the end, the supremacy of federal authority creates a "presumption that where federal and state actors come together, they are acting pursuant to supreme law." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 870 n.8 (10th Cir. 2016); *cf. Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) ("We start with the presumption that conduct by private actors is not state action."); *Franklin*, 312 F.3d at 444-45. Because Plaintiffs' threadbare allegations do not come close to overcoming that presumption, "the only possible action" against the former Acting DHS Secretary and U.S. Marshals Service Director "is an action under the authority of *Bivens*."[14] *Winston*, 837 F.2d at 355. Plaintiffs' § 1983 claims against Wolf and Washington should be dismissed.

## CONCLUSION

For these reasons, Plaintiffs' claims against former Acting Secretary Wolf and Director Washington should be dismissed with prejudice.

---

[13] Any act involving a federally deputized officer, while enforcing federal law, would implicate his or her federal authority. *Cf. King v. United States*, 917 F.3d 409, 433 (6th Cir. 2019), *rev'd on other grounds sub nom. Brownback v. King*, 141 S. Ct. 740 (2021).

[14] The Supreme Court has never permitted a § 1983 action to proceed against a federal official. Indeed, the reason the Supreme Court originally created a *Bivens* remedy is because § 1983 does not reach federal officials. *See Bivens*, 403 U.S. at 389; *Abbasi*, 137 S. Ct. at 1854. To hold that the high-level federal officials sued here acted under state authority would supplant their constitutionally superior federal status. *See* U.S. Const. Art. VI, cl. 2; *cf. Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (*Bivens* or § 1983 exposure depends on "whether it is fair to attribute the challenged actions to *either* the federal *or* State government.") (emphasis added); *West v. City of Mesa*, 128 F. Supp. 3d 1233, 1240 (D. Ariz. 2015) ("[I]t is legally inconsistent to allow simultaneous claims for violations of Section 1983 and *Bivens* against the same defendants.") (citation omitted), *aff'd*, 708 F. App'x 288 (9th Cir. 2017).

Dated: March 15, 2021

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

SCOTT ERIK ASPHAUG
Acting United States Attorney

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

ANDREA W. MCCARTHY
Senior Trial Counsel

*/s/ Glenn S. Greene*
GLENN S. GREENE
(New York State Bar No. 2674448)
Senior Trial Attorney
DAVID G. CUTLER
(Illinois Bar No. 6303130)
Trial Attorney
U.S. Department of Justice, Civil
Division
Constitutional and Specialized Tort
Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314

*Attorneys for Defendants Wolf and*
*Washington in their individual capacities*

INDIVIDUAL CAPACITY DEFENDANTS'MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF

# CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2021, the foregoing was filed electronically through

ECF/CM.


<u>s/ Glenn S. Greene</u>
Glenn S. Greene
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314
Email: Glenn.Greene@usdoj.gov