ELLEN F. ROSENBLUM
Attorney General
DREW K. BAUMCHEN  #045032
JILL SCHNEIDER  #001619
Senior Assistant Attorneys General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  Drew.Baumchen@doj.state.or.us
         Jill.Schneider@doj.state.or.us

Attorneys for Defendant Terri Davie

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| PHILIP WOLFE, KATALINA DURDEN, MELISSA LEWIS, JUNIPER SIMONIS, individually, and DISABILITY RIGHTS OREGON, an Oregon nonprofit and advocacy corporation,<br><br>       Plaintiffs,<br><br>   v.<br><br>CITY OF PORTLAND, a municipal corporation; TED WHEELER, in his official capacity; CHUCK LOVELL, in his official capacity; MULTNOMAH COUNTY, a political subdivision of the State; MICHAEL REESE, in his official capacity; TERRI DAVIE, in his official capacity; CHAD WOLFE, in his individual and official capacity; DONALD WASHINGTON, in his individual and official capacity; and DOES 1-100, individual and supervisory officers of local, state, and federal government,<br><br>       Defendants. | Case No.  3:20-cv-01882-SI<br><br>DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT<br><br>**REQUEST FOR ORAL ARGUMENT** |

Page i -    DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

# TABLE OF CONTENTS

*L.R. 7-1 CERTIFICATION* ................................................................................. 1

MOTION ................................................................................................................ 1

POINTS AND AUTHORITIES ............................................................................. 1
  I.     Introduction ..................................................................................... 1

    A.  Overview of the Complaint ....................................................... 2

    B.  Summary of Arguments ............................................................. 3
  II.    ADA Framework Regarding Arrest and Pre-Arrest Law Enforcement Activities .......... 4
  III.   Plaintiffs' ADA Claims, Which Seek Systemic Relief, Should Be Dismissed Under FRCP 12(b)(6) Because the Complaint Does Not Sufficiently Allege Any Violation of the ADA, Let Alone Systemic Violations ............................................ 7

    A.  FRCP 12(b)(6) Standards ......................................................... 7

    B.  Injunctive Relief Standards ....................................................... 8

    C.  The Complaint Does Not Allege Sufficient Facts to State a Claim for Systemic Relief under the ADA. ..................... 9
  IV.   Plaintiffs' Claims, Which Seek Systemic Relief, Should Be Dismissed Under Rule (12)(b)(1) Because Plaintiffs Lack Standing to Pursue Such Relief ............. 12

    A.  FRCP 12(b)(1) Standard .......................................................... 12

      1.  Individual Standing for an ADA Title II and Rehabilitation Act Claims ................. 13

      2.  Associational Standing for an ADA Title II Claim ................ 14

    B.  Plaintiffs Lack Standing to Seek Systemic Relief Under the ADA Because They Fail to Allege Discrimination by Reason of Their Disability or Allege that the Remedy Sought Is Limited to the Inadequacy that Produced Their Injury ............. 14

    C.  Plaintiffs' § 1983 claims ........................................................... 16

      1.  Plaintiffs have not established standing under the First Amendment ............. 17

      2.  Plaintiffs do not have standing for an injunction under the Fourth Amendment. ........ 19

      3.  Plaintiffs' due process and equal protection claims are nothing more than their First and Fourth Amendment, and ADA claims ............. 21
  V.    If the Court Denies Defendant's Motion to Dismiss, Plaintiffs Should be Required to make a more Definite and Certain Statement Regarding Systemic Liability ........... 21

CONCLUSION .................................................................................................... 21

DB7/mm8/33658607

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

# TABLE OF AUTHORITIES

**Cases**

*Advocacy Cent. v. Mink*, 322 F.3d 1101 (9th Cir. 2003) ............................................. 14

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2002) ............................................. 2, 8, 9

*Armstrong v. Schwarzenegger*, 622 F.3d 1058  (9th Cir. 2010) ................................... 9

*Ashcroft v. al-Kidd,* 563 U.S. 731 (2011) ................................................................. 18

*Ashcroft v. Iqbal*, 556 U.S. 662  (2009) ............................................................ 7, 8, 16

*Bell v. Wolfish,* 441 U.S. 520 (1979) .......................................................................... 6

*Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939 (9th Cir. 2011) .................. 13, 16

*City & Cnty. Of San Francisco, Cal. v. Sheehan,* 575 US 600, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015) ....................................................................................................................... 5

*City of Los Angeles v. Lyons,* 461 U.S. 95, (1983) .......................................... 7, 9, 19, 20

*Cty. of Los Angeles v. Mendez,* —— U.S. ——, 137 S. Ct. 1539,(2017) ...................... 20

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010)................................. 8

*Dunlap v. City of Sandy*, No. 3:17-CV-01749-YY, 2018 WL 4782263, at *4 (D. Or. June 4, 2018) (D. O. Oct. 3, 2018) ......................................................................................... 5

*Ex parte Young,* 209 U.S. 123 (1908) ...................................................................... 17

*Fleck & Assoc., Inc. v. City of Phoenix*, 471 F.3d 1100 (9th Cir. 2006) ...................... 12

*Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ............................................. 8

*Gilmore v. People of the State of Cal.*, 220 F.3d 987 (9th Cir. 2000) ........................... 9

*Graham v. Connor,* 490 U.S. 386  (1989) .............................................................. 6, 20

*Hainze v. Richards 207 F. 3d 795 (5th Cir. 2000)* ..................................................... 6

*Headwaters Forest Def. v. Cnty. of Humboldt*  276 F.3d 1125 (9th Cir. 2002) ............ 20

*Hodgers-Durgin, v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999)................................... 9

*Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010)...................... 13

*Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333 (1977) ................. 14

*Johnson v. California,* 543 U.S. 499 (2005) ............................................................ 2, 8

*Kentucky v. Graham,* 473 U.S. 159 (1985)................................................................ 17

*Larkin v. Kenison,* 2020 WL 4353654 (D.Haw. 2020)................................................ 11

*Leite v. Crane Co.,* 749 F.3d 1117 (9th Cir. 2014)..................................................... 16

*Lewis v. Casey,* 518 U.S. 343 (1996) ........................................................................ 14

*Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010)................................................ 9

