BRIAN M. BOYNTON
Acting Assistant Attorney General
SCOTT ERIK ASPHAUG
Acting United States Attorney
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
MICHAEL P. CLENDENEN (DC 1660091)
JORDAN L. VON BOKERN (DC 1032962)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:   (202) 353-0693
Fax:   (202) 616-8460

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PHILIP WOLFE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PORTLAND, a municipal corporation, *et al.*, <br><br> Defendants. | Case No. 3:20-cv-01882-SI <br><br> **DECLARATION OF CBP SOG-1** <br> *Authorized to be filed under seal* |

*Authorized to be filed under seal*

DECLARATION OF TIMOTHY P. SULLIVAN (CBP SOG-1)

I, Timothy P. Sullivan (CBP SOG-1)[1], pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

2. I am a Chief Patrol Agent with the Department of Homeland Security, U.S. Customs and Border Protection, U.S. Border Patrol. Specifically, I am the Chief Patrol Agent of the Border Patrol Special Operations Group (SOG).

3. In the role of Chief Patrol Agent at SOG, I supervise all Border Patrol Tactical unit (BORTAC) SOG members headquartered out of El Paso, Texas. I also oversee BORTAC SOG members deployed as part of Operation Diligent Valor in Portland, Oregon.

4. CBP did not use strobe lights in response to the protests in Portland.

5. Based on my training and experience, it is not practicable for CBP to use a sign language interpreter to communicate with protestors in Portland. Among other reasons, the reasons that use of an interpreter for sign language during Portland protests is impracticable include: (1) the protests in Portland occur largely at night, which limits the visibility of interpreters for the protestors; (2) CBP would need to ensure the safety of interpreters, and in doing so the interpreters would be obscured behind agents/officers; and (3) the protests in Portland have been very large and dynamic, and in order to have interpreters close enough to provide distinguishable sign language, I would need to provide a large number of them spread over a considerable area in a chaotic and violent environment.

6. It is not reasonable for CBP to communicate with protestors in Portland through visual messaging, such as projecting words on large screens, because the protests in Portland have arisen at various locations and frequently move. Further, relocating visual display equipment to each protest location as the protest moves would encumber agents/officers' ability to respond quickly to violence while relocating the equipment. In addition, given the past assaultive acts against federal officers and agents, and the destruction by protestors against federal property, protestors would likely also target and damage visual equipment similar acts of violence.

7. Prior to using lawful force, law enforcement provides a verbal warning and allows a reasonable amount of time to pass prior to engagement, so that all protestors, including persons with disabilities, have adequate time to leave the location between the warning and use of force.

---

[1] I am uncomfortable disclosing my name in this Declaration because I am concerned about a doxing attack, where my name could be used by individuals with malicious intent to find personal information about me, such as my home address and the identities of my family members. I am willing to disclose my name to the Court provided the information is kept under seal.

8. CBP agents/officers dispersing a crowd leave a route of egress for the crowd being dispersed, so that agents/officers do not close in on a dispersing crowd from all sides.

9. CBP agents/officers are trained to use objectively reasonable force only when necessary to carry out their law enforcement duties. CBP policy on the use of force by authorized agents/officers is derived from constitutional law, as interpreted by federal courts, federal statutes, and applicable DHS and CBP policies. Less lethal specialty impact and chemical munitions are designed to deliver impact, chemical irritant, or both, and can be delivered by means of a designated hand thrown munitions or by a munitions launcher. A less-lethal chemical munition may be used as a compliance tool on a subject offering, at a minimum, active resistance. A less lethal specialty impact munition may be used as a compliance tool on a subject offering, at a minimum, assaultive resistance. The distance each is used is device specific. The head especially should never be deliberately targeted for kinetic impact. Agents/officers do not have a duty to retreat to avoid the reasonable use of force, nor are they required to wait for an attack before using reasonable force to stop a threat.

10. Less lethal specialty impact and chemical munitions are necessary as compliance tools because they provide a range of force options that agents/officers can choose depending on the circumstances of their interaction with a noncompliant subject. For example, agents/officers can progressively escalate use of less lethal force if a crowd becomes increasingly violent without resorting to lethal force. In addition, these less lethal munitions allow agents/officers to affect noncompliant subjects from a distance, lessening the physical risk to agents/officers.

11. When CBP agents/officers arrest an individual, agents/officers are trained to abide by CBP standards pertaining to transport, escort, detention, and search. Before placing a detainee in a hold room or holding facility, agents/officers assess whether a detainee is considered at-risk, which assessment includes whether the detainee has or demonstrates a mental or physical disability, and whether the detainee has self-identified as transgender or gender nonconforming. General detention procedures include inspecting for medical issues, and ensuring that whenever operationally feasible, agents/officers conducting a search are of the same gender identity or declared gender as the detainee being searched.

## CERTIFICATE OF SERVICE

I hereby declare under penalty of perjury that the foregoing DECLARATION OF TIMOTHY P. SULLIVAN (CBP SOG-1) is true and correct. Executed this 4th day of March, 2021.

Respectfully,

_____
Timothy P. Sullivan (CBP SOG-1)
Chief Patrol Agent
U.S. Border Patrol
Special Operations Group