JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
Christopher A. Gilmore, OSB No. 980570
Senior Assistant County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
Telephone:  (503) 988-3138
Facsimile:  (503) 988-3377
Email: chris.gilmore@multco.us
    *Of Attorneys for Defendants Multnomah County*
    *and Michael Reese*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **PHILIP WOLFE, KATALINA DURDEN, MELISSA LEWIS, JUNIPER SIMONIS,** individually, and **DISABILITY RIGHTS OREGON,** an Oregon nonprofit and advocacy corporation, | Civil No. 3:20-cv-01882-SI |
| Plaintiffs, | DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S RESPONSE TO PLAINTIFFS' REQUEST FOR RESTRAINING ORDER |
| v. | |
| **CITY OF PORTLAND,** a municipal corporation; **TED WHEELER,** in his official capacity; **CHUCK LOVELL,** in his official capacity; **MULTNOMAH COUNTY**, a political subdivision of the State; **MICHAEL REESE,** in his official capacity; **TRAVIS HAMPTON**, in his official capacity;  **CHAD WOLFE**, in his individual and official capacity; **DONALD WASHINGTON**, in his individual and official capacity; and **DOES 1-100**, individual and supervisory officers of local, state, and federal government, | |
| Defendants. | |

# TABLE OF CONTENTS

A.  **INTRODUCTION**................................................................................................... 1

B.  **SUMMARY OF THE CASE**................................................................................ 2

1.  Plaintiffs' Claims ............................................................................................ 2
2.  Defendants Response to Plaintiff's Claims................................................... 3

C.  **INADMISSIBLE HEARSAY** ............................................................................ 6

D.  **MATERIAL FACTS** ........................................................................................... 7

1.  Mission of the Multnomah County Sheriff's Office During the Protests........... 7
2.  Mutual Assistance ......................................................................................... 8
3.  Joint Command Authorized by the State ....................................................... 9
4.  Specific Allegations of Improper Use of Crowd Control Measures................... 10
5.  Role of RRT on dates identified in the Complaint ........................................ 11
6.  Decrease in Protests and Deployment of the RRT......................................... 12

E.  **RESPONSE TO PRELIMINARY INJUNCTION** ...................................... 13

1.  Standard of Review....................................................................................... 13
2.  Likelihood of Success on the Merits............................................................. 14

    a.  ADA and Rehabilitation Act............................................................. 14
    b.  First Amendment .............................................................................. 17
    c.  Fourth Amendment ........................................................................... 19
    d.  Fourteenth Amendment .................................................................... 22
    e.  Equal Protection Clause .................................................................... 23
    f.  Pattern and practice claim under Monell ......................................... 23

3.  Likelihood of Irreparable Harm .................................................................... 24
4.  Balancing of the Equities ............................................................................. 25
5.  Injunctive Relief is Overly Broad and Unnecessary........................................ 26

    a.  Provide effective communications, such as ASL interpreters and visual messaging systems, when conveying orders or other directions to people who are deaf or hard of hearing at protests.................................. 27
    b.  Cease the use of "bull-rushes" and similar practices that do not provide people with disabilities adequate time or directions or provide adequate time and clear and consistent directions for individuals with disabilities to comply with lawful orders. ........................................................ 29

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

  c.  Identify and inform protesters and others of accessible avenues of egress before dispersing a crowd or taking other actions that may place persons with disabilities in danger. ........................................................................ 30

  d.  Cease using chemical munitions that negatively affect people with respiratory and inflammatory disabilities, and that negatively affect service animals, and remove remaining residue or chemical buildup from areas where such munitions have been used............................................ 30

  e.  Cease using strobe lights........................................................................... 30

  f.  Cease separating people with disabilities from their assistants, interpreters, sighted guides and/or service animals......................................................... 30

F.  **CONCLUSION** ............................................................................................... 31

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

# TABLE OF AUTHORITIES

## *Cases*

*Albright v. Oliver*, 510 U.S. 266, 274, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994) _____ 22

*Am. Trucking Ass'ns Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) _____ 13

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) _____ 20

*Barney v. City of Eugene*, 20 F. App'x 683, 685 (9th Cir. 2001) _____ 6, 21

*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) _____ 23

*Bates v. Chesterfield County*, 216 F.3d 367, 372 (4th Cir. 2000); _____ 17

*Blair v. Bethel School District*, 608 F.3d 540, 543 (9th Cir. 2010) _____ 19

*Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988)_____ 18

*Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004)_____ 5, 20

*Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011) _____ 5

*Buchanan v. Maine*, 417 F.Supp.2d 45, 73 (D. Me. 2006)_____ 17

*Campbell v. City of Oakland*, No. C 11-05498 RS, 2011 WL 13376906, at *6 (N.D. Cal. Dec. 12, 2011) _____ 24

*Chandler v. Williams*, No. CV 08-962-ST, 2010 WL 3394675, at *1 (D. Or. Aug. 26, 2010) _ 13

*City & Cty. of San Francisco, Calif. v. Sheehan,* 575 U.S. 600, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015) _____ 4, 16

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) _____ 23

*City of Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989)). _____ 24

*City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) _____ 14

*Cohen v. California*, 403 U.S. 15, 23–24, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) _____ 18

*Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996)_____ 18

*Daritech, Inc. v. Ward*, No. CV-11-570-BR, 2011 WL 2150137, at * 1 (D. Or. May 26, 2011) 13

*Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) _____ 23

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) _____ 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.* (TOC), Inc., 528 U.S. 167, 185, 120 S. Ct. 693, 706, 145 L. Ed. 2d 610 (2000) _____ 14

*Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) _____ 27

*Gohier v. Enright*, 186 F.3d 1216, 1222 (10th Cir. 2000) _____ 17

*Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir.1984) _____ 2

*Gomez v. City of Whittier*, 211 F. App'x 573 (9th Cir. 2006)_____ 22

*Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)_____ 6, 19, 22

*Hainze v. Richards*, 207 F.3d 795, 800-02 (5th Cir. 2000) _____ 17

*Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) _____ 19

*Hicks v. City of Portland*, No. CV 04-825-AS, 2006 WL 3311552, at *1 (D. Or. Nov. 8, 2006) 6, 22

*Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 822 (9th Cir. 2020) 8, 18, 25

*Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001) _____ 20

*Karam v. City of Burbank*, 352 F3d 1188, 1194 (9th Cir. 2003) _____ 19

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

*Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001)_____ 23
*Lockett v. Cty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020)_____ 24
*M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) _____ 13
*Marcavage v. City of New York*, 689 F.3d 98, 105 (2d Cir. 2012) _____ 26
*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir.2004) _____ 14
*Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) _____ 5, 18
*Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) _____ 21
*Nieves,* 139 S. Ct at 1722 _____ 19
*O'Shea v. Littleton*, 414 U.S. 488, 495 (1974) _____ 14
*Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) _____ 24
*Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) _____ 23
*Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) _____ 6, 23
*Reichle v. Howards*, 566 U.S. 658, 668, 132 SCt 2088 (2012) _____ 19
*Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014) \_\_\_\_ 4, 15, 16, 17
*Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)_____ 18
*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) 13
*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002)_____ 14
*Thompson v. Williamson County*, 219 F.3d 555 (6th Cir. 2000) _____ 17
*Updike v. Multnomah Cty.*, 870 F.3d 939, 957 (9th Cir. 2017) _____ 4, 15
*Waller v. City of Danville*, 556 F.3d 171, 175-76 (4th Cir. 2009) _____ 17
*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d
  249 (2008) _____ 13, 25
*Wise v. City of Portland*, 483 F. Supp. 3d 956, 968 (D. Or. 2020)_____ 21, 27
*Wood v. City of Garden Grove*, 395 F. App'x 467, 469 (9th Cir. 2010)_____ 20

**Statutes**

Or. Rev. Stat. § 131.675 _____ 21

**Other Authorities**

§ 1983 _____ 22, 23, 24
42 U.S.C. § 12132_____ 14

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

Defendants Multnomah County and Sheriff Michael Reese (hereinafter "Multnomah County Defendants") offer the following response to Plaintiffs' Motion for a Preliminary Injunction:

## A.    INTRODUCTION

Multnomah County Defendants contend that Plaintiffs fail to allege any facts to demonstrate a future threat of irreparable harm that would justify a preliminary injunction as to the Multnomah County Defendants. None of the declarations or the videos offered in support implicate the conduct of the Multnomah County Defendants.

Plaintiffs' theory is based entirely on an attempt to hold the Multnomah County Defendants accountable for the conduct of the other co-defendants. The allegations are conclusory. They are not supported by the law. Multnomah County Defendants did not participate in any of the specific allegations of harm. Each law enforcement agency is responsible for the conduct of its own officers and agents and in providing crowd control in those areas that are under their supervision and control.

The *only* factual allegation that the Multnomah County Defendants engaged in any conduct directed at Plaintiffs is a single incident involving Plaintiff Melissa Lewis:

> "Melissa complied with the deputies' directions, and she was on the sidewalk, where a temporary restraining order said she had a right to be. Nonetheless, the deputies pulled Melissa by her backpack, shoved her shoulders, and struck her ribs with a baton for not moving quickly enough."

Complaint, ¶93. This single allegation is not even cited in Plaintiffs' Motion for Preliminary Injunction. The Court has to comb through the declarations to uncover this solitary piece of evidence.

Page 1 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
       RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

There is no evidence *at all* that the Multnomah County Defendants deployed flashbang grenades, tear gas, pepper balls, engaged in bullrushes or other crowd control tactics that caused Plaintiffs' harm let alone evidence of a pattern and practice that is indicative of a future threat. As such a preliminary injunction against the Multnomah County Defendants is wholly misplaced as it fails to demonstrate not only past misconduct but any rational basis for future harm.

The frequency of protests has died down and the deployment of the RRT for Multnomah County has in turn diminished significantly. The potential for any future harm is speculative. *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir.1984) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.").

### B.    SUMMARY OF THE CASE

#### 1.    Plaintiffs' Claims

Plaintiffs, Disability Rights of Oregon, bring this case on behalf of Plaintiffs seeking injunctive relief and compensatory damages against the City of Portland, Multnomah County and officials of the federal and state government. The allegations emphasize individualized injury against four Plaintiffs, Philip Wolfe, Katalina Durden, Melissa Lewis and Juniper Simonis that occurred during the political protests in the City of Portland. The specific conduct includes bull rushes, tear gas, flashbangs, pepper balls, rubber bullets, and chemical munitions used to control the crowds. The specific dates, the location of the incident, the context for each event, and the type of force applied is alleged in particular.

There are a total of six (6) claims against all Defendants, two based on violations of the ADA and the Rehabilitation Act, and four (4) constitutional claims. Each constitutional claim

Page 2 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
          RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

has four "Counts" one of which is a *Monell* claim that the Multnomah County Defendants

engaged in a pattern and practice of violating the constitution.

A summary of the legal claims against the Multnomah County Defendants are:

- Violation of the Americans with Disabilities Act under Title II for not providing reasonable modifications to crowd control measures to allow persons with disabilities to participate in the protests;

- Violation of Section 504 of the Rehabilitation Act for not providing reasonable modifications to crowd control measures to allow persons with disabilities to participate in the protests;

- Violation of the First and Fourteenth Amendments to the U.S. Constitution for retaliating against Plaintiffs for participating in protests by using excessive force,  not effectively communicating and otherwise not providing reasonable modifications to crowd control measures thereby deterring a person of ordinary firmness from participating and resulting in a chilling effect on Plaintiffs' rights under the First Amendment;

- Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution for unlawful seizures and excessive force by subjecting Plaintiffs to unnecessary crowd control measures;

- Violation of the Fourteenth Amendments to the U.S. Constitution for violating Plaintiffs right to due process in not providing adequate notice and opportunity to disperse prior to the use of crowd control measures during the protests.

- Violation of the Equal Protection Clause of the U.S. Constitution for treating persons with disabilities differently than other similarly situated persons by not providing adequate notice prior to the use of crowd control measures during the protests; and

- *Monell* claims for engaging in a pattern and practice of violating Plaintiffs' constitutional rights as alleged above.

Plaintiffs seek declaratory and injunctive relief as well as compensatory damages.

## 2.    Defendants Response to Plaintiff's Claims.

The following specific response is offered as to the merits of each claim:

Page 3 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
    RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

- Plaintiffs' claim against the Multnomah County Defendants under the ADA and the Rehabilitation Act are not likely to succeed on the merits because:

  - Plaintiffs fail to allege facts that the Multnomah County Defendants were on notice of Plaintiffs' disabilities at the time of the protest and as such had no opportunity to provide an accommodation under the ADA, *Updike v. Multnomah Cty.*, 870 F.3d 939, 957 (9th Cir. 2017);

  - Even assuming the letter provided by Disability Rights of Oregon on September 4, 2020 is enough, it applies prospectively and there are no factual allegations in the Complaint after that date of any conduct by the Multnomah County Defendants that would invoke the protections of the ADA or the Rehabilitation Act;

  - Even assuming the Multnomah County Defendants should assume the presence of disabled persons in a large crowd during a protest, neither the ADA nor the Rehabilitation Act apply because Plaintiffs Philip Wolfe, Katalina Durden or Juniper Simonis were never subject to any law enforcement action by the Multnomah County Defendants that would require an accommodation;

  - Even assuming the Multnomah County Defendants should assume the presence of disabled persons in a large crowd during a protest, neither the ADA nor the Rehabilitation Act apply in this case with regard to the single incident involving Plaintiff Melissa Lewis because the minimal use of force was reasonable, there were no injuries and there was no opportunity to provide an accommodation for her disability;

  - The ADA does not apply to the clearing of persons engaged in protest after a lawful order to disperse where that person is not arrested or investigated for criminal conduct; and

  - *Sheehan v. City & Cty. of San Francisco,* 743 F.3d 1211, 1232 (9th Cir. 2014) (Fourth Amendment reasonableness informs reasonableness under the ADA)*, rev'd in part, cert. dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan,* 575 U.S. 600, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015) was wrongly decided, the ADA does not apply.

- Plaintiffs' claims against the Multnomah County Defendants under the First Amendment are not likely to succeed on the merits because:

Page 4 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
       RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

- Plaintiffs Philip Wolfe, Katalina Durden, and Juniper Simonis fail to offer *any* evidence of conduct on behalf of the Multnomah County Defendants chilled or deterred their right to free speech, *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999);

- Plaintiff Melissa Lewis fails to state a claim because:

   - A single allegation by a deputy shoving and poking her with a baton is not sufficient to demonstrate conduct that chilled or deterred her right to free speech, *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999);

   - Plaintiff Melissa Lewis has continued to participate in protests subsequent to the single incident that occurred on August 9, 2020; and

   - There is no evidence that the conduct of the deputy on August 9, 2020 was in retaliation for any statements or conduct that is otherwise protected under the First Amendment, *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir. 1999).

- Plaintiffs claim under the Fourth Amendment is not likely to succeed because:

   - Plaintiff Philip Wolfe, Katalina Durden and Juniper Simonis fail to offer *any* evidence of conduct on behalf of the Multnomah County Defendants that any force was used against them that would support a claim under the Fourth Amendment;

   - The mere fact that the Multnomah County Defendants may have been present assisting in crowd control is not enough to impose liability under the Fourth Amendment, *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011) ("Court is unable to impose joint liability on "mere bystanders"), there must be evidence of integral participation in the incident that led to Plaintiffs' harm. *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004);

   - Plaintiff Melissa Lewis fails to offer any evidence of conduct on behalf of the Multnomah County Defendants that anything other than *de minimis* force to remove her from a sidewalk to maintain

Page 5 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

public safety and allow access to the building for employees, *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."), *Barney v. City of Eugene*, 20 F. App'x 683, 685 (9th Cir. 2001) (exposure to tear gas was constitutional in response to violent protest); and *Hicks v. City of Portland*, No. CV 04-825-AS, 2006 WL 3311552, at *1 (D. Or. Nov. 8, 2006) (minor injuries in arresting protester during anti-war protest after declaration of unlawful assembly).

- Plaintiffs' claims under the Fourteenth Amendment are misplaced because:

  - Any individualized use of force claim is governed by the Fourth and not Fourteenth Amendment, *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867–68, 104 L. Ed. 2d 443 (1989); and

  - There are no allegations of egregious conduct engaged with the purpose to harm that would otherwise support a substantive due process claim under the Fourteenth Amendment, *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (use of deadly force during investigatory vehicle stop).

- As to the remaining complimentary *Monell* claims:

  - There can be no *Monell* claim in the absence of an underlying constitutional violation; and

  - There is no evidence of a pattern or practice to support a *Monell* claim given the single isolated incident involving a *de minimus* use of force.

Each response is developed more fully below.

## C.    INADMISSIBLE HEARSAY

Plaintiffs offer the following information that, pursuant to FRE 403 and 404, is

inadmissible hearsay:

- Kitty Cone, Short History of the 504 Sit In, https://dredf.org/504-sit-in-20thanniversary/short-history-of-the-504-sit-in/

Page 6 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

- Mike Ervin, An Oral History of the Capitol Crawl, https://www.newmobility.com/2020/07/the-capitol-crawl/ (last visited Feb. 3, 2021)

- Jonathan Levinson, Portland area officers will remain federal deputies through end of year, OPB, September 29, 2020 (last accessed January 27, 2021) available at: https://www.opb.org/article/2020/09/29/portland-area-officers-will-remain-federal-deputiesthrough-end-of-year/

- Maxine Berstein, Oregon State Police, Multnomah County sheriff to lead police response in Portland during election, with National Guard on standby, Oregonian, November 2, 2020 (last accessed January 27, 2021) available at: https://www.oregonlive.com/portland/2020/11/state-police-multnomah-county-sheriffs-office-to-command-police-response-in-portland-during-election-with-national-guard-on-standby.html

- Andrew Buncombe, Disabled protester in wheelchair accuses Portland police of trying to 'break his arms' while arresting him, The Independent, September 4, 2020, https://www.independent.co.uk/news/world/americas/us-politics/portland-protests-blmwheelchair-arrest-disabled-wheeler-trump-dustin-brandon-latest-a9704341.html.

Plaintiffs offer this to demonstrate a long history of protest, that Governor Kate Brown authorized the Multnomah County Defendants to take control of the protests and to offer evidence of misconduct relating to the Portland Police Bureau. All but three are articles based on classic hearsay information gathered by reporters. The remaining article is from a person who is unfortunately no longer with us. Notwithstanding the integrity of the persons involved or the political or moral value of the statements, none of it is admissible and should not be considered in deciding the issues presented in Plaintiffs' Motion.

### D.  MATERIAL FACTS

#### 1.  Mission of the Multnomah County Sheriff's Office During the Protests

After the attacks against the Multnomah County Detention Center ("MCDC"), Sheriff

Michael Reese directed the MCSO Rapid Response Team ("RRT") to focus on securing this

Page 7 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

facility, protecting the employees who work there, and assuring the inmates and pretrial detainees that reside in the jail were safe. (Declaration of Michael Reese, ¶2). This meant preventing attacks from protestors, responding to acts of violence, protecting against unlawful entry, putting out fires and otherwise making sure the crowd did not take control of the Justice Center. (Declaration of Reese from *Don't Shoot Portland v. City of Portland*, Exhibits 1 and 2).

The protests over the summer took place primarily on the streets and parks in the area surrounding the MCDC. (Reese Declaration, ¶4). As the owner of these areas, the City of Portland and the Portland Police Bureau ("PPB") were responsible for providing any necessary law enforcement services for purposes of controlling the crowd. (Reese Declaration, ¶4). This, in law enforcement parlance, means PPB was incident command and dictated law enforcement actions in these areas including any orders to disperse the crowd and any associated crowd control tactics necessary to assure compliance. The fact that the City of Portland took the lead in responding to protests is a matter of record in other cases. *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 822 (9th Cir. 2020) (Federal and state government together with the City agreed the City would take the lead in responding to the protests). The same is true with regard to protests that took place at other locations within the City of Portland including federal buildings - the applicable owner of that facility would be the incident command and provide any necessary law enforcement response. (Reese Declaration, ¶ 5).

## 2.    Mutual Assistance

The MCSO coordinates with other law enforcement agencies to assist in any response consistent to assure public safety. (Declaration of Reese, ¶9; Exhibit 351). In major events the existing MASTER INTERLOCAL MUTUAL LAW ENFORCEMENT ASSISTANCE AGREEMENT authorizes the City of Portland to request assistance. (Reese Declaration, ¶9;

Page 8 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
            RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Exhibit 351). There are no other AGREEMENTS in place between the federal and state

government relating to mutual assistance.

Pursuant to this Agreement a single request was received by the Chief of Police for the

City of Portland requesting support for a protest on September 26, 2020. (Reese Declaration, ¶9).

Sheriff Michael Reese declined the request. (Reese Declaration, ¶9; Exhibit 352). No other

requests were made during the time period that is the subject of this Complaint.

Notwithstanding MCSO's RRT was deployed to other locations to help address imminent

life and safety issues as they arose. (Reese Declaration, ¶10). In those cases where there is a

coordinated response the MCSO deputies continue to take such actions as are necessary under

the circumstances consistent with the applicable policies and training of the MCSO and continue

to be subject to the direct supervision and control of the MCSO as needed. At no time during the

protests did the Sheriff for Multnomah County assume direction and control over the employees

of another law enforcement agency for those dates alleging harm towards the Plaintiffs in this

case. On specific dates, Sheriff Michael Reese did act as incident command over other agencies

when asked to do so by Governor Kate Brown as set forth below. In other words the dates at

issue in this case do not overlap with the dates of joint command authorized by the Governor

except September 26, 2020, a date in which the Multnomah County Defendants were not

identified as a participant in the conduct leading to Plaintiffs' harm.

### 3.    Joint Command Authorized by the State

Oregon Governor Kate Brown created a joint command on the following dates only:

- Executive Order 20-54 establishing a unified incident command for
  September 26 through 28, 2020 (Reese Declaration, ¶6, Exhibit 345);

- Executive Order 20-55 establishing termination the unified incident
  command on September 27 2020 (Reese Declaration, ¶6, Exhibit 346);

Page 9 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
       RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

- Executive Order 20-61 establishing a unified incident command for November 2 through 4, 2020 (Reese Declaration, ¶6, Exhibit 347);

- Executive Order 20-62 extending the unified incident command to November 6, 2020 (Reese Declaration, ¶6, Exhibit 348);

- Executive Order 20-63 extending the unified incident command to November 8, 2020 (Reese Declaration, ¶6, Exhibit 349); and

- Executive Order 20-64 terminating the unified incident command on November 8, 2020 (Reese Declaration, ¶6, Exhibit 350).

During these specific times Sheriff Michael Reese was designated, along with Oregon State Police Superintendent Terri Davie and Travis Hampton, as incident command and directed an overall response to assure the safety of the public in anticipation of civil unrest. (Reese Declaration, ¶ 7). Notwithstanding this role as incident commander, all deputies, officers, and agents continued to respond to circumstances based on their own policies and training and were subject to the direct supervision and control of their respective agencies. (Reese Declaration, ¶8).

### 4.    Specific Allegations of Improper Use of Crowd Control Measures

The only specific allegation relating to MCSO deputies is as follows:

"93. On or about August 9, 2020, Melissa attended a protest at the Justice Center. Multnomah County Sheriffs' deputies forcibly removed her from the area, along with other press and protesters, so officers would have a clear path to the parking lot. The deputies provided no warning before they began screaming at the group to move, striking them, and pushing them hard with batons.

94. Melissa complied with the deputies' directions, and she was on the sidewalk, where a temporary restraining order said she had a right to be. Nonetheless, the deputies pulled Melissa by her backpack, shoved her shoulders, and struck her ribs with a baton for not moving quickly enough. But Melissa feared that she might twist her ankle or worse if she moved any faster. When Melissa told the deputies she was complying, they told her to turn around and stop filming. At no time did the deputies communicate to Melissa, other members of the press, or the protesters where they

Page 10 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

should be; instead, the deputies pushed, pulled, and jabbed them
with batons."

(Complaint, ¶¶93-94). Plaintiffs have not produced the "temporary restraining order" granting

her the right to be on the sidewalk. The Multnomah County Defendants strongly doubt that such

an order exists. Plaintiff alleged no injuries and offered no video documenting the conduct at

issue.

Defendants obtained a video of Plaintiff Melissa Lewis being cleared from the sidewalk

on August 16, 2020. (Declaration of Kenneth Shipley, Jr., ¶6). In that video the Plaintiff is

cleared from the sidewalk near the Justice Center to allow employees to safely enter the building

only after a verbal command to disperse. (Shipley Declaration, ¶¶4-6). The force used was

reasonable and consistent with training on crowd control. (Shipley Declaration, ¶¶6-9). Plaintiff

Melissa Lewis never stated she was disabled, does not have a disability that is obvious, and did

not make any statements that she was injured or in need of medical assistance. (Shipley

Declaration, ¶9).

### 5.    Role of RRT on dates identified in the Complaint

The policies of the Multnomah County Sheriff's Office require individual officers to

report any use of physical force. (Declaration of Sergeant Tim Lichatowich, ¶3). As the team

leader for Multnomah County RRT Sergeant Lichatowich is familiar with and personally wrote

the After Action Reports for the RRT. (Lichatowich Declaration, ¶8). In addition to the AAR and

use of force reports (referred to as General Control Event Reports) the Multnomah County

Sheriff's Office is developing a protocol for Incident Command System reporting. (Lichatowich

Declaration, ¶7). Consistent with that system MCSO prepared Incident Action Plans during the

Page 11 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

course of the protest to, among others, identify mission goals, operational priorities, situational awareness and work assignments. (Lichatowich Declaration, ¶7).

Based on Sergeant Lichatowich's experience on the scene, his role as leader of the RRT and review of the AAR and use of force reports as well as the Individual Action Plans, RRT was not a participant in the events that caused Plaintiffs' injury on the dates alleged in the Complaint. (Lichatowich Declaration, ¶¶6-8). Most if not all of the allegations involve a response by other law enforcement agencies that did not involve the RRT. (Lichatowich Declaration, ¶¶6-8).

### 6.    Decrease in Protests and Deployment of the RRT

The Multnomah County Rapid Response Team ("RRT") is required to respond to situations of civil disobedience that require the deployment of crowd control measures such as distractionary control devices, CS gas, and pepper balls. (*See Docket Number 98, Don't Shoot PDX,* Declaration of Carey Kaer, ¶6). During the initial protests following the attack on the MCDC on May 29, 2020, the RRT was deployed on a daily basis. (Lichatowich Declaration, ¶2). The RRTs mission was primarily to protect and secure the MCDC. (Lichatowich Declaration, ¶2). The RRT typically took up positions in the portico and lobby of the Multnomah County Detention Center. (Lichatowich Declaration, ¶2). During this time period there were significant threats from the crowds including throwing projectiles, fireworks, lasers, and use of an improvised explosive device or IED.  (*See Docket Number 98, Don't Shoot PDX,* Declaration of Carey Kaer, ¶¶13-15 from *Don't Shoot Portland v. Portland*). Despite this ongoing violence the RRT stopped using tear gas on June 9, 2020 to conform to orders issued against other law enforcement agencies. (*See Docket Number 98, Don't Shoot PDX,* Declaration of Carey Kaer, ¶17). Since that time there has been a significant decrease in the protests and consequently the need for deployment of the (Lichatowich Declaration, ¶10). The fencing around the Justice

Page 12 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
        RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Center was removed. (Reese Declaration, ¶12). There is no existing plan to deploy the RRT

based on an anticipated protest at this time. (Lichatowich Declaration, ¶10).

###    E.    RESPONSE TO PRELIMINARY INJUNCTION

####        1.    Standard of Review

A preliminary injunction - "an extraordinary remedy that may only be awarded on a clear

showing that plaintiff is entitled to the relief sought." *Winter v. Natural Resources Defense*

*Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). The standard for a

temporary restraining order ("TRO") is "essentially identical" to the standard for a preliminary

injunction. *Chandler v. Williams*, No. CV 08-962-ST, 2010 WL 3394675, at *1 (D. Or. Aug. 26,

2010) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th

Cir. 2001)); see also *Daritech, Inc. v. Ward*, No. CV-11-570-BR, 2011 WL 2150137, at * 1 (D.

Or. May 26, 2011) (applying preliminary injunction standard to motion for TRO). "A plaintiff

seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he

is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns*

*Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Defense*

*Council, Inc.*, 555 U.S. 7, 21, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)).  This includes

considerations as to whether there are "serious questions" on the merits. *M.R. v. Dreyfus*, 697

F.3d 706, 725 (9th Cir. 2012).

Each plaintiff seeking the remedy of injunctive relief must have standing to seek that

particular form of relief. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*. (TOC), Inc., 528 U.S.

167, 185, 120 S. Ct. 693, 706, 145 L. Ed. 2d 610 (2000), citing *City of Los Angeles v. Lyons*, 461

U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Even in the early injunctive stage of the case,

Page 13 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
            RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

past exposure to allegedly unconstitutional conduct does not, without more, demonstrate a present case or controversy for a plaintiff seeking injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)).

The standard of review articulated by Plaintiffs and the Multnomah County Defendants is not in dispute.

### 2.    Likelihood of Success on the Merits

#### a.    ADA and Rehabilitation Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To establish a claim under the ADA, a plaintiff must show that he or she: (1) "is an individual with a disability"; (2) "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities"; (3) "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity"; and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his or] her disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir.2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002) (per curiam)) (quotation marks omitted).

In this case Plaintiffs are unlikely to succeed on the merits because: (1) there was no notice of Plaintiffs' disabilities provided to the Multnomah County Defendants, (2) three of the four Plaintiffs, Philip Wolfe, Kataline Durden and Juniper Simonis, fail to allege any facts to support a claim as to the Multnomah County Defendants, (3) there is no pattern and practice of

Page 14 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

violating the ADA, (4) there is no evidence of a potential future harm under the ADA, and (5) the ADA only applies to incidents where there is a reasonable opportunity to accommodate a disability under the circumstances which did not exist in the context of the single incident of force alleged by Plaintiff Melissa Lewis where she never disclosed her disability.

**i.        No Notice of Disability**

As discussed above the requirements to provide an accommodation under the ADA and the Rehabilitation Act are triggered by notice. That notice must, particularly in the context of a rapidly evolving law enforcement encounter, be sufficient to allow the officer the opportunity to provide a meaningful accommodation in the moment. Both *Updike* and *Sheehan* are clear on this point. Here there was no meaningful notice at the time of the incident and as such the ADA does not apply. Even assuming the letter provided by Disability Rights of Oregon on September 4, 2020 is enough, it applies prospectively and there are no factual allegations in the Complaint of *any* conduct by the Multnomah County Defendants that caused Plaintiffs any harm after that date.

As to the isolated incident involving Plaintiff Melissa Lewis, there is no evidence she ever stated that she was disabled or what her disability was at the time of the incident. Plaintiff Melissa Lewis has a photosensitivity and connective tissue disorder.  (Complaint, ¶12). There is nothing about this disability that is obvious. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) ("where the need for accommodation is obvious * * * the public entity is on notice that an accommodation is required"). There was no way to know Plaintiff Melissa Lewis was disabled.

Page 15 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ii.        **Three of Four Plaintiffs Have No Claim**

As to the Multnomah County Defendants the lack of any claim relating to Plaintiffs

Philip Wolfe, Katalina Durden and Juniper Simonis also goes to the merits. There is no evidence

of a pattern and practice of violations under the ADA.

iii.        **Reasonableness of Force**

In *Sheehan v. City & Cty. of San Francisco,* 743 F.3d 1211, 1232 (9th Cir. 2014)*, rev'd in*

*part, cert. dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan,* 575 U.S.

600, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015) the Ninth Circuit indicated that reasonableness

under the Fourth Amendment governs reasonableness under the ADA. Please see discussion

below under Fourth Amendment as it relates to reasonableness.

iv.        **The ADA does not apply**

Multnomah County Defendants take the position that the Ninth Circuit decision in

*Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014) (Fourth

Amendment reasonableness informs reasonableness under the ADA), *rev'd in part, cert.*

*dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S.

Ct. 1765, 191 L. Ed. 2d 856 (2015) does not apply to this case and that it was wrongly decided

and had the Supreme Court addressed the issue of whether the ADA applies, the result would

have come out differently. Examples from other circuits find otherwise.

There are "at least two types of Title II claims applicable to arrests: (1) wrongful arrest,

where police wrongly arrest someone with a disability because they misperceive the effects of

that disability as criminal activity; and (2) reasonable accommodation, where, although police

properly investigate and arrest a person with a disability for a crime unrelated to that disability,

they fail to reasonably accommodate the person's disability in the course of investigation or

Page 16 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
          RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

arrest, causing the person to suffer greater injury or indignity in that process than other

arrestees." *Sheehan* at 1232 (2015). Neither applies to the case at hand as it relates to the conduct

at issue against the Multnomah County Defendants. Because the Multnomah County Defendants

were neither arresting nor investigating Plaintiffs there was no program at issue that would

otherwise fall within the scope of the ADA.

Even assuming it does, the Multnomah County Defendants take the position that the

Ninth Circuit decision was wrongly decided and that the Supreme Court would have reached a

different result based on the reasoning in other circuits. *Hainze v. Richards*, 207 F.3d 795, 800-

02 (5th Cir. 2000) ("Title II does not apply to an officer's on-the-street responses to reported

disturbances or other similar incidents, whether or not those calls involve subjects with mental

disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human

life."); accord *Waller v. City of Danville*, 556 F.3d 171, 175-76 (4th Cir. 2009) (rejecting claim

that ADA constrained officers' tactical discretion during standoff with mentally ill person);

*Thompson v. Williamson County*, 219 F.3d 555 (6th Cir. 2000); *Bates v. Chesterfield County*,

216 F.3d 367, 372 (4th Cir. 2000); *Gohier v. Enright*, 186 F.3d 1216, 1222 (10th Cir. 1999);

*Buchanan v. Maine*, 417 F.Supp.2d 45, 73 (D. Me. 2006) (collecting cases).

We ask this Court to consider the reasoning in other circuits and to adopt a holding

despite *Sheehan*.

### b.    First Amendment

The First Amendment provides that all citizens have a right to hold and express their

personal political beliefs. *Cohen v. California*, 403 U.S. 15, 23–24, 91 S.Ct. 1780, 29 L.Ed.2d

284 (1971). Organized political protest is a form of "classically political speech." *Boos v. Barry*,

485 U.S. 312, 318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). "Activities such as demonstrations,

Page 17 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
              RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

protest marches, and picketing are clearly protected by the First Amendment." *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996). However, "[i]n order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (alterations in the original) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)).

The lens of the First Amendment does not put Plaintiffs' claims in any better light. There simply is no evidence in this case to support a claim against the Multnomah County Defendants as it relates to Plaintiffs Philip Wolfe, Katalina Durden, and Juniper Simonis. The Complaint does not include a single instance of conduct regarding the Multnomah County Defendants engaging in force or conduct of any kind that would chill or deter their participation in the protests as to those Plaintiffs.

The remaining Plaintiff, Melissa Lewis, alleges a single instance of a MCSO deputy clearing the sidewalk by pushing her and striking her with a baton but no allegations of any injury. This isolated instance is not severe or frequent enough to support a claim under the First Amendment. It stands alone in a sea of allegations against other agencies that should not be imputed to the Multnomah County Defendants.

*Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020) stands in contrast. In that case there were specific instances of force used against members of the media who were either isolated from the crowd or documenting specific instances of misconduct when they were confronted by law enforcement. *Id*. at 827-828 (9th Cir. 2020). There is not a

Page 18 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

single example in this case of the Multnomah County Defendants engaging in this type of conduct.

To the extent Plaintiffs somehow pivot this claim into an allegation of retaliation they fare no better. A retaliation claim must show the officer was driven by "retaliatory animus" and that animus was the 'but-for' cause of the officer's actions. *Blair v. Bethel School District*, 608 F.3d 540, 543 (9th Cir. 2010), *Nieves,* 139 S. Ct at 1722, citing *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct 1695, 164 L.Ed.2d 441 (2006). The connection between alleged retaliatory animus and injury is weakened substantially - or severed entirely - in the face of a wholly legitimate reason for an officer's conduct. *Reichle v. Howards*, 566 U.S. 658, 668, 132 SCt 2088 (2012). Unsupported speculation as to a defendant's potential mental state is insufficient. *Karam v. City of Burbank*, 352 F3d 1188, 1194 (9th Cir. 2003). Here the goal of clearing the sidewalk in front of a building to allow access was a legitimate government interest. Plaintiffs were allowed to continue protest activity in another location. There is no evidence of animus by MCSO deputies directed at the protest itself or any attempts to silence their First Amendment rights.

### c.    Fourth Amendment

A Fourth Amendment claim is measured based on the objective reasonableness test articulated in *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867–68, 104 L. Ed. 2d 443 (1989). This includes consideration of the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham* at 396 (1989). Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, qualifies for protection under the Fourth Amendment. *Id.* at 396 (1989). In those cases where the force used is *de minimis* and there is no

Page 19 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

injury the Fourth Amendment does not apply. *Wood v. City of Garden Grove*, 395 F. App'x 467, 469 (9th Cir. 2010) (being struck with a booking camera that resulted in no injury was not an excessive force claim);  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (allegations of injury as a result of being handcuffed without any medical records is not enough to support a claim of excessive force);  and *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001) (finding no constitutional violation where an officer pushed the plaintiff to the ground to handcuff her and fractured her finger in the process).

Here, as with the other claims, there is no conduct at issue with regard to Plaintiff Philip Wolfe, Katalina Durden or Juniper Simonis and no basis for injunctive relief as to those Plaintiffs. There is no evidence that any Multnomah County Defendant was aware of the conduct at issue let alone took part in it. As such the Multnomah County Defendants are not an "integral participant" in the conduct that caused Plaintiffs' harm and are not liable under the Fourth Amendment. *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004).

The single Fourth Amendment claim from Plaintiff Melissa Lewis similarly falls short - a shove and a prod with a baton to clear a sidewalk to allow an employee to safely enter the building is not an adequate basis for a claim under the Fourth Amendment and certainly does raise serious questions about the merits of Plaintiff's claim.

In fact a video taken by Plaintiff Melissa Lewis shows the amount of force used to clear the sidewalk was reasonable. (Shipley Declaration, ¶¶6-10). Although it is taken on August 16, 2020 it appears to be the same as the incident that is alleged in the Complaint. The video shows:

- MCSO deputies assisted the PPB in clearing the entrance to the Justice Center;

- Law enforcement moved deliberately and at a reasonable pace to move the protesters;

Page 20 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
        RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

- Plaintiff Melissa Lewis moved slowly while walking backwards and filming law enforcement;

- MCSO deputies held their batons parallel to the protesters to form a uniform line;

- Plaintiff Melissa Lewis never made any statements that she was disabled; and

- Plaintiff Melissa Lewis never made any statements that she was injured.

(Shipley Declaration, ¶¶6-10). The deputies used verbal commands during the incident and followed their training. At no point did a deputy every swing and strike Plaintiff. Plaintiff never fell to the ground. This is not sufficient to support a claim under the Fourth Amendment.

As stated by Judge Immergut in *Wise v. City of Portland*, 483 F. Supp. 3d 956, 968 (D. Or. 2020):

> "Under Oregon law, Portland police have authority to disperse unlawful or riotous assemblies and arrest those who do not immediately comply. Or. Rev. Stat. § 131.675. Portland police are entitled to use some level of reasonable force under the circumstances to effectuate the dispersal. *Barney v. City of Eugene*, 20 F. App'x 683, 685 (9th Cir. 2001)."

The undisputed video evidence shows the deputies were reasonable.

This is not a case that falls within the scope of *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012). In that case an officer fired pepper balls indiscriminately into a crowd of protestors causing harm. In this case there is no evidence that the Multnomah County Defendants engaged in that type of conduct. It is inconsistent with how the deputies are trained. Even assuming Plaintiffs had asked for an injunction to comply with the holding in *Nelson* there would be no basis for it since the Multnomah County Defendants' conduct complies with it.

In contrast Judge Mosman held in *Hicks v. City of Portland*, No. CV 04-825-AS, 2006 WL 3311552, at *1 (D. Or. Nov. 8, 2006) that Plaintiff's arrest during an anti-war protest in

Page 21 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Portland, Oregon, in August 2003 was lawful. In that case the Portland Police Bureau issued

warnings to clear the street and that failure to do so would result in arrest. *Id*. at 1 (2006).

Plaintiff entered the street and was arrested. During her arrest she was grabbed by police, fell to

the ground, was pulled up and then placed in a van. *Id.* at 3 (2006). Plaintiff received an injury to

her shoulder, a bruise over her left eye, and lost her sandals during the arrest. *Id.* In granting

summary judgment the court balanced the intrusion on Plaintiff's right to be free from seizure

with the governmental interests in controlling the protest. *Id.* at 4 (2006).

In *Gomez v. City of Whittier*, 211 F. App'x 573 (9th Cir. 2006) the Ninth Circuit held that

it was not clearly established that police officers' actions in making arrests after arrestees

vociferously refused to comply with officers' instructions to clear sidewalk at crowded outdoor

festival violated arrestees' Fourth Amendment rights, and thus officers were entitled to qualified

immunity from liability on arrestees' § 1983 false arrest claims. This case is based on similar

facts and persuasive.

### d.    Fourteenth Amendment

The Framers considered the matter of pretrial deprivations of liberty and drafted the

Fourth Amendment to address it. *Albright v. Oliver,* 510 U.S. 266, 274, 114 S. Ct. 807, 813, 127

L. Ed. 2d 114 (1994). Because the Fourth Amendment provides an explicit textual source of

constitutional protection against this sort of physically intrusive governmental conduct, that

Amendment, not the more generalized notion of 'substantive due process' must be the guide for

analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1870, 104 L.

Ed. 2d 443 (1989).

Although in some cases conduct that "shocks the conscience" may be brought under the

Fourteenth Amendment Plaintiff must show actual deliberation by the officer to do harm that is

Page 22 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

inconsistent with a legitimate law enforcement objective. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). This case simply does not offer evidence of egregious conduct intended to purposefully cause harm.

The Fifth Amendment applies to actions of the federal government - not those of state or local governments no response is required under that particular claim. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).

### e.    Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)).

To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). For the purposes of equal protection analysis, the disabled do not constitute a suspect class. *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996). Consequently Plaintiffs' claim under the Equal Protection Clause of the Fourteenth Amendment must fail.

### f.    Pattern and practice claim under Monell

To impose municipal liability under §1983 for a violation of constitutional rights plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived;

Page 23 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

(2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and, (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989)).

*Monell* claims thus require a plaintiff to show an underlying constitutional violation. *Lockett v. Cty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). Here there is no such violation and as such no valid claim under *Monell*. Even assuming a single violation is at issue with regard to Plaintiff Melissa Lewis there is no evidence that any policy or practice of Multnomah County is the "moving force" behind that single instance of alleged misconduct.

### 4.      Likelihood of Irreparable Harm

As discussed above, there is no evidence in this case of future irreparable harm. The fencing around the Justice Center has been removed. There is no indication that the Justice Center is the continued focus of ongoing protests. No indication that the Governor intends to appoint Sheriff Michael Reese as joint command over the protests. In short this summer was a unique experience in the history of protests in both the United States and the City of Portland. It was sustained over a long period of time by a large number of protesters. Those unique conditions no longer exist and as such a preliminary injunction is not necessary. *Campbell v. City of Oakland*, No. C 11-05498 RS, 2011 WL 13376906, at *6 (N.D. Cal. Dec. 12, 2011) ("Here, plaintiffs' accusations arise from demonstrations that, they concede, were "unique" in size, unlike other Occupy events, and tainted by groups of violent protesters.").

This stands in contrast to *Index Newspapers LLC v. City of Portland*, 474 F. Supp. 3d 1113 (D. Or. 2020). In that case the evidence of future harm was based on the following:

Page 24 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
            RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

> "The combination of the Federal Defendants' repeated past conduct, Plaintiffs' stated intentions, and the Federal Defendants' stated intentions establish the "real and immediate threat of repeated injury" sufficient to create standing."

*Index Newspapers LLC v. City of Portland*, 474 F. Supp. 3d 1113, 1122 (D. Or. 2020).The Ninth

Circuit affirmed on appeal:

> "Because the district court's findings include so many instances in which plaintiffs were standing nowhere near protesters while photographing and observing the Federal Defendants' actions, they provide exceptionally strong evidentiary support for the district court's finding that some of the Federal Defendants were motivated to target journalists in retaliation for plaintiffs' exercise of their First Amendment rights."

*Index Newspapers LLC v. United States Marshals Serv*., 977 F.3d 817, 829 (9th Cir. 2020). No

such record exists as to the Multnomah County Defendants.

The decision in *Index Newspapers* was in the midst of the 100 day protest period. None

of that exists as we sit here today. We are not on the eve of a standoff. Any future harm is

entirely speculative.

### 3.    Balancing of the Equities

In exercising their sound discretion, courts of equity should pay particular regard for the

public consequences in employing the extraordinary remedy of injunction. *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

The nature of the relief requested in this case is vague and overly broad and would

otherwise interfere with the provision of law enforcement services to the community as a whole.

These limitations would significantly hamper law enforcement, prevent deputies from being able

to respond to exigent circumstances, and is contrary both to existing law and the policies and

training of the MCSO. (Reese Declaration, ¶4).  The inability to act may limit force against

Page 25 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
        RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

people with disabilities while at the same time exposing them to risks from others and would be

impossible to enforce. As to any assistance offered by the Multnomah County Defendants to help

clear demonstrators from an area, the training and force used was reasonable.

*Marcavage v. City of New York*, 689 F.3d 98, 105 (2d Cir. 2012) is instructive when

considering the public interest in this case. In that case protestors were demonstrating at the

Republican National Convention in Manhattan. *Marcavage* at 101 (2nd Cir. 2012). In

anticipation of the thousands of protestors the City of New York prohibited demonstrations in

certain areas including the sidewalk to allow for the public to continue to use the right of way for

transport. *Id*. Plaintiffs were repeatedly told to leave the area and were eventually arrested.

*Marcavage* at 101 (2nd Cir. 2012). The orders to regulate the location of the protest were upheld.

### 4.      Injunctive Relief is Overly Broad and Unnecessary

Generally speaking an injunction requiring compliance with the existing law is much

more amenable as a form of relief than crafting specific remedies that are not. In fact where there

is a pattern of noncompliance it is exactly what is required. That was essentially the basis for

Judge Hernandez's decision to issue a restraining order over the summer:

> "The Court therefore orders that PPB be restricted from using tear
> gas or its equivalent except as provided by its own rules generally.
> In addition, tear gas use shall be limited to situations in which the
> lives or safety of the public or the police are at risk. This includes
> the lives and safety of those housed at the Justice Center. Tear gas
> shall not be used to disperse crowds where there is no or little risk
> of injury."

Setting aside PPB's own policy, the relief granted was broad enough to allow for the use of tear

gas when the safety of the public or the police are at risk. This arguably encompasses Fourth

Amendment jurisprudence and did not otherwise compel a different result. As to the Multnomah

Page 26 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

County Defendants compliance with the law is unnecessary in the absence of any pattern of constitutional violations.

The requests in this case suffer in that they are not explicit with regard to any settled principles of law under the ADA or the constitution that would otherwise allow the parties to draw from existing precedent. They fail to offer any context on when and how the requests for relief will apply and are likely to result in ongoing disputes. In particular many of the requests completely overlook the importance of knowing the nature of the disability and how to accommodate it but instead try to force a general set of rules to fit all without any explanation of how that is supposed to work.

> **a.    Provide effective communications, such as ASL interpreters and visual messaging systems, when conveying orders or other directions to people who are deaf or hard of hearing at protests.**

As stated in *Wise v. City of Portland*, 483 F. Supp. 3d 956, 966 (D. Or. 2020):

> "The already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a "mandatory injunction." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (noting that the burden is "doubly demanding" for a mandatory injunction). To obtain a mandatory injunction, a plaintiff must "establish that the law and facts clearly favor her position, not simply that she is likely to succeed."

*Id*. (emphasis in original). As explained by the Ninth Circuit:

> "A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." A mandatory injunction orders a responsible party to take action. A mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored. In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."

Page 27 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs request for mandatory relief fails to meet this high standard with regard to the

Multnomah County Defendants.

Even if this Court were to find that there is a risk of "very serious damage", the request is

unmanageable. Each request for relief should be clear on what is required, when it is required

and how it will be implemented. This request fails on all counts:

- **WHAT IS BEING REQUESTED?**

  o   What qualifies as effective communications?

  o   What orders or other directions are subject to this request?

- **WHEN ARE EFFECTIVE COMMUNICATIONS REQUIRED?**

  o   Does this apply only when law enforcement agencies have knowledge that there are persons who are deaf or hard of hearing?

  o   Is this required only when feasible consistent with Fourth Amendment jurisprudence?

  o   What qualifies as a protest?

- **HOW WILL THIS BE IMPLEMENTED?**

  o   Are all law enforcement agencies required to hire ASL interpreters?

  o   Are all law enforcement agencies required to pay for a "visual messaging system"?

  o    Are they required to be available 24/7 in the event of a protest?

The costs, burdens and lack of any explanation of when and how this applies weighs against this

request.

/// /// ///

/// /// ///

/// /// //

Page 28 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
        RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

        **b.**      **Cease the use of "bull-rushes" and similar practices that do not provide people with disabilities adequate time or directions or provide adequate time and clear and consistent directions for individuals with disabilities to comply with lawful orders.**

Although less clear, this request is also arguably mandatory in that it requires "adequate time and directions" to persons with disabilities prior to engaging in a "bull-rush". Plaintiffs would no doubt require the same level equipment necessary to achieve "effective communication" consistent with the prior request. Again there is no basis for imposing this against the Multnomah County Defendants. Considering the what, when and how of this request, it is unmanageable:

- **WHAT IS BEING REQUESTED?**

    o      What is a "bull-rush"?

    o      What are "similar practices"?

    o      What are "adequate time and directions"?

    o      What are "clear and consistent" directions?

- **WHEN ARE EFFECTIVE COMMUNICATIONS REQUIRED?**

    o      Does this apply only when law enforcement agencies have knowledge that there are persons who are disabled?

    o      Is this required only when feasible consistent with Fourth Amendment jurisprudence?

    o      What qualifies as a protest?

- **HOW WILL THIS BE IMPLEMENTED?**

    o      Assuming this applies to a potentially broad variety of disabilities there is no way to fully comply without time for a meaningful accommodation that is tailored to the individual disability.

    o      As with the prior request this will necessarily require equipment or expertise that is not otherwise available.

Page 29 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
        RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

      o        Assuming each agency is required to invest in additional resources to implement this request, availability will necessarily be required on a 24/7 basis.

Like the prior request the implications of this request result in a mandatory obligation, fail to meet that higher burden and are unmanageable.

            **c.**      **Identify and inform protesters and others of accessible avenues of egress before dispersing a crowd or taking other actions that may place persons with disabilities in danger.**

This request suffers from the same concerns as addressed above.

            **d.**      **Cease using chemical munitions that negatively affect people with respiratory and inflammatory disabilities, and that negatively affect service animals, and remove remaining residue or chemical buildup from areas where such munitions have been used.**

This request prohibiting the use of chemical munitions will directly interfere with legitimate law enforcement practices that are otherwise consistent with the Fourth Amendment and the ADA. There is no basis for prohibiting lawful activity and Plaintiffs' request makes no effort to avoid that consequence. The mandatory request to remove chemical build-up is all but gratuitous and not directly related to any evidence of harm that is the subject of the Complaint.

            **e.**      **Cease using strobe lights.**

Multnomah County Defendants do not use strobe lights, there is no basis for this limitation, and the injunction would be both unnecessary and unlawful.

            **f.**      **Cease separating people with disabilities from their assistants, interpreters, sighted guides and/or service animals.**

There is no evidence that the Multnomah County Defendants engaged in this conduct and as such an injunction would be both unnecessary and unlawful.

Page 30 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## F.      CONCLUSION

In conclusion, Plaintiffs' allegations do not include any specific facts that support a claim against the Multnomah County Defendants. Most if not all of the claims are directed at other law enforcement agencies. Plaintiffs' theory that the Multnomah County Defendants are somehow liable for the acts of other officers or agents is not supported by the law. There is no relationship in this case that places those other officers or agents at the direction or control of the Multnomah County Defendants. There is no evidence that the Multnomah County Defendants were "integral participants" in the events that caused Plaintiffs' harm. As a result there is serious question relating to the merits of Plaintiffs' claims that warrant an injunction of any kind. Moreover there is no evidence of future harm that warrants the overlay broad request for injunctive relief as to the Multnomah County Defendants.

DATED this 15th day of March, 2021.

Respectfully submitted,

JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON

**/s/ Christopher A. Gilmore**
_____
Christopher A. Gilmore, OSB No. 980570
Senior Assistant County Attorney
   *Of Attorneys for Defendants Multnomah County*
   *and Sheriff Michael Reese*

Page 31 – DEFENDANT MULTNOMAH COUNTY AND SHERIFF MICHAEL REESE'S
          RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION