DANIEL SIMON, OSB #124544
Deputy City Attorney
dan.simon@portlandoregon.gov
LINDA LAW, OSB #943660
Chief Deputy City Attorney
linda.law@portlandoregon.gov
LINH T. VU, OSB #004164
Senior Deputy City Attorney
linh.vu@portlandoregon.gov
ELIZABETH C. WOODARD, OSB #075667
Deputy City Attorney
beth.woodard@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendants City of Portland, Ted Wheeler, and Chuck Lovell*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| PHILIP WOLFE, KATALINA DURDEN, MELISSA LEWIS, JUNIPER SIMONIS, individually, and DISABILITY RIGHTS OREGON, an Oregon nonprofit and advocacy corporation, <br><br>    PLAINTIFFS, <br><br>   v. <br><br>CITY OF PORTLAND, a municipal corporation; TED WHEELER, in his official capacity; CHUCK LOVELL, in his official capacity; MULTNOMAH COUNTY, a political subdivision of the State; MICHAEL REESE, in his official capacity; TERRI DAVIE, in her official capacity; CHAD WOLF, in his individual capacity; ALEJANDRO MAYORKAS, in his official capacity, DONALD WASHINGTON, in his individual and official capacity; and DOES 1-100, individual and supervisory officers of local, state, and federal government, <br><br>    DEFENDANTS. | **3:20-cv-01882-SI** <br><br><br> **CITY OF PORTLAND'S MOTION TO DISMISS** |

Page  i  – CITY OF PORTLAND'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.      MOTION..................................................................................................................1

II.     STANDARDS..........................................................................................................1

III.    EVIDENTIARY STANDARDS ............................................................................2

IV.     FACTUAL SUMMARY ..........................................................................................3

      A.    Protests in Portland Throughout 2020 ........................................................3

      B.    Existing Restrictions on PPB's Use of Force ..............................................4

      C.    PPB's Policies Concerning People With Disabilities ..................................5

V.      DISCUSSION ..........................................................................................................5

      A.    Plaintiffs Lack Standing to Obtain Equitable Relief Against City ..............5

            1.    Plaintiffs Must Demonstrate a Certainly Impending Injury ............6

            2.    Plaintiffs Have Failed to Demonstrate Standing For Injunctive Relief.......9

            3.    Because Plaintiffs Lack Standing For Injunctive Relief, They Also Cannot Obtain a Declaratory Judgment ...............................................10

      B.    Plaintiffs Failed to Plead a Violation of the ADA .................................... 11

            1.    PPB's Crowd Control Directives, Policies, and Practices Provide Effective Communication Consistent with Requirements of the ADA....................12

            2.    PPB's crowd control strategies should be reviewed under an "exigent circumstances" reasonableness analysis, or would constitute a fundamental alteration to PPB's programs, activities and services. ...............................13

      C.    Plaintiffs Have Failed to Plead a Violation of Their First Amendment Rights .....14

      D.    Plaintiffs Have Failed to Plead a Violation of Their Fourth and Fourteenth Amendment Rights ......................................................................................17

      E.    The Court Should Dismiss Defendant Mayor Ted Wheeler and Defendant Chuck Lovell From This Lawsuit. ..........................................................................19

VI.     CONCLUSION......................................................................................................20

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

# TABLE OF AUTHORITIES

Page(s)

Cases

*Arizona Christian Sch. Tuition Org. v. Winn,*
  563 U.S. 125 (2011) ............................................................................................... 1
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................. 1, 2, 19
*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 554 (2007) ............................................................................................ 1, 2
*Blair v. Shanahan,*
  38 F.3d 1514 (9th Cir. 1994) ............................................................................ 7
*Capp v. City of San Diego,*
  940 F.3d 1046 (9th Cir. 2019) ........................................................................ 17
*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ................................................................................ passim
*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ........................................................................... 6, 8, 9
*Colten v. Kentucky,*
  407 U.S. 104 (1972) ......................................................................................... 15
*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't,*
  533 F.3d 780 (9th Cir. 2008) .......................................................................... 19
*Davis v. Fed. Election Comm'n,*
  554 U.S. 724 (2008) ............................................................................................ 1
*Eggar v. City of Livingston,*
  40 F.3d 312 (9th Cir. 1994) .............................................................................. 8
*Felarca v. Birgeneau,*
  891 F.3d 809 (9th Cir. 2018) ..................................................................... 17, 18
*Gov't Employees Ins. Co. v. Dizol,*
  133 F.3d 1220 (9th Cir. 1998) (en banc ...................................................... 10
*Graham v. Connor,*
  490 U.S. 386 (1989) ................................................................................... 17, 18
*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ......................................................................................... 15
*Hicks v. City of Portland,*
  No. CV 04- 825-AS, 2006 WL 3311552 (D. Or. Nov. 8, 2006) ............................ 16
*Id.,* at 260,
  126 S.Ct. 1695 ................................................................................................... 16
*Jackson v. City of Bremerton,*
  268 F.3d 646 (9th Cir. 2001) .......................................................................... 18
*Kentucky v. Graham,*
  473 U.S. 159 (1985) ......................................................................................... 19
*Khoja v. Orexigen Therapeutics,*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

899 F.3d 988 ................................................................................................... 2
*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................................... 5, 6, 9
*Maya v. Centex Corp.,*
  658 F.3d 1060 (9th Cir. 2011) ....................................................................... 1
*Mendocino Envtl. Ctr.,*
  14 F.3d ................................................................................................... 14, 16
*Menotti v Seattle,*
  409 F.3d 1113 (9th Cir. 2005) ..................................................................... 15
*Monell v. Dep't of Soc. Servs. of City of New York,*
  436 U.S. 658 (1978) ..................................................................................... 19
*Moss v. U.S. Secret Serv.,*
  572 F.3d 962 (9th Cir. 2009) ....................................................................... 19
*Munns v. Kerry,*
  782 F.3d 402 (9th Cir. 2015) ......................................................................... 8
*Murphy v. Kenops,*
  99 F. Supp. 2d 1255 (D. Or. 1999) ............................................................... 8
*Nationwide Mut. Ins. Co. v. Liberatore,*
  408 F.3d 1158 (9th Cir. 2005) ..................................................................... 10
*Nelsen v. King Cty.,*
  895 F.2d 1248 (9th Cir. 1990) ....................................................................... 6
*Nieves v. Bartlett,*
  139 U.S. 1715 (2019) ................................................................................... 16
*O'Shea v. Littleton,*
  414 U.S. 488 (1974) ................................................................................... 6, 7
*Rizzo v. Goode,*
  423 U.S. 362 (1976) ................................................................................... 7, 8
*Rosenblum v. Does 1-10,*
  No. 3:20-CV-01161-MO, 2020 WL 4253209 (D. Or. July 24, 2020) ....... 7
*Sheehan v. City & Cty. of San Francisco,*
  743 F.3d 1211 (9th Cir. 2014) ..................................................................... 13
*Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.,*
  771 F.3d 632 (9th Cir. 2014) ................................................................. 10, 12
*Sloman v. Tadlock,*
  21 F.3d 1462 (9th Cir.1994) ................................................................... 14, 15
*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ......................................................................................... 6
*Thornhill Publishing Co., Inc. V. General Telephone & Electronics Corp.,*
  594 F.2d 730 (9th Cir. 1979) ................................................................. 3, 4, 5
*United States v. Washington,*
  759 F.2d 1353 (9th Cir. 1985) ..................................................................... 10
*Updike v. Clackamas County,*
  No. 3:15-cv-00723-SI, 2015 WL 7722410 (D. Or. Nov. 30, 2015) ......... 19
*Updike v. Multnomah Cty.,*
  870 F.3d 939 (9th Cir. 2017) ..................................................................... 6, 7
*Whitmore v. Arkansas,*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

495 U.S. 149 (1990) ..................................................................................................... 6

*Wilkinson v. Torres,*
   610 F.3d 546 (9th Cir. 2010) ................................................................................... 17

## Statutes

42 U.S.C. § 1983 ........................................................................................................ 1
42 U.S.C. § 12132 ...................................................................................................... 11
Article III of the U.S. Constitution ..................................................................... 1, 5, 9, 10

## Rules

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ............................................. 1
FRE 201 ..................................................................................................................... 2
Rule 12(b)(1) .......................................................................................................... 1, 2
Rule 12(b)(6) ............................................................................................................. 1

## Regulations

28 C.F.R. pt. 35, App. A (2009) ......................................................................... 12, 13
28 C.F.R. § 35.130(b)(7)(i) ....................................................................................... 11
28 C.F.R. § 35.160(a)(1) ........................................................................................... 12
28 C.F.R. § 35.160(b)(2) ........................................................................................... 13

## Other Authorities

10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2751 (4th ed.
   2020) ....................................................................................................................... 11

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7-1</u>

Counsel for defendant City of Portland certifies that counsel for defendants and counsel for plaintiffs have made good faith effort to resolve the issues in dispute and have been unable to do so.

## I.    MOTION

Defendant City of Portland ("the City") moves the Court to dismiss plaintiffs Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiffs include four individuals with disabilities and Disability Rights Oregon.  Plaintiffs bring ADA claims, First Amendment claims, and 42 U.S.C. § 1983 claims alleging excessive force and due process violations of the Fourth and Fourteenth Amendments.  Specifically, the City moves the Court for an Order:

- Dismissing Plaintiffs Complaint for lack of standing pursuant to Rule 12(b)(1); or
- Alternately, Dismissing Plaintiffs' Complaint failure to state a claim under Rule 12(b)(6).

## II.    STANDARDS

**Rule 12(b)(1)**

Pursuant to Article III of the U.S. Constitution, federal courts may only hear cases if the plaintiffs can establish, they have standing.  *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011).  "A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).  Otherwise, the court must dismiss the claims for lack of subject matter jurisdiction under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

**Rule 12(b)(6)**

Under Rule 12(b)(6), a motion to dismiss may be granted where the plaintiff has failed to allege facts that, when accepted as true, give rise to a plausible inference that the defendants violated the plaintiff's constitutional rights.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell*

Page  1  – CITY OF PORTLAND'S MOTION TO DISMISS

*Atlantic Corp. v. Twombly*, 550 U.S. 554, 556–57 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 679 (quoting *Twombly*, 550 U.S. at 555).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

### III.    EVIDENTIARY STANDARDS

FRE 201 allows the court to take judicial notice of a fact not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.[1] The court may take judicial notice of matters of public record without converting the motion to dismiss into a summary judgment motion.[2]  For the purposes of this motion, the City requests the court take judicial notice of the following matters of public record:

- All orders entered in *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ;
- All orders entered in *Index Newspapers et al v. City of Portland et al*, Case No. 3:20-cv-1035-SI;
- All orders entered in *Wise et al v. City of Portland et al*, Case No. 3:20-cv-01193-IM;
- Portland Police Bureau Directive No. 635.10 and Directive No. 1010.00;
- Portlandoregon.gov and hosted Bureau sites; and
- @PortlandPolice Twitter feed.

For the purposes of the Court's evaluation of the Rule 12(b)(1) Motions, the City additionally requests the court consider all briefing, supporting declarations, and exhibits

---
[1] FRE 201.
[2] FRE 201; see *Khoja v. Orexigen Therapeutics*, 899 F.3d 988. 994 (9th Cir. 2018).

Page  2  – CITY OF PORTLAND'S MOTION TO DISMISS

contained in the City's Response to Plaintiffs' Motion for Preliminary Injunction, filed concurrently with this Motion to Dismiss.

Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. *Thornhill Publishing Co., Inc. V. General Telephone & Electronics Corp.,* 594 F.2d 730,733 (9th Cir. 1979). No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist. *Id.*

## IV.    FACTUAL SUMMARY

A.    <u>Protests in Portland Throughout 2020</u>

Plaintiffs Complaint states, "[i]n the wake of the killings of George Floyd, Breonna Taylor, and many other Black, Indigenous, or people of color by law enforcement, protesters have assembled in Portland, Oregon nearly every day for several months to demand police accountability and an end to systemic racism and other forms of oppression that Black, Indigenous, and people of color face in our country.(Compl.¶ 2) Although many people protested peacefully, PPB and other law enforcement agencies have also dealt with a smaller group of protestors who started fires, damaged property, and injured officers, firefighters, and others throughout the City.[3] From May 28, 2020 through November 17, 2020, Portland Police Bureau ("PPB") dealt with peaceful protests turning into riots or unlawful assemblies on a near-nightly basis.[4] When a peaceful protest turns violent, PPB will declare that the gathering has become a riot or an unlawful assembly. PPB will then begin issuing the crowd orders to disperse and leave the streets through use of a Long-Range Acoustical Device ("LRAD") vehicle, also

---

[3] https://www.portlandoregon.gov/police/article/765145
[4] *Id.*

Page  3  – CITY OF PORTLAND'S MOTION TO DISMISS

referred to as the "sound truck," and simultaneous text/visual broadcast through its public Twitter account.[5]

B.    Existing Restrictions on PPB's Use of Force

PPB's use of CS gas is currently regulated by the following directives, orders, and legislation:  PPB Directive No. 1010.00, Use of Force[6]; Mayor Wheeler's June 6, 2020 directive[7]; and Chief Judge Hernandez's Order entered in *Don't Shoot Portland v. City of Portland.*[8]

Similarly, PPB Directive No. 635.10 and Directive No. 1010.00, Use of Force, Section 6.4.6, also set out rules for PPB's use of other forms of riot control agents, including impact munitions and aerosol restraints.[9]  Directive 1010.00, Section 6.4.1 sets out authorized and restricted uses of batons.[10]  Finally, Directive 1010.00 and its incorporation of the *Graham* standard, governs other uses of physical force or control, including physical pushing.[11]

On June 26, 2020, Chief Judge Hernandez, adopted the parties' stipulated additional TRO restricting PPB's use of less lethal munitions and aerosol restraints in connection with crowd control activities set forth in PPB's Use of Force Directive, No. 1010.00.[12]  Judge Hernandez has extended this TRO until further notice from the Court.[13]

On July 16, 2020, this Court entered a Stipulated Preliminary Injunction in the case of *Index Newspapers et al v. City of Portland et al*, Case No. 3:20-cv-1035-SI, enjoining the City and its agents and employees from "arresting, threatening to arrest, or using physical force

---

[5] https://twitter.com/PortlandPolice

[6] 1010.00 Use of Force | 1000 - Weapons / Ammunition / Equipment | The City of Portland, Oregon

[7] https://www.portland.gov/wheeler/news/2020/6/6/statement-mayor-wheeler-i-stand-solidarity-our-non-violent-demonstrators

[8] *See Don't Shoot Portland*, ECF No. 29.

[9] 0635.10 Crowd Management/Crowd Control | 0600 - Field Operations | The City of Portland, Oregon;

[10] 1010.00 Use of Force | 1000 - Weapons / Ammunition / Equipment | The City of Portland, Oregon.

[11] *Id*.

[12] *See Don't Shoot Portland*, ECF No. 43.

[13] *See Don't Shoot Portland*, ECF No. 133.

Page  4  – CITY OF PORTLAND'S MOTION TO DISMISS

directed against any person whom they know or reasonably should know is a Journalist or Legal

Observer...unless the Police have probable cause to believe that such individual has committed a

crime."[14]  This Order provides, "the Police shall not be liable for violating this Order if a

Journalist or Legal Observer is incidentally exposed to crowd-control devices after remaining in

the area where such devices were deployed after the issuance by the Police of an otherwise

lawful dispersal order."[15]  On September 23, 2020, this Court extended an amended version of

the preliminary injunction indefinitely.  The amended preliminary injunction added a statement

that "No Journalist or Legal Observer protected under this Order may impede, block, or

physically prevent the lawful activities of police."[16]

> C.    PPB's Policies Concerning People With Disabilities

PPB's public facing ADA information is found most readily at its website.[17]  The website

contains a page dedicated to Title II and provides methods to submit requests for accommodation

under the ADA.  The same page contains information specific to attending protests and details

about PPB crowd management policies and how information is communicated to the public

during protests.

## V.    DISCUSSION

> A.    Plaintiffs Lack Standing to Obtain Equitable Relief Against City

Plaintiffs fail to demonstrate the standing necessary for this Court to have jurisdiction

to consider such equitable relief.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

threshold requirement imposed by Article III of the U.S. Constitution by alleging an actual case

or controversy."  *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983).  One of the

"landmarks" that differentiates a constitutional case or controversy from more abstract disputes

"is the doctrine of standing."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The

---

[14] *Index Newspapers*, ECF No. 48.
[15] *Id.*
[16] *See Index Newspapers*, ECF No. 185.
[17] Police Bureau | The City of Portland, Oregon

Page  5  – CITY OF PORTLAND'S MOTION TO DISMISS

first requirement of standing is that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Id.* at 560 (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of" such that the injury is fairly traceable to the defendant and not the result of the independent action of some third party not before the court. *Id.* Third, it must be "likely," and not merely "speculative," that the injury will be redressed by a favorable decision from the court. *Id.* at 561.

        1.   <u>Plaintiffs Must Demonstrate a Certainly Impending Injury</u>

Where, as here, a party seeks prospective equitable relief, the injury in fact must be in the future; there must be "allegations of future injury [that are] particular and concrete." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 109 (1998). That "threatened injury must be *certainly impending*" and not merely "*possible*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Accordingly, the injury may not be based on a "speculative chain of possibilities." *Clapper*, 568 U.S. at 410.

While a plaintiff's allegations that he was injured in the past might support a remedy at Law, a plaintiff seeking prospective equitable relief must establish imminent future harm to himself. *Lyons,* 461 U.S. at 105; *see also Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990). Thus, even when he has suffered a specific past injury, a plaintiff must show a significant likelihood that it will be sustained again in the immediate future. *Updike v. Multnomah Cty.*, 870 F.3d 939, 947 (9th Cir. 2017) (denying injunctive relief to a plaintiff challenging the lack of American Sign Language interpreters in pretrial detainment and at arraignment, even though he had been booked at the same correctional facility five times before, because "standing for injunctive relief requires that a plaintiff show a 'real and immediate threat of repeated injury'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Moreover, a plaintiff seeking injunctive relief must show not just that the predicted *injury* will

Page  6  – CITY OF PORTLAND'S MOTION TO DISMISS

reoccur, but also that the plaintiff himself will suffer it. *See, e.g.*, *Updike*, 870 F.3d at 948 (holding that the plaintiff lacked standing for injunctive relief because his evidence was "insufficient to establish that any such wrongful behavior is likely to recur against him"); *Blair v. Shanahan*, 38 F.3d 1514, 1519 (9th Cir. 1994) (holding that a plaintiff seeking declaratory or injunctive relief must "establish a personal stake" in the relief sought); *Rosenblum v. Does 1-10*, No. 3:20-CV-01161-MO, 2020 WL 4253209, at 6 (D. Or. July 24, 2020).

The facts and reasoning of *Lyons* are instructive. *Lyons* was a civil rights action against the City of Los Angeles and several police officers who had allegedly stopped the plaintiff for a routine traffic violation and applied a chokehold without provocation. In addition to seeking damages, the plaintiff sought an injunction against future use of the chokehold unless deadly force was threatened. The Supreme Court held that plaintiff lacked standing to seek prospective relief because he could not show a real or immediate threat of future harm.

> That Lyons may have been illegally choked by the police . . . , while presumably affording Lyons standing to claim damages . . . does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Lyons*, 461 U.S. at 104. *See also O'Shea*, 414 U.S. at 495-96 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976). *Lyons* concluded that to demonstrate a real and immediate threat of injury, the plaintiff would have to show either a consistent practice, always followed by all officers, that violated his rights, or an official policy. *See Lyons*, 461 U.S. at 106 (requiring that he show "(1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, . . . or, (2) that the City ordered or authorized police officers to act in such manner"). Even an official policy that simply allowed for the challenged conduct is insufficient. *Id.*

Page  7  – CITY OF PORTLAND'S MOTION TO DISMISS

Similarly, a widespread practice that is not common to all law enforcement officers with whom a plaintiff may come in contact is also insufficient. *Rizzo*, 423 U.S. at 372 (holding that plaintiffs' allegations that police had engaged in widespread unconstitutional conduct aimed at minority citizens was based on speculative fears as to what an unknown minority of individual police officers might do in the future).

Courts in this Circuit have applied *Lyons* and *O'Shea* in similar contexts to hold that plaintiffs lack standing to pursue prospective injunctive relief where they could only speculate as to whether particular law enforcement practices would occur, even if they had previously been subjected to them. *See, e.g.*, *Eggar v. City of Livingston*, 40 F.3d 312, 317 (9th Cir. 1994) (plaintiff who had been repeatedly convicted without court-appointed counsel lacked standing because whether she "will commit future crimes in the City, be indigent, plead guilty, and be sentenced to jail is speculative"); *Murphy v. Kenops*, 99 F. Supp. 2d 1255, 1259–60 (D. Or. 1999) (plaintiffs lacked standing because it was highly speculative "that the Forest Service will exercise its discretion to issue future closure orders, that the closure orders will violate the First Amendment, that plaintiffs will violate those closure orders, and that plaintiffs will be arrested because of those closure orders").

Nor can plaintiffs create standing for injunctive relief by alleging that their own fear of future government action has "chilled" their willingness to engage in First Amendment activities. When a plaintiff contends that injunctive relief is supported by such an alleged "chilling effect," the analysis is unchanged from the *Lyons* inquiry—the supposed chilling effect will not provide standing for injunctive relief if it is "based on a plaintiff's fear of future injury that itself was too speculative to confer standing." *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015); *see also Clapper*, 568 U.S. at 416 (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). In other words, where a plaintiff's request for injunctive relief lacks any non-speculative basis for finding a likelihood of future harm, the plaintiff cannot

Page  8  – CITY OF PORTLAND'S MOTION TO DISMISS

circumvent Article III merely by saying that he or she is *afraid* of future harm. *See Clapper*, 568 U.S. at 416.

>    2.    Plaintiffs Have Failed to Demonstrate Standing For Injunctive Relief

Plaintiffs' allegations are insufficient to demonstrate a future injury that confers standing. They describe specific incidents in the past and do not describe any concrete, certainly impending injuries in the future. Although the Complaint contains allegations about past conduct, the majority of these incidents involving PPB occurred before injunction issued in *Don't Shoot* and *Index Newspapers*. While, as explained *infra*, these allegations do not establish even past constitutional violations, they certainly do not establish an impending injury in connection with *future* protests that Plaintiffs may attend, and at which Plaintiffs suggest they may, in theory, be subjected to dispersal actions by the City. These limited past incidents fail to demonstrate past conduct that suggests with any certainty that *if* Plaintiffs interact with PPB officers in the future, they will be predictably harmed, as is required to establish standing. *See Lyons*, 461 U.S. at 106.

In turn, Plaintiffs' speculations about potential future events are likewise insufficient to demonstrate a certainly impending injury. This itself undermines standing. *See Lujan*, 504 U.S. at 563-64 (holding that a plaintiff that "hope[s]" she will visit a location "without any description of concrete plans" does not demonstrate the "actual or imminent" injury that standing requires).

Plaintiffs' general statements of possible future harm fail to demonstrate that specific PPB practices will necessarily be used against Plaintiffs in their every interaction with PPB, as required. *See Lyons*, 461 U.S. at 106. Plaintiffs also cannot demonstrate that all alleged communications, directions, and uses of force are unlawful, meaning that Plaintiffs also have a problem tracing their fear to the challenged conduct. *Clapper*, 568 U.S. at 417-18. When Plaintiffs do allege that they fear a violation of their rights, it is in entirely conclusory terms. None of this demonstrates a concrete injury that is "certainly impending," *Clapper*, 568 U.S.

Page  9  – CITY OF PORTLAND'S MOTION TO DISMISS

at 409.

Finally, Plaintiffs cannot circumvent their lack of standing by simply alleging, that the City's policies harm all protesters with disabilities at a greater rate than protesters without disabilities. PPB has no policy or directive that permits it to engage in any specific unlawful conduct and particularly no policy targeting people with disabilities. *See Lyons*, 461 U.S. at 106.

3.    Because Plaintiffs Lack Standing For Injunctive Relief, They Also Cannot Obtain a Declaratory Judgment

Plaintiffs also cannot pursue a declaratory judgment. A request for a declaratory judgment does not present a standalone claim; a declaratory judgment is merely a remedy. *See Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (the declaratory judgment statute "does not create new substantive rights, but merely expands the remedies available in federal courts"). The Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction. *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005). For a plaintiff to claim an entitlement to declaratory relief, the plaintiff, "must first present an actual case or controversy within the meaning of Article III." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (en banc).

Here, as demonstrated above, Plaintiffs have not shown that a case or controversy exists with respect to their claims for prospective relief. Furthermore, declaratory relief is improper here because it "will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

As the Ninth Circuit has recognized, the utility of a declaratory judgment is fairly narrowly cabined; it is designed principally to allow a potential defendant "to file preemptive litigation to determine whether they have any legal obligations to their potential adversaries." *Shell Gulf of Mexico*, 771 F.3d at 635. This action has not been filed by a party that faces the "Damoclean threat of impending litigation which a harassing adversary might brandish." *Id. See also* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2751 (4th

Page 10 – CITY OF PORTLAND'S MOTION TO DISMISS

ed. 2020) (noting that declaratory judgement "is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued").

Instead, Plaintiffs claim that they have been harmed by PPB in the past and want an injunction against future harm of the same conduct. That does not require an anticipatory settling of the legal relations between the parties, nor would such a declaration at the conclusion of this case reduce any uncertainty between the parties, especially because the underlying legal claims will necessarily be resolved at the same time as Plaintiffs' other claims for relief.

In short, Plaintiffs' request for declaratory relief is entirely duplicative of the relief they already seek, and they cannot show how declaratory relief will offer any appropriate benefits.

B.    Plaintiffs Failed to Plead a Violation of the ADA

The City requests Plaintiffs' First and Second claims for relief be dismissed pursuant to Rule 12(b)(6). Title II of the Americans With Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[1] 42 U.S.C. § 12132.

Discrimination includes a failure to reasonably accommodate a person's disability. As United States Department of Justice regulations state: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

1.    PPB's Crowd Control Directives, Policies, and Practices Provide Effective
        Communication Consistent with Requirements of the ADA

Hundreds of protests events have occurred throughout the City since May 28, 2020. These events vary widely in size, location, timing, and attendance. Further, the protests are

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

spontaneous, unscheduled, unpermitted, and unpredictable.  While many of these protests are

peaceful expressions of First Amendment rights, some devolve into civil disturbance or riot and

require PPB intervention to protect the health, life, and safety of protesters, neighbors, and

community members.

Consistent with Directive 635.10 Section 8, PPB issues both audible warnings through

the sound truck and visual warnings through Twitter in an effort to keep a protest lawful, and

issues these warnings well in advance of a finding that a protest has transitioned from civil

disobedience to a civil disturbance.  Specifically, warnings are designed to allow the crowd time

to comply with orders given from police members.  The Directive states that when tactically

feasible and time permits, members shall issue a minimum of two warnings at reasonable

intervals to notify the crowd of an impending order.

PPB's current policies and practices already provide the requested notice and information

allowing additional time to disperse and clear directions for egress.  It is important to note that

when a dispersal order is given under Directive No. 635.10, the behavior, and activities of those

who are in the protest have already devolved to an unlawful civil disturbance.

Implementing regulations for Title II provide that a public entity must "take appropriate

steps to ensure that communications" with disabled persons "are as effective as communications

with others."  28 C.F.R. § 35.160(a)(1).  The Appendix to the ADA regulations generally

requires deference to a person's personal choice of aid and service: *Id.* pt. 35, App. A (alteration

in original) (quoting 28 C.F.R. pt. 35, App. A (2009)).  However, deference is qualified; "the

type of auxiliary aid or service necessary to ensure effective communication will vary with the

situation."  *Id.*  Specifically, a public entity is not required "to take any action that it can

demonstrate would result in a fundamental alteration in the nature of a service, program, or

activity or in undue financial and administrative burdens." *Id.* § 35.164; *see also Id.* pt. 35, App.

A.

Although public entities are required to provide auxiliary aids with deference to requested

Page  12  – CITY OF PORTLAND'S MOTION TO DISMISS

type, this must be balanced with considerations such as the nature, length, and complexity of the communication involved, and the context in which the communication is taking place. 28 C.F.R. § 35.160(b)(2). PPB currently provides compliant communication through multiple audible warnings through use of the sound truck and provides alternate visual messaging through Twitter. Moreover, the types of auxiliary aids Plaintiffs requests cannot provide effective communication under Directive No. 635.10 in a protest situation and therefore are not reasonable accommodations.

> 2.    PPB's crowd control strategies should be reviewed under an "exigent circumstances" reasonableness analysis, or would constitute a fundamental alteration to PPB's programs, activities and services.

The analysis for protest situations where PPB is acting under Directive No. 635.10 Section 9, Crowd Dispersal, is the analysis discussed under *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015). In *Sheehan*, the Court held that the ADA applied to arrest situations:

> The ADA therefore applies to arrests, though we agree with the Eleventh and Fourth Circuits that exigent circumstances inform the reasonableness analysis under the ADA, just as they inform the distinct reasonableness analysis under the Fourth Amendment.

*Id*. at 1232.

The Court goes on to discuss that courts have recognized at least two types of Title II claims applicable to arrests: (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees. *Id.*

In nearly all incidents detailed in Plaintiffs' Complaint, PPB declared a civil disturbance and ordered the crowd to disperse. At the point where riot control agents are in use, it is difficult

Page 13  – CITY OF PORTLAND'S MOTION TO DISMISS

to interact with protesters on an individual basis in order to assess whether a request for an ADA accommodation has been made and can be reasonably granted.  Plaintiffs' claims fail because PPB's actions or inactions taken under those exigent circumstances are reasonable under the *Sheehan* analysis.

Finally, as discussed above, the City is subject to limitations on its use of riot control agents under Directive No. 635.10 Section 9, Crowd Dispersal, in connection with other litigation, as well as the Mayor's directive to PPB regarding the use of CS gas.  Implicit in these orders is the underlying acknowledgment that Directive No. 635.10 Section 9 is a fundamental part of PPB's programs and activities.  Plaintiffs' requested relief would fundamentally alter PPB's programs and activities and serve as a significant deterrent in PPB's ability to maintain public order.

C.    Plaintiffs Have Failed to Plead a Violation of Their First Amendment Rights

The City requests Plaintiffs' Third claim for relief be dismissed pursuant to Rule 12(b)(6).  Plaintiffs allege PPB's actions deter Plaintiffs' participation in protest-related activities.  Compl. ¶227 - 228.  Plaintiffs additionally allege claims of First Amendment retaliation because their protest-related activities involve speech related to challenging law enforcement conduct.  *Id*.  Compl. ¶229.

The question in a First Amendment retaliation case is whether the defendant "deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct."  *Mendocino Envtl. Ctr.*, 14 F.3d at 464 (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir.1994) (alterations in original)).  To properly allege such a cause of action, a plaintiff must allege that the speech at issue is "protected activity" under the First Amendment.  *Id.*  Here, Plaintiffs have not established that a First Amendment inquiry is even appropriate.

Plaintiffs' participation in protests is generally considered protected expression; however, that does not mean it was protected at the relevant time.  Two plaintiffs, Wolfe and

Page  14  – CITY OF PORTLAND'S MOTION TO DISMISS

Simonis, do not claim press status and are subject to all dispersal orders.  Plaintiffs Lewis and Durden identify as press and are subject to lawful dispersal orders as provided in the current Order entered in *Index News.  (Index Newspapers*, ECF No. 48). That injunction specifically does not enjoin local law enforcement's ability to declare an unlawful assembly and disperse a crowd: "The Police may issue otherwise lawful crowd-dispersal orders for a variety of lawful reasons.  The Police shall not be liable for violating this Order if a Journalist or Legal Observer is incidentally exposed to crowd-control devices after remaining in the area where such devices were deployed after the issuance by the Police of an otherwise lawful dispersal order."  *Id.*

On September 23, 2020, this Court extended an amended version of the preliminary injunction indefinitely until a final decision on the legal issues in the *Index Newspapers* case. The amended preliminary injunction added a statement that "No Journalist or Legal Observer protected under this Order may impede, block, or physically prevent the lawful activities of police."  (*See Index Newspapers*, ECF No. 185)

Plaintiffs, including those identifying as press, have no general or special right to ignore a lawful order to disperse.  Plaintiffs' choice not to vacate the area once a lawful order to disperse is given does not entitle them to the continued protections of the First Amendment. *See, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment"); *Colten v. Kentucky*, 407 U.S. 104, 106–09 (1972) (noting that there is "no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation" after being ordered to disperse); *Menotti v Seattle,* 409 F.3d 1113, 1155-56 (9th Cir. 2005) (noting that "a measure of discretion necessarily must be permitted" to the government officers "on the scene with direct knowledge, to fashion remedies to restore order once lost" and declining "to hold unconstitutional the City's implementation of procedures necessary to restore safety and security" when confronted by protesters with "violent and disruptive aims" that "substantially disrupt civic order"); *Hicks v. City of Portland*, No. CV 04- 825-AS, 2006 WL 3311552, at *12

Page  15  – CITY OF PORTLAND'S MOTION TO DISMISS

(D. Or. Nov. 8, 2006) ("Plaintiff had no protected First Amendment [right] to enter the street in violation of a lawful order to disperse.").

Even if Plaintiffs' expressive conduct was protected, Plaintiffs have not sufficiently alleged that deterring such expression was a "substantial or motivating factor" in the City's conduct, *Mendocino Envtl. Ctr.*, 14 F.3d at 464.  [A]s a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Nieves v. Bartlett*, 139 U.S. 1715, 1722 (2019).  If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim.  *Id.*  To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."  It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.  *Id.*, at 260, 126 S.Ct. 1695 (citing *Hartman v. Moore*, 547 U.S. 259, 285 – 286 (2006) recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

Indeed, Plaintiffs' own pleadings contradict one another.  On the one hand, Plaintiffs repeatedly allege that Defendants have used force "indiscriminately."  Compl. ¶3.  On the other hand, they allege that they were subjected to the very same force as a result of being targeted "specifically" and "directly" because of their "particularized message."  *Id.* ¶4.  But Plaintiffs do not allege any facts from which to reasonably infer that they were targeted for their particularized message (if that were actually protected by the First Amendment) or their general participation in the protest.

Page  16  – CITY OF PORTLAND'S MOTION TO DISMISS

Plaintiffs do not allege that the protests were peaceful or that there was no threat to safety during these incidents.  Instead, the scenes were chaotic and violent.  Compl. ¶ 97 (molotov cocktails), ¶ 106 (fires).  Plaintiffs' allegations do not establish that PPB intended to chill their message rather than simply to effectuate a dispersal.  The allegations show that the Plaintiffs were subjected to crowd control tactics that, by Plaintiffs' own admissions, were widely used in the tumultuous riots.  Given the chaotic circumstances presented by the violent protests, Plaintiffs have not established that the City would not have used force "but  for" a retaliatory motive, *Capp v. City of San Diego*, 940 F.3d 1046, 1059 (9th Cir. 2019)*.*  Accordingly, Plaintiffs First Amendment claims should be dismissed.

> D.    <u>Plaintiffs Have Failed to Plead a Violation of Their Fourth and Fourteenth Amendment Rights</u>

The City requests Plaintiffs' Fourth, Fifth, and Sixth claims for relief be dismissed pursuant to Rule 12(b)(6).  Plaintiffs allege that PPB violated Plaintiffs' rights under the Fourth and Fourteenth Amendments, by using excessive force and failing to provide adequate notice prior to use of force.  Compl. ¶¶247 -249; ¶¶269 -272.  Excessive force requires showing that the "use of force" was "objectively unreasonable under the circumstances." *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018).  It requires "balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  The reasonableness of police use of force must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and the analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396-97).

Plaintiffs have not pleaded sufficient facts to establish that the uses of force in the incidents they describe were objectively unreasonable.  Indeed, in determining the government's

Page  17  – CITY OF PORTLAND'S MOTION TO DISMISS

interest in the use of force—one side of the balancing test—the "most important" factor is the "immediate threat to the safety of the officers or others" posed by those against whom force is used; a situation in which officers are "greatly outnumbered and verbally and physically provoked" is "far more threatening" than a few obstinate protesters. *Felarca*, 891 F.3d at 817. Plaintiffs are careful in their Complaint to limit information about the potential threats facing public safety and PPB officers; however, the Complaint does provide glimpses of the chaotic and dangerous conditions caused by protestors. Compl. ¶ 97 (molotov cocktails), ¶ 106 (fires). What little information that exists suggests that there were substantial threats to safety.

Plaintiffs note that people have gathered for protests in Portland nearly every day since May 2020. *Id.*¶2 . Officers have a "'safety interest in controlling' a mass of people," *Felarca*, 891 F.3d at 817 (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001)), and that interest is only heightened when a group refuses to disperse after warnings (such as that a chemical irritant will be used), even more so when individuals attempt to interfere with officers' attempts to maintain order, *Jackson*, 268 F.3d at 653. In such situations, with crowds far smaller than here, the types of force allegedly employed here have been found reasonable.

In this case, Plaintiffs assert their excessive force claim as fruit of either an unconstitutional policy or, in the alternative, a constitutionally valid policy but otherwise unlawful practice. Complaint, ¶¶255 - 257. Regardless of either alleged scenario, the *Graham* reasonableness force standard still applies for excessive force claims. For that reason alone, this claim fails the *Iqbal/Twombly* pleading standard.

Plaintiffs cannot show that the City's alleged excessive force was the product of a custom or policy of the City and was the moving force behind its alleged injury. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv., 572 F.3d 962,* 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, Plaintiffs' Fourth, Fifth, and Sixth claims should be dismissed.

Page  18  – CITY OF PORTLAND'S MOTION TO DISMISS

E.    The Court Should Dismiss Defendant Mayor Ted Wheeler and Defendant Chuck
Lovell From This Lawsuit.

When a plaintiff brings a lawsuit against a government officer in his official capacity, a

court treats the suit "as a suit against the entity" that employs the officer. *Kentucky v. Graham*,

473 U.S. 159, 166 (1985); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658,

690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an

action against an entity of which an officer is an agent."). Courts may dismiss as redundant a

defendant sued in his or her official capacity when the plaintiff has also sued the entity that the

officer represents. *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533

F.3d 780, 799 (9th Cir. 2008); *see also Updike v. Clackamas County*, No. 3:15-cv-00723-SI,

2015 WL 7722410, at *3-*4 (D. Or. Nov. 30, 2015) (dismissing claims brought against the

Clackamas County Sherriff because they were redundant with claims brought against

Clackamas County).

Plaintiffs' Complaint contains allegations only of Mayor Wheeler's conduct in his

official capacity. The Complaint does not contain allegations that Mayor Wheeler directed use

of force or ADA accommodation decisions or policy outside his official capacity as

"Mayor/Police Commissioner." (*See* Complaint, ¶18). Plaintiffs' claims against Mayor

Wheeler in his official capacity are redundant and duplicative of their claims against the City;

therefore, the court should dismiss all claims against Mayor Wheeler from this lawsuit.

Similarly, the City additionally requests dismissal of Chief Lovell. Plaintiffs' Complaint

only contains allegations against Chief Lovell in his official capacity. The Complaint is silent

as to Chief Lovell's involvement in use of force or failures to make accommodations pursuant

to the ADA. Plaintiffs include Chief Lovell in the Complaint solely by virtue of his official

capacity as Chief. (*See* Complaint, ¶19). Plaintiffs' claims against Chief Lovell in his official

capacity are redundant and duplicative of their claims against the City; therefore, the court

should dismiss all claims against Chief Lovell from this lawsuit.

The City's arguments above at Sections B - D requesting dismissal of the claims against

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

the City for failure to state a claim apply equally to Mayor Wheeler and Chief Lovell.

Defendants Mayor Wheeler and Chief Lovell incorporate those arguments and respectfully

request that the Court dismiss the claims against them.

## VI.    CONCLUSION

Based on the foregoing, the City respectfully requests that this Court dismiss Plaintiffs'

claims consistent with this Motion.

Dated:  March 15, 2021

Respectfully submitted,

DANIEL SIMON, OSB #124544
Deputy City Attorney
dan.simon@portlandoregon.gov
LINDA LAW, OSB #943660
Chief Deputy City Attorney
linda.law@portlandoregon.gov
LINH T. VU, OSB #004164
Senior Deputy City Attorney
linh.vu@portlandoregon.gov
ELIZABETH C. WOODARD, OSB #075667
Deputy City Attorney
beth.woodard@portlandoregon.gov
*Of Attorneys for City of Portland, Ted Wheeler*
*and Chuck Lovell*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047