*McCoy v. Texas Dep't of Criminal Justice,* 2006 WL 2331055, at *7 (S.D.Tex. Aug. 9, 2006) . 11

*Menotti v. City of Seattle,* 409 F.3d 1113 (9th Cir. 2005)............................................ 17

*Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884 (3rd Cir.1977).................... 12

*Nieves v. Bartlett*, 139 S.Ct. 1715 (2019) ............................................................ 18, 19

*Patel v. Penman,* 103 F.3d 868 (9th Cir.1996) ........................................................ 21

*Randolph v. Rogers,* 170 F.3d 850 (8th Cir. 1999) ................................................... 11

*Reed v. LePage Bakeries, Inc.,* 244 F.3d 254 (1st Cir.2001)....................................... 11

*Sanchez v. Johnson*, 416 F.3d 1051 (9th Cir. 2005)..................................................... 1

*Seaman v. CPSH, Inc.,* 197 F.3d 297 (5th Cir.1999)................................................... 11

*Sheehan v. City and County of San Francisco,* 743 F3d 1211  (9th Cir 2014).................. passim

*Smith v. Barton,* 914 F.2d 1330 (9th Cir.1990) ........................................................ 17

*Sprint Commc'n Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269 (2008) ......................... 13

*Starr v. Baca,* 652 F.3d 1202 (9th Cir. 2011) ............................................................. 8

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998)......................................... 14

*Taylor v. Westly,* 488 F.3d 1197 (9th Cir. 2007) ......................................................... 9

*Tennessee v. Garner*, 471 U.S. 1 (1985) .................................................................... 20

*Tennessee v. Lane,* 541 U.S. 509 (2004)............................................................... 17, 21

*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730 (9th Cir.1979)............... 12

*Updike v. Multnomah County,* 870 F.3d 939 (D.Or. 2017) ......................................... 13

DB7/mm8/33658607

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

*Waller ex rel. Est. of Hunt v. Danville, VA*, 556 F.3d 171 (4th Cir. 2009) ...................................... 6
*Warth v. Seldin,* 422 U.S. 490 (1975) ........................................................................................ 14
*Zukle v. Regents of Univ. of Cal.*, 166 F3d 1041 (9th Cir. 1999) ................................................ 5

**United States Code**
42 U.S.C. § 12132 ................................................................................................................... 1, 4
42 U.S.C. § 1983 ....................................................................................................................... 16

**Rules and Regulations**
Fed. R. Civ. P. 12(b)(1) .............................................................................................................. 1, 12
Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1, 12, 14
Fed.R.Civ.P. 25(d) ....................................................................................................................... 16
Fed.R.Civ.P. 56 ........................................................................................................................... 12
FRCP 12(e) ................................................................................................................................... 21
Section 504 of the Rehabilitation Act ............................................................................................ 3
Title II of the Americans with Disabilities Act ..................................................................... passim

**Constitutional Provisions**
Article III jurisdiction .................................................................................................................. 22
Eleventh Amendment ................................................................................................................... 17
Fifth Amendment .................................................................................................................. passim
First Amendment ................................................................................................................... passim
Fourteenth Amendment ......................................................................................................... passim
Fourth Amendment ................................................................................................................ passim

**Other**
Mobile Response Team Standard Operating Procedures Manual ................................................. 16
OSP Mobile Response Team policy ............................................................................................. 16
OSP Use of Force policy .............................................................................................................. 16

DB7/mm8/33658607                          Department of Justice
                                            1162 Court Street NE
                                            Salem, OR 97301-4096
                                   (503) 947-4700 / Fax: (503) 947-4791

*L.R. 7-1 Certification*

Counsel for Defendant Terri Davie, Superintendent of the Oregon State Police ("OSP"), conferred in good faith with counsel for Plaintiffs by telephone about the subject of this motion. The issues presented herein could not be resolved without the assistance of the Court.

## MOTION

Defendant Terri Davie, in her official capacity as OSP superintendent, moves for judgment dismissing all of Plaintiffs' claims for relief for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). Plaintiffs' claims stem from protest activity in Portland, Oregon against alleged systemic racism and police violence. Plaintiffs seek only injunctive relief against Superintendent Davie. Specifically, they seek to impose systemic liability and obtain systemic relief under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act (collectively referred to herein as the ADA)[1]—relief that requires OSP to undertake actions on a systemic level, as opposed to relief tied to the specific injuries the various plaintiffs allege.

Further, Defendant requests the court to consider this motion to dismiss prior to reaching Plaintiff's motion for a preliminary injunction [ECF 35], given that the Court's ruling on the former would be dispositive as to the latter.

## POINTS AND AUTHORITIES

### I.    Introduction

Regarding OSP, the central issue in this case is whether it is engaged in systemic discrimination against persons with disabilities in violation of the ADA and systematically violates other constitutional protections such that Plaintiffs are entitled to permanent injunctive

---

[1] "Both the ADA and § 504 [of the Rehabilitation Act] prohibit discrimination on the basis of disability in the administration of a public program receiving Federal funding. Because of the nearly identical language of 42 U.S.C. § 12132 and § 504 of the Rehabilitation Act . . . [courts] construe the two provisions as co-extensive." *Sanchez v. Johnson*, 416 F.3d 1051, 1062 (9th Cir. 2005).

relief.  More particularly, the issues are whether Plaintiffs have sufficiently alleged systemic failures by OSP, as a matter of official policy or custom, to reasonably accommodate disabilities of persons involved in the Portland protests or whether they have actual standing to obtain the broad-sweeping requirements and restrictions they seek against the police.  To obtain a systemic ADA remedy in federal court, Plaintiffs must plead and prove ADA violations "attributable to policies or practices pervading the whole system."  *Armstrong v. Davis*, 275 F.3d 849, 870 (9th Cir. 2002), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).  As shown below, Plaintiffs have failed to allege sufficient facts to support their claims for relief or establish that they have standing to pursue their requested relief.

### A.    Overview of the Complaint

Plaintiffs are Disability Rights Oregon ("DRO"), a federally mandated protection and advocacy system for the state of Oregon, and four individuals—Philip Wolfe, Katalina ("Katie") Durden, Melissa Lewis, and Juniper Simonis—who allege that they are qualified individuals with a disability within the meaning of the ADA.  Compl. ¶¶ 10-14.

The complaint describes protests in Portland following the deaths of George Floyd, Breonna Taylor, and other Black, Indigenous, or people of color by law enforcement.  *Id.,* ¶ 2.  Plaintiffs allege that, in attempting to disperse these protests, "law enforcement has deployed indiscriminate crowd control mechanisms, blanketing Portland's parks and streets with tear gas while discharging thousands of flashbang grenades, pepper balls, and rubber bullets, as well as using their batons and fists to beat protesters and throw them to the ground."  *Id.,* ¶ 3.

Plaintiffs further allege that "Defendants have often targeted people with disabilities for harassment and violence in retaliation for exercising their constitutional rights," and also that "Local, state, and federal law enforcement have failed to establish policies designed to afford people with disabilities the same opportunity to avoid law enforcement harm as those without disabilities…"  *Id.,* ¶ 4-5.  Plaintiffs bring their claims under the ADA, Section 504 of the

Page 2 -    DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
DB7/mm8/33658607

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Rehabilitation Act, and First; Fourth, Fifth, and Fourteenth Amendments to the U.S.

Constitution. *Id.,* ¶ 7.

Plaintiffs' allegations and the premise of their suit are succinctly summarized in

paragraph 163 of the complaint:

> It is obvious that people with disabilities require reasonable modifications and effective communication at protests. Defendants have an affirmative obligation to make their programs and services accessible, including programs and services related to law enforcement. Failing to provide accessible services related to law enforcement at protests effectively denies equal access to the right to protest and creates immeasurable dangers for people with disabilities. Defendants should provide reasonable modifications and effective communication to protesters with disabilities as a matter of course.

It is within the context of this allegation that Defendant Davie moves to dismiss

Plaintiffs' claims for an injunction against her.

### B.   Summary of Arguments

Defendant Davie moves to dismiss Plaintiffs' complaint seeking injunctive relief against

her because Plaintiffs have failed to plead adequate claims for relief for which prospective relief

can be granted and also lack standing for the systemic and overly broad restrictions on law

enforcement practices, including the use of force, for which they seek equitable relief.  To the

extent the ADA applies in the context of Plaintiffs' allegations, the sheer exigency of those

situations—when lawful demonstrations and protests become dangerous riots—dictates that none

of Plaintiffs' proposed injunctive remedies are reasonable because they lack sufficient context

and are equally overbroad.  If the reasonable accommodations requirements of the ADA provide

a formula, Plaintiffs' allegations and requested injunctive remedies are missing a determinative

variable.  Plaintiffs offer only a vague plethora of accommodations, none sufficiently specific or

which can reasonably lead to the sweeping and overbroad remedies sought in this case, despite

Plaintiffs' labelling them as reasonable accommodations.  Because civil disturbances and riot

situations are so unpredictable, diverse, and unique, limiting the ability of the police to respond

to threats of serious harm with appropriate, non-lethal force in the way Plaintiffs seek simply

Page 3 -   DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
DB7/mm8/33658607
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

goes too far.  No less do Plaintiffs' allegations give nothing to the police tasked with furthering the important governmental interests of protecting public safety and preserving the peace.

Even without reference to Defendant's proffered evidence, Plaintiffs' allegations alone do not describe a systemic pattern of or policy leading to ADA violations, much less as to OSP. Plaintiffs have not alleged any particularized knowledge of persons with disabilities at protests in a way that could be reasonably accommodated, and Plaintiffs' suggestion that the "obviousness" that persons with various disabilities would be in a protest crowd is insufficient to impose any prior restraint on otherwise-justifiable police uses of force.

Though Plaintiffs bring claims under the ADA, Rehabilitation Act, and First; Fourth; Fifth; and Fourteenth Amendments, their claims essentially boil down to three: assembly and speech under the First Amendment, the ADA, and use of force under the Fourth Amendment. Regardless of the authority under which the claim is brought, because the allegations purporting to establish injury by OSP fail to satisfy the requirements of causation and redressability, Plaintiffs lack standing to pursue their claims.  Further, because Plaintiffs' allegations do not establish a very significant possibility of future harm by Defendant Davie or the OSP, they cannot seek prospective injunctive relief.

## II.    ADA Framework Regarding Arrest and Pre-Arrest Law Enforcement Activities

Plaintiffs' ADA claims are based on Title II, which "applies broadly to police 'services, programs, or activities.'"  *See Sheehan v. City and County of San Francisco*, 743 F3d 1211, 1232 (9th Cir 2014) (quoting 42 U.S.C. § 12132), *rev'd in part, cert dismissed in part*, 135 S Ct 1765 (2015).  The Ninth Circuit recognizes at least two types of Title II claims applicable to arrests and pre-arrest law enforcement activities:

> (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

Page 4 -    DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Id*. at 1232.  Additionally:

> To state a claim under Title II, a plaintiff generally must demonstrate (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability.

*Id*.  This motion focuses primarily on the last two elements for which Plaintiffs have the burden of proof on their ADA claims—namely, that they are subjected to unlawful discrimination at the Portland protests by reason of disabilities.  *See Zukle v. Regents of Univ. of Cal.*, 166 F3d 1041, 1045 (9th Cir. 1999) (describing a plaintiff's burden of proof under the ADA).

As a threshold matter, Plaintiffs take for granted that Title II of the ADA extends to situations where police face volatile or violent circumstances involving multiple persons, *i.e.*, riots.  But the holding in *Sheehan* does not extend that far, and even if it did, the Supreme Court has yet to decide whether that interpretation of the ADA is correct.  Defendant submits that the ADA's reasonable accommodations requirement should not extend to situations where the police face such highly exigent circumstances and thus lack sufficient control to provide the types of accommodations as Plaintiffs seek in this case.

*Sheehan* establishes that, in the Ninth Circuit, the ADA applies to police "arrests."  743 F.3d at 1232.  However, "[t]he Supreme Court has not yet decided whether Title II of the ADA applies to arrests."  *Dunlap v. City of Sandy*, No. 3:17-CV-01749-YY, 2018 WL 4782263, at *4 (D. Or. June 4, 2018), *report and recommendation adopted as modified,* No. 3:17-CV-01749-YY, 2018 WL 4778042 (D. Or. Oct. 3, 2018).  The Court granted certiorari in *Sheehan* to address that very question.  *See City & Cnty. Of San Francisco, Cal. v. Sheehan*, 575 US 600, 135 S.Ct. 1765, 1172, 191 L.Ed.2d 856 (2015).  But because all parties in that case ultimately accepted that the ADA applied to arrests and did not argue the contrary view, the court declined to reach that issue.  *Id.* at 1773.  The court's opinion and the partial dissent/partial concurrence by Justices Scalia and Kagan make clear, however, that the Court wanted to resolve whether the

Page 5 -    DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

ADA's reasonable accommodations requirement applies to officers facing violent circumstances. *See id.* at 1772, 1778-79. It is in this context that the court should evaluate Defendant's novel arguments presented here.

As noted in the *Sheehan* opinion, not all circuits have extended the application of the ADA to police activities involving exigent circumstances. For instance, in *Hainze v. Richards*, the Fifth Circuit held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." 207 F.3d 795, 801 (5th Cir. 2000). The court reasoned that "[t]o require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents." *Id.*

At the very least, Plaintiffs' suggested accommodations are not reasonable on their face under the logic in *Hainze*. Even if the ADA does require reasonable accommodations in the contexts presented by Plaintiffs, their claims fail because consideration of the exigency of a situation encountered by police is fundamental to the reasonableness analysis under the ADA:

> Reasonableness in law is generally assessed in light of the totality of the circumstances, and exigency is one circumstance that bears materially on the inquiry into reasonableness under the ADA. Accommodations that might be expected when time is of no matter become unreasonable to expect when time is of the essence.

*Waller ex rel. Est. of Hunt v. Danville, VA*, 556 F.3d 171, 175 (4th Cir. 2009). *Sheehan* also recognized the importance of exigency, citing *Waller* for the proposition that "exigent circumstances inform the reasonableness analysis under the ADA, just as they inform the distinct reasonableness analysis under the Fourth Amendment." 743 F.3d at 1232.

The Fourth Amendment recognizes an objective reasonableness standard for the use of force by police, which is "not capable of precise definition or mechanical application." *Graham v. Connor,* 490 U.S. 386, 396 (1989), quoting *Bell v. Wolfish,* 441 U.S. 520, 559 (1979). Rather,

Page 6 -    DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
DB7/mm8/33658607
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

the Fourth Amendment reasonableness standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* And for excessive force claims under the Fourth Amendment, at least, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

Because exigency is so fact-specific under Fourth Amendment and—under *Sheehan*—exigency similarly informs the calculus of the reasonableness under the ADA, Fourth Amendment principles should direct the Court's analysis in this case. Fourth Amendment jurisprudence recognizes the difficulty in applying broad or across-the-board prohibitions on police uses of force and counsels restraint against injunctive relief on local police practices. *City of Los Angeles v. Lyons,* 461 U.S. 95, 112 (1983). Even if the analysis under the ADA is distinct, there is no reason it should not run in parallel with the dictates of the Fourth Amendment in the context presented by Plaintiffs in this case. The totality of the circumstances in a given situation must be taken into account under both the ADA and Fourth Amendment, yet Plaintiffs' complaint simply ignores this basic premise. Thus, for the same reasons that Plaintiffs lack standing for their proposed remedies under the Fourth Amendment, as discussed later in this brief, they also lack standing under the ADA.

### III.  Plaintiffs' ADA Claims, Which Seek Systemic Relief, Should Be Dismissed Under FRCP 12(b)(6) Because the Complaint Does Not Sufficiently Allege Any Violation of the ADA, Let Alone Systemic Violations.

#### A.  FRCP 12(b)(6) Standards

A claim must be dismissed when it "fail[s] to state a claim upon which relief can be granted." FRCP 12(b)(6). The facts alleged in the complaint must amount to a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

marks omitted). A claim is plausible on its face only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. In short, although "[t]he plausibility standard is not akin to a probability requirement, * * * it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted). In sum, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss for failure to state a claim, a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, to assess the complaint's adequacy, a court may begin by identifying those allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678 (holding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In other words, this Court "need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted).

### B.    Injunctive Relief Standards

To obtain a systemic ADA remedy in federal court, Plaintiffs must plead and prove ADA violations "attributable to policies or practices pervading the whole system." *Armstrong v. Davis*, 275 F.3d 849, 870 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). *See also Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1073 (9th

Page 8 -    DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

DB7/mm8/33658607

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Cir. 2010) (evidence "constituted an insufficient basis for system-wide relief" in an ADA case brought by prison inmates); *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 1005 (9th Cir. 2000) (explaining that a "court's exercise of equitable discretion must heel close to the identified violation").  To sufficiently allege a claim for injunctive relief, the plaintiff must plead a likelihood of substantial and immediate irreparable harm if the complained of conduct is not enjoined.  *Hodgers-Durgin*, *v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (en banc).  In other words, the plaintiff must demonstrate "a realistic likelihood that the injury will be repeated."  *Taylor v. Westly*, 488 F.3d 1197, 1199 (9th Cir. 2007).  And more than a merely "conjectural" or "hypothetical" danger of future injury is required; the plaintiff must show that, absent injunctive relief, there is a "real and immediate" danger of new injury.  *Lyons, supra*, 461 U.S. at 102.

In sum, a plaintiff seeking systemic ADA relief in the form of an injunction must show ADA violations attributable to the defendant's policies or practices and a realistic likelihood of future harm from the repetition of such violations.  Regarding the repetition piece, "[t]here are at least two ways in which to demonstrate that [the] injury is likely to recur.  First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy. * * * Second, the plaintiff may demonstrate that the harm is part of a pattern of officially sanctioned behavior violative of the plaintiff['s] federal rights."  *Armstrong*, 275 F.3d at 861 (internal quotation marks and brackets omitted).  Past exposure to harmful or illegal conduct does not necessarily entitle a plaintiff to injunctive relief if the plaintiff does not continue to suffer adverse effects.  *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).

### C.    The Complaint Does Not Allege Sufficient Facts to State a Claim for Systemic Relief under the ADA.

To state a claim for injunctive relief against OSP that is plausible on its face, Plaintiffs' complaint must contain allegations of fact from which this court can draw the reasonable inference that:

Page 9 -    DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
DB7/mm8/33658607
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

(1) OSP, pursuant to its established policies or practices, failed to reasonably accommodate persons with disabilities in dealing with the Portland protests—that is, make accommodations that are reasonably available under the specific circumstances, *see Sheehan*, 743 F.3d at 1232-33 (a plaintiff asserting a Title II ADA claim bears the initial burden of producing evidence of the existence of a reasonable accommodation, with the existence of exigent circumstances informing the reasonableness analysis); and

(2) there is a realistic likelihood that substantial and immediate irreparable harm will recur.

As explained below, Plaintiffs have not alleged such facts; their allegations completely ignore any exigency analysis whatsoever.

Plaintiffs have alleged that OSP has coordinated with local and federal law enforcement agencies and has, along with the PPB, "taken a leading role in responding to certain protests in Portland." Compl. ¶¶ 21, 178-79. Plaintiffs also have alleged various acts of discrimination by local and federal law enforcement. *See generally* Compl. ¶¶ 29-180. But their complaint contains no allegations of fact from which this Court can draw the reasonable inference that OSP—*pursuant to its established policies or practices*—failed to accommodate persons with disabilities under any specific circumstances in the course of OSP's response to the Portland protests. Indeed, Plaintiffs' complaint does not identify OSP or any of its policies or practices in any allegation of fact relating to the categories of persons with disabilities that Plaintiffs claim have been unlawfully discriminated against. *See* Compl. ¶¶ 32-46 (deaf and hard of hearing persons), ¶¶ 47-80 (blind and low vision persons), ¶¶ 81-111 (persons with mobility disabilities), ¶¶ 112-118 (persons with photosensitive epilepsy), ¶¶ 119-152 (persons with psychiatric disabilities and service animals).

Additionally, Plaintiffs' complaint fails to meaningfully address the knowledge requirement under the ADA beyond mere conclusions, labels, and sweeping propositions. The

DB7/mm8/33658607

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

general rule under the ADA (and Section 504 of the Rehabilitation Act) is that a plaintiff "must show 'that the [defendant] knew not only of the [individual's] disability, but also of the physical or mental limitations resulting therefrom.'" *McCoy v. Texas Dep't of Criminal Justice,* 2006 WL 2331055, at *7 (S.D.Tex. Aug. 9, 2006), citing *Seaman v. CPSH, Inc.,* 197 F.3d 297, 300 (5th Cir.1999).

Knowledge is most often provided through a request for accommodation, though such a request may not be required where a person with a disability's needs are obvious. *Id., citing Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir.2001). However, the ADA does not require public entities to "guess" an individual's need for an accommodation. *Id.,* citing *Randolph v. Rogers,* 170 F.3d 850, 858 (8th Cir.1999).

In *Sheehan,* knowledge of the plaintiff's disability was established without question. 743 F.3d at 1218 (discussing information shared with officers regarding the plaintiff's mental instability). In fact, this knowledge by the police officers was fundamental to the court's determination that the ADA applied to their conduct toward the plaintiff. *Id.* at 1233 ("It is undisputed that Sheehan had a disability and that the officers knew it at the time they encountered her."); *See, also, Larkin v. Kenison,* 2020 WL 4353654 (D.Haw. 2020). In contrast, here Plaintiffs merely give voice to the issue yet sidestep it completely in their factual allegations against OSP. *See* Compl. ¶¶ 163 ("It is obvious that people with disabilities require reasonable modifications and effective communications at protests.") & 290 ("Defendants know that people with disabilities are participating in the ongoing protests as members of the community, medics, and press.").[2]

---

[2] Plaintiff's complaint alleges that DRO sent a letter "detailing the need for accommodations" to then-OSP Superintendent Travis Hampton in early September 2020. Compl. ¶ 170. In support of their motion for a preliminary injunction, Plaintiffs offer a letter to Supt. Hampton dated Sep. 4, 2020. Decl. of Tom Stenson (Feb. 5, 2021) [ECF 44], Ex. 1, 7. This letter is no less vague as to specific situations and conditions requiring particular accommodations as Plaintiffs' allegations in the complaint.

Plaintiffs' complaint therefore fails to state a claim of systemic ADA violations by OSP, let alone a claim that such violations are sufficiently likely to recur.  In short, as far as OSP is concerned, the complaint contains nothing more than the "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are insufficient to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

## IV.    Plaintiffs' Claims, Which Seek Systemic Relief, Should Be Dismissed Under Rule (12)(b)(1) Because Plaintiffs Lack Standing to Pursue Such Relief.

For similar reasons, Plaintiffs have not pleaded sufficient facts to establish that they have Article III standing to pursue systemic relief.  Accordingly, claims for systemic relief should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

### A.    FRCP 12(b)(1) Standard

A claim must be dismissed under Fed. R. Civ. P. 12(b)(1) to the extent a plaintiff lacks Article III standing to pursue the relief sought.  *See Fleck & Assoc., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006) ("Because [the plaintiff] lacked standing . . . the district court lacked subject matter jurisdiction and should have dismissed the complaint on that ground alone.").

Further, an attack on the court's subject matter jurisdiction may be facial, attacking the allegations of a complaint, or may be made as a "speaking motion," attacking subject matter jurisdiction as a matter of fact.  *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979).  Faced with such a motion:

> [T]the trial court may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56. * * * (N)o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id., quoting Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977).

Thus, in considering Plaintiffs' standing—including the redressability of their claims for prospective relief as argued below—Defendant asks the Court to consider the

Page 12 -  DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

facts, and arguments, offered by all parties in support of or in response to Plaintiffs'

motion for a preliminary injunction [ECF 35].[3]

### 1.    Individual Standing for an ADA Title II and Rehabilitation Act Claims [4]

Although the purpose of the ADA is "sweeping" and its mandate "comprehensive, it's

"reach is not unlimited." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 946 (9th Cir.

2011). "[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming

discrimination must satisfy the case or controversy requirement of Article III by demonstrating

his standing to sue at each stage of the litigation." *Id.*; *see also Human Life of Wash., Inc. v.*

*Brumsickle,* 624 F.3d 990, 1000 (9th Cir. 2010). In order to have Article III standing, a plaintiff

must adequately establish: (1) an injury in fact; (2) causation; and (3) redressability. *Sprint*

*Commc'n Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008).

Regarding the first two standing requirements, a plaintiff asserting a reasonable

accommodation claim under Title II must show that they were either excluded from participation

in or denied the benefits of the public entity's services, programs or activities or were otherwise

discriminated against by the public entity and that such exclusion, denial of benefits, or

discrimination was by reason of their disability. *Cf. Sheehan*, 743 F.3d at 1232-33. In addition,

standing for injunctive relief requires a showing of a "real and immediate threat of repeated

injury." *Updike v. Multnomah County,* 870 F.3d 939, 947 (D.Or. 2017), quoting *O'Shea v.*

*Littleton,* 414 U.S. 488, 496 (1974).

To demonstrate the third standing requirement, redressability, a plaintiff must show that

she "personally would benefit in a tangible way from the court's intervention." *Steel Co. v.*

---

[3] Specifically, as to OSP, Defendant requests that the Court consider the Declarations of OSP Lieutenant Joey Pollard (March 4, 2021) and OSP Sergeant Cameron Bailey (March 11, 2021), and the exhibits thereto.

[4] The same analysis applies to Plaintiffs' ADA and Rehabilitation Act claims; thus, for ease of reference, Defendant references Title II.

*Citizens for a Better Env't,* 523 U.S. 83, 134 (1998) (*citing Warth v. Seldin,* 422 U.S. 490, 508

(1975)).  Any "remedy must of course be limited to the inadequacy that produced the injury in

fact that the plaintiff has established."  *Lewis v. Casey,* 518 U.S. 343, 357 (1996).

**2.      Associational Standing for an ADA Title II Claim**

Associational standing is proper where: (a) an organization's members have standing to

sue in their own right; (b) the interests the organization seeks to protect are germane to its

purpose; and (c) neither the claim asserted nor the relief requested requires the participation of

individual members in the lawsuit.  *Hunt v. Washington State Apple Advertising Com'n*, 432

U.S. 333, 342-43 (1977).  The first two prongs of *Hunt* are Constitutional; the third prong is a

prudential requirement and can be abrogated by congress.  *Or. Advocacy Cent. v. Mink*, 322 F.3d

1101, 1109 (9th Cir. 2003).

**B.      Plaintiffs Lack Standing to Seek Systemic Relief Under the ADA Because They Fail to Allege Discrimination by Reason of Their Disability or Allege that the Remedy Sought Is Limited to the Inadequacy that Produced Their Injury**

For similar reasons as set forth above in support of dismissal under Fed. R. Civ. P.

12(b)(6), Plaintiffs have not demonstrated that they have standing to pursue their ADA claim.

Regarding the causation standing requirement, Plaintiffs' allegations do not establish that the

discrimination they encountered was a result of OSP's conduct.  That is, Plaintiffs' allegations do

not establish that OSP caused the Plaintiffs' alleged injuries by failing to make reasonable

accommodations necessary to accommodate Plaintiffs' disabilities.

First, although Plaintiffs have alleged various acts of discrimination by local and federal

law enforcement, they do not allege that such discrimination was caused by OSP.  *See generally*

Compl. ¶¶ 29-180.  At most, Plaintiffs allege some coordination by OSP with local and federal

law enforcement.  *See* Compl. ¶¶ 21,177.  That is insufficient to meet the causation requirements

for standing, because those allegations, without more, do not establish that such coordination

resulted in the alleged discriminatory actions.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Second, although Plaintiffs have identified several accommodations that they claim are necessary to accommodate their disability, they have not alleged that those accommodations by OSP are *reasonable* considering the factual allegations indicating exigent circumstances.[5]  *See* Compl. ¶¶ 74, 85-86, 91, 97, 106, 186, 194-95, 219-220 (indicating tightly packed crowds and declarations of unlawful assemblies and riots).  For instance, Plaintiffs allege that the requested accommodations are reasonable and *would not* constitute a fundamental alteration because defendants are already "constitutionally required to provide adequate notice and an opportunity to comply before dispersing crowds."  Compl. ¶ 194-95, 220.  Such conclusory allegations do not establish that OSP systematically discriminated against Plaintiffs by failing to provide those accommodations.

Regarding the redressability requirement, Plaintiffs' allegations similarly fail to establish that the requested accommodations would or could resolve the inadequacies that produced the Plaintiffs' injuries in a way that is reasonable or limited to the harms described by Plaintiffs, especially in a way that would not fundamentally interfere with Defendants' legitimate responses to unlawful assemblies and riots.  Put simply, it is not clear how Plaintiffs would benefit from the court's intervention as to OSP, much less in a way that is specific to any injury alleged.

Moreover, the individual encounters alleged by Plaintiffs do not establish a very significant possibility of future systemic harm by OSP, nor do they demonstrate that Plaintiffs personally are realistically threatened by a repetition of the specific injury—all necessary requirements for prospective injunctive relief.  As noted, a likelihood of recurrence can be established either by showing that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy, or by demonstrating that the harm is part of a pattern of officially sanctioned behavior that violates Plaintiffs' rights.  Plaintiffs have not alleged either

---

[5] In a Title II reasonable accommodation claim, "the plaintiff bears the initial burden of producing evidence of the existence of a reasonable accommodation."  *Sheehan*, 743 F.3d at 1233.

Page 15 -   DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
DB7/mm8/33658607

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

of those as to OSP and the factual record presented to the Court, in fact, shows otherwise.  *See* Pollard Decl., Ex's. 201 (Mobile Response Team Standard Operating Procedures Manual) & 202 (OSP Use of Force policy); Bailey Decl., Ex. 203 (OSP Mobile Response Team policy).

DRO, in turn, makes only conclusory allegations regarding a lack of reasonable accommodations by OSP.  *See* Compl. ¶¶ 14-15, 133-74.  Those allegations are not supported by factual allegations detailing any individual barriers faced by the members or individuals DRO serves; DRO's allegations go no further than those made by the four individual Plaintiffs in this case.  These non-specific allegations are insufficient under *Iqbal* to establish systemic injury-in-fact and therefore leave DRO itself without standing to seek systemic relief.  *See Leite v. Crane Co.,* 749 F.3d 1117, 1121-22 (9th Cir. 2014) (*Iqbal*'s pleading standard applies to establishing jurisdiction); *Chapman*, 631 F.3d at 955, n. 9 (explaining "allegation that the barriers at the Store 'denied [plaintiff] full and equal enjoyment' is precisely the 'formulaic recitation' of the elements of a claim that the Supreme Court has deemed insufficient" and that to "sufficiently allege standing, [a plaintiff] must do more than offer 'labels and conclusions'" that parrot the language of the ADA).

### C.    Plaintiffs' § 1983 claims

Plaintiffs make separate claims for injunctive relief against Superintendent Davie pursuant to 42 U.S.C. § 1983 for alleged violations of their free speech rights under the First Amendment, excessive force under the Fourth Amendment, and due process and equal protection violations under the Fourteenth Amendment.  Compl. ¶¶ 224-32, 237-38 (First Amendment); ¶¶ 247-54, 259-60 (Fourth Amendment); ¶¶ 268-72, 276-77 (due process); & ¶¶ 286-93, 297-98 (equal protection).[6]

---

[6] Plaintiffs' allegations in the complaint are directed at former-Superintendent Hampton in his official capacity only.  Defendant Davie, as the current OSP Superintendent, has been automatically substituted pursuant to Fed.R.Civ.P. 25(d).

DB7/mm8/33658607
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Defendant acknowledges that, Plaintiffs' claims for injunctive relief being only against her official capacity, her Eleventh Amendment immunity from suit is abrogated by Congress' power to enforce the Fourteenth Amendment. *Ex parte Young,* 209 U.S. 123, 159-160 (1908); *Tennessee v. Lane, infra,* 541 U.S. 509, 514 (2004). This is because "official-capacity actions for prospective relief only are not treated as actions against the State." *Kentucky v. Graham,* 473 U.S. 159, 167, n 14 (1985).

As an initial matter, to the extent that Plaintiffs' section 1983 claims turn on their being persons with disabilities, they are preempted by Plaintiffs' Rehabilitation Act claims. *See Smith v. Barton,* 914 F.2d 1330, 1334 (9th Cir.1990) (allowing section 1983 claims to go forward alongside Rehabilitation Act claims only because "the alleged [section 1983] injuries suffered by plaintiffs are unrelated to their status as handicapped individuals.") Further, while Defendant acknowledges no such limitation from Plaintiffs' ADA claims, Plaintiffs' claims for prospective relief based on equal protection violations merely coexist with their claims under the ADA. *Lane,* 541 U.S. at 522-23 (Title II seeks to enforce prohibition on "irrational disability discrimination."). As the ADA is based on due process and equal protection principles and enforceable against the states based on powers granted by the Fourteenth Amendment, Plaintiffs have no separate substantive claim for violation of the Fourteenth Amendment's protections than they do under the ADA. *Id.*

### 1.    Plaintiffs have not established standing under the First Amendment

Plaintiffs' assert that their First Amendment rights are impacted by OSP's use of crowd control measures. There is no authority, however, suggesting that protestors have an absolute right to protest at any time and at any place, or in any manner of their choosing. *Menotti v. City of Seattle,* 409 F.3d 1113, 1138–39 (9th Cir. 2005). This principle applies regardless of a person having a disability. To the extent that the actions of others led to limitation of the time, place, and manner in which Plaintiffs were able to express their views, "it may be that a violent subset of protesters who disrupt civic order will by their actions impair the scope and manner of how

law-abiding protesters are able to present their views." *Id.* at 1155.  And to the extent that

Plaintiffs' may have been disproportionately affected by police measures "necessary to restore

safety and security" to respond to violent and dangerous protests, any restrictions on Plaintiffs'

speech did not violate their First Amendment rights.  *Id.*

This is because the First Amendment does not place a "limitless variety" of activities in

the category of speech merely because the conduct may indeed express an idea or view.  *U.S. v.*

*O'Brien,* 391 U.S. 367, 376 (1968).  When speech and nonspeech elements coincide, "a

sufficiently important governmental interest in regulating the nonspeech element can justify

incidental limitations on First Amendment freedoms." *Id.*   Just as a person with a disability has

no more right to shout "fire" in a crowded theatre than anyone else, a person with a disability has

no greater right to participate in an unlawful assembly or riot.  Yet Plaintiffs' First Amendment

claims are necessarily couched in this very premise.

Plaintiffs have made no allegations, beyond conclusions and labels, that uses of force as

alleged in the complaint—at minimum as to OSP—were intended to suppress their speech, much

less as the objective of an official policy or sanctioned course of conduct as might support an

injunction against Superintendent Davie.  Plaintiffs allege only that "Defendants' actions are, at

least substantially, in retaliation for Plaintiffs' constitutionally protected participation in protest-

related activity…" Compl. ¶ 229.  But this allegation fails because First Amendment retaliation

requires "but-for" causation, *i.e.,* that the action would not have been taken absent the retaliatory

motive. *Nieves v. Bartlett,* 139 S.Ct. 1715, 1722 (2019).  Under *Nieves,* courts apply an

objective reasonableness test to police conduct and ask: "whether the circumstances, viewed

objectively, justify the challenged action and, if so, conclude that action was reasonable *whatever*

the subjective intent motivating the relevant officials."  *Id.,* quoting *Ashcroft v. al-Kidd,* 563 U.S.

731, 737 (2011) (internal quotations omitted; original italics).  Indeed, the Supreme Court

adopted the following reasoning:

> Because a state of mind is easy to allege and hard to disprove * * * a subjective
> inquiry would set off broad ranging discovery in which there often is no clear end

Page 18 -  DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

> to the relevant evidence. As a result, policing certain events like an unruly protest would pose overwhelming litigation risks. Any inartful turn of phrase or perceived slight during a legitimate arrest could land an officer in years of litigation.

*Id.* (internal citations omitted).

In addition, to support a retaliation claim a plaintiff must generally plead and prove an absence of probable cause. *Id.* at 1723. The narrow exception exists only when a plaintiff presents objective evidence that they were treated differently from those not exercising free speech. *Id.* at 1727. Here, plaintiffs have not sufficiently alleged (or demonstrated) that their speech was suppressed in a way different than others beyond that incidental to their respective disabilities (which is the gravamen of their Title II claims). Instead, they only claim that Defendants: (a) have failed to provide reasonable modifications to law enforcement practices to ensure equal access during protest-related activity; (b) treat Plaintiffs "less favorably than others because they are persons with disabilities who dare to engage in protest-related activity and request reasonable modifications;" and (c) "routinely use excessive force against people with *and without disabilities."* Compl. ¶ 227 (italics added). These bald allegations do not comport with the standards in *Nieves* and are insufficient to state a claim for or give Plaintiffs standing for injunctive relief against Superintendent Davie on their First Amendment claim.

## 2. Plaintiffs do not have standing for an injunction under the Fourth Amendment.

Plaintiffs seek an injunction against the OSP restricting the use of non-lethal crowd control tactics and equipment in nothing more than the most general terms. This type of injunction is exactly what the Supreme Court has advised against, recognizing that the "proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." *Lyons, supra,* 461 U.S. at 112 (refusing

to issue city-wide ban on chokeholds).[7]  And merely "withholding injunctive relief" does not rob the Fourth Amendment of its deterrent effect.  *Id.*

Fourth Amendment limitations on the use of force are controlled by the factors set forth in *Graham v. Connor*, 490 U.S. 386 (1989).[8]  The *Graham* court cautioned that courts must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. The determination of unreasonableness requires a court to decide "whether the totality of the circumstances justified a particular sort of ... seizure." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985).

When the governmental interests at stake are substantial, a greater intrusion upon the Fourth Amendment rights of the person may be justified. Conversely, when the governmental interest is insubstantial, the application of even minimal force may be unreasonable. When balancing the degree of force used against the governmental interests, "it is the need for force which is at the heart of the [analysis]." *Headwaters Forest Def. v. Cnty. of Humboldt*  276 F.3d 1125, 1130 (9th Cir. 2002).  Just as with the ADA, only information reasonably known to an officer at the time of the officer's conduct is relevant to the analysis. *Cty. of Los Angeles v. Mendez*, ⸺ U.S. ⸺, 137 S. Ct. 1539, 1546-47 (2017).  In their complaint, Plaintiffs are asking this Court to ignore that standard of analysis and rule unilaterally that certain crowd measures should never be used.  Yet Plaintiffs simply do not have standing for such sweeping and overbroad remedies, whether under the First Amendment, the Fourth Amendment, or the ADA.  Put simply, Plaintiffs' prayer for injunctive relief in this case is unreasonable and unworkable, whatever the standard or theory of liability.

---

[7] Even the plaintiff in *Lyons* only sought such a restriction *"except in situations where the proposed victim * * * reasonably appears to be threatening the immediate use of deadly force." Id.* at 98 (emphasis added).

[8] Indeed, the *Graham* paradigm for analyzing a Fourth Amendment claim is incorporated into OSP's policies regarding the use of force.  Pollard Decl., Ex. 202 (Use of Force Policy, 3-4).

   3.    **Plaintiffs' due process and equal protection claims are nothing more than their First and Fourth Amendment, and ADA claims**

Plaintiffs allege that Defendants systematically deny due process to persons with disabilities based on not providing sufficient notice to allow dispersal or comply with police orders. Compl. ¶ 270. To the extent Plaintiffs' substantive due process rights under the First and Fourth Amendments are not alleged elsewhere, they are subsumed by Plaintiff's ADA claims. *Patel v. Penman,* 103 F.3d 868, 874 (9th Cir.1996) (where particular amendment provides explicit source of constitutional protection, that amendment—not the general notion of substantive due process—controls the analysis of a plaintiff's claims). Similarly, Plaintiffs' ADA claims are based on the due process and equal protection principles upon which the ADA was enacted. *Lane, supra,* 541 U.S. at 522-23 (Title II seeks to enforce prohibition on irrational disability discrimination).

**V.    If the Court Denies Defendant's Motion to Dismiss, Plaintiffs Should be Required to make a more Definite and Certain Statement Regarding Systemic Liability**

Plaintiffs' allegations in the complaint, especially as to the OSP, are too vague and ambiguous for Defendant to adequately prepare a response. Plaintiffs fail to provide sufficient context in which their requested measures could be reasonably implemented. The complaint fails to adequately identify contexts where OSP has engaged in specific conduct, with knowledge (constructive or otherwise), that failed to reasonably accommodate Plaintiffs or other persons with disabilities to the extent such accommodations would have been reasonable under the totality of the appurtenant circumstances. If nothing else, Plaintiffs should be required to provide a more definite statement pursuant to FRCP 12(e) setting forth well-pleaded factual allegations that support their claims for systemic liability and injunctive relief against the OSP.

## CONCLUSION

Plaintiffs have failed to sufficiently make out a claim for injunctive relief under the ADA or establish their standing for the systemic relief that they seek against the OSP, regardless of legal theory. While OSP has resorted to its various, available, and non-lethal crowd control

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

measures in response to violent demonstrations and riots in Portland, Plaintiffs have not established that it has done so in a way that failed to reasonably accommodate any person in any specific situation.  Nor have Plaintiffs sufficiently identified systemic violations of the ADA, First Amendment, or Fourth Amendment based on policies or established practices of the OSP. Thus, the vagueness and overbreadth of Plaintiffs' allegations and requested injunction could place OSP, like the other defendants, in the untenable position of having to "prove up" the constitutionality and justification for any use of force that could conceivably be subject to Plaintiffs' claims.  Accordingly, in light of their allegations, the context in which they are presented, and Plaintiffs' inability to establish sufficient standing to confer Article III jurisdiction for the injunctive relief they seek against OSP, the complaint should be dismissed.

DATED March __15__, 2021.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


_s/ Drew K. Baumchen_
DREW K. BAUMCHEN #045032
JILL SCHNEIDER #001619
Senior Assistant Attorneys General
Trial Attorneys
Drew.Baumchen@doj.state.or.us
Jill.Schneider@doj.state.or.us
Of Attorneys for Defendant Terri Davie

Page 22 -  DEFENDANT DAVIE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT