IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PHILIP WOLFE**, **KATALINA DURDEN**, and **JACKSON TUDELA**, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF PORTLAND**, a Oregon municipal corporation; **MULTNOMAH COUNTY**, a political subdivision of the State of Oregon; and **DOES 1-100**,<br><br>Defendants. | Case No. 3:20-cv-1882-SI<br><br>**OPINION AND ORDER** |

Rian Peck, VISIBLE LAW, 333 SW Taylor Street, Suite 300, Portland, OR 97204; Christopher H. Knauf, Alexandra M. Robertson, and Corrigan L. Lewis, DISABILITY RIGHTS LEGAL CENTER, 1541 Wilshire Boulevard, Suite 400, Los Angeles, CA 90017. Of Attorneys for Plaintiffs.

Daniel Simon, Deputy City Attorney; Linda Law, Chief Deputy City Attorney; Linh T. Vu, Senior Deputy City Attorney; Elizabeth C. Woodard, Deputy City Attorney; PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW 4th Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendant City of Portland.

Jenny M. Madkour, County Attorney, and Christopher A. Gilmore, Senior Assistant County Attorney, THE OFFICE OF MULTNOMAH COUNTY ATTORNEY, 501 SE Hawthorne Boulevard, Suite 500, Portland, Oregon 97214. Of Attorneys for Defendant Multnomah County.

**Michael H. Simon, District Judge.**

Plaintiffs Philip Wolfe and Katalina (Katie) Durden are individuals with disabilities, and

Plaintiff Jackson (Jack) Tudela is an individual associated with Plaintiff Durden, their sighted

guide. Plaintiffs filed the First Amended Complaint (FAC), after the Court granted motions to dismiss filed by the state and federal defendants challenging the original complaint. The FAC brings claims only against the City of Portland (City) and Multnomah County (County). Plaintiffs allege that Defendants violated Plaintiffs' rights as persons with disabilities or associated with persons with disabilities in Defendants' responses to social justice protests in Portland. Plaintiffs allege that the City and County violated Title II (Section 202) of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Rehabilitation Act) in responding to protests and dispersing crowds. Plaintiffs request injunctive and declaratory relief and money damages.

In resolving the first motions to dismiss, the Court assumed that Plaintiffs had standing as of the commencement of this litigation on November 1, 2020. The Court found, however, that Plaintiffs' claims for injunctive and declaratory relief were moot because Plaintiffs no longer could show the requisite legally cognizable interest—certainly impending injury—to support equitable relief. *See Wolfe v. City of Portland*, --- F. Supp. 3d ---, 2021 WL 4713237, at *6-11 (D. Or. Oct. 8, 2021). The Court focused on the changed circumstances with the protests in Portland, particularly in the months of May, June, July, and August, 2021. *Id.* at *9-11. The Court also found that with respect to Plaintiffs' claims under the ADA and the Rehabilitation Act, Plaintiffs did not allege deliberate indifference. *Id.* at *15, 17.

In the pending motions to dismiss, the City and County each argue that Plaintiffs fail to cure the deficiencies the Court identified in dismissing the original complaint. Defendants argue that Plaintiffs' lack standing or the case is moot because Plaintiffs fail sufficiently to allege the required injury for future injunctive relief. Defendants also argue that Plaintiffs fail sufficiently to allege deliberate indifference to recover monetary relief and, alternatively, fail to allege facts

PAGE 2 – OPINION AND ORDER

sufficient to support a claim for relief on the merits. For the reasons discussed below, the Court grants Defendants' motions and dismisses this case with prejudice.

## STANDARDS

### A. Rule 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**B. Rule 12(b)(1)**

The U.S. Constitution confers limited authority on the federal courts to hear only active cases or controversies brought by persons who show standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 89-90 (2013). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547. A plaintiff's standing under Article III of the United States Constitution is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)."). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Chandler*, 598 F.3d at 1122; *see also Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack on subject matter jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would

otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

### C. Standing

To have standing, a plaintiff must have a "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The required personal interest must satisfy three elements throughout the litigation: (1) an injury in fact, *i.e.*, an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81, 189; *see also Spokeo*, 136 S. Ct. at 1547 (reiterating that the "irreducible constitutional minimum" of standing consists of "an injury in fact . . . fairly traceable to the challenged conduct of the defendant, and . . . likely to be redressed by a favorable judicial decision").

An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). An injury is "concrete" if it is "'*de facto*'; that is it must actually exist," meaning that it is "'real' and not 'abstract.'" *Id.* "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, [the Supreme Court has]

PAGE 5 – OPINION AND ORDER

confirmed in many . . . previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549.

A plaintiff "must show standing with respect to each form of relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). To establish Article III standing to seek injunctive relief, a plaintiff must "allege either 'continuing, present adverse effects'" of a defendant's past illegal conduct, "or 'a sufficient likelihood that [he] will again be wronged in a similar way.'" *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), and *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). Additionally, standing to seek equitable relief requires "a showing of an inadequate remedy at law and . . . a serious risk of irreparable harm." *Pulliam v. Allen*, 466 U.S. 522, 537 (1984); *see also O'Shea*, 414 U.S. at 499.

When a plaintiff seeks prospective injunctive relief, threat of repeated future injury may suffice to provide standing. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014). As explained by the Ninth Circuit:

> A plaintiff seeking prospective injunctive relief "must demonstrate 'that he is realistically threatened by a *repetition* of [the violation].'" *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (alteration in original) (quoting *City of L.A. v. Lyons,* 461 U.S. 95, 109 (1983)), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). A threat of repetition can be shown "at least two ways." *Id.* at 861. "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Id.* "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'" *Id.* (alterations in original) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985)).

*Id.* (emphasis and alterations in original). The threat of repeated future injury, however, may not be "conjectural or hypothetical." *O'Shea*, 414 U.S. at 494 (quotation marks omitted).

PAGE 6 – OPINION AND ORDER

Further, concerns about separation of powers counsel careful scrutiny of a plaintiff's standing to seek injunctive relief against government officials. As the Supreme Court cautioned:

> When transported into the Art. III context, [the principle that the Government has traditionally been granted the widest latitude in conducting its own internal affairs], grounded as it is in the idea of separation of powers, counsels against recognizing standing in a case brought, not to enforce specific legal obligations whose violation works a direct harm, but to seek a restructuring of the apparatus established by the Executive Branch to fulfill its legal duties. The Constitution, after all, assigns to the Executive Branch, and not to the Judicial Branch, the duty to "take Care that the Laws be faithfully executed."

*Allen v. Wright*, 468 U.S. 737, 761 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *see also Lyons*, 461 U.S. at 112 ("We decline the invitation to slight the preconditions for equitable relief [irreparable injury]; for as we have held, recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate.").

## DISCUSSION

The City moves to dismiss Plaintiffs' equitable claims for lack of standing. The County moves to dismiss for lack of standing or mootness. Both Defendants move to dismiss the claims for compensatory damages because Plaintiffs fail sufficiently to allege deliberate indifference. Both Defendants also argue that Plaintiffs fail to state a claim on the merits for several reasons. Because the Court finds that Plaintiffs' claims for equitable relief are moot and their claims for money damages fail because Plaintiffs do not sufficiently allege deliberate indifference, the Court declines to reach Defendants' remaining arguments.

**A. Standing and Mootness—Claims for Equitable Relief**

Defendants raise factual challenges to the Court's jurisdiction under Rule 12(b)(1). Thus, the Court considers documents and evidence outside the pleadings. *See Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (stating that in a 12(b)(1) motion "[a] district court may hear evidence regarding jurisdiction and resolve factual disputes where necessary" (simplified)); *Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993) (stating that "it *is* proper for the district court to consider evidence outside of the pleadings for the purpose of deciding a jurisdictional issue (emphasis in original)); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

**1. Standing**

Defendants and Plaintiffs focus on standing, apparently considering standing as of the date the FAC was filed. Standing, however, is considered as of the date the case was commenced (November 1, 2020), and not the date the FAC was filed (December 10, 2021). *See, e.g.*, *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) ("Importantly, in reaching this [standing] determination, we note that Article III standing must be determined as of the time at which the plaintiff's complaint is filed."); *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001) ("[S]tanding does not have to be maintained throughout all stages of litigation. Instead it is to be determined as of the time the complaint is filed."); *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) ("Standing is examined at 'the commencement of the litigation.'"); *McFalls v. Purdue*, 2018 WL 785866, at *8 (D. Or. Feb. 8, 2018) (rejecting the argument that standing is considered at the time of the filing of the second amended complaint, considering standing as of the commencement of the litigation, and

evaluating the case for mootness); *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, 2013 WL 1294647, at *7-8 (D. Or. Mar. 27, 2013) (rejecting the defendant's arguments that standing should be considered based on the facts at the time of the second amended complaint when the government had voluntarily disbanded the challenged conduct and discussing the difference between standing and mootness).

The Court previously assumed without deciding that Plaintiffs had standing as of the commencement of this litigation. *See Wolfe*, 2021 WL 471323, at *5. The Court does so again for purposes of this motion, and evaluates whether the case is moot based on the record evidence and new allegations in the FAC.

**2. Mootness**

As the Court emphasized in resolving the first motions to dismiss, "[a] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001), *as amended* (Aug. 15, 2001) (quotation marks omitted). "The phrase 'legally cognizable interest' is often used to describe Article III's case or controversy requirements when mootness is at issue, while the phrase 'injury in fact' is often used to discuss these requirements when standing is at issue." *Id.* at 1011 n.7. In considering the injury requirement and mootness when a plaintiff requests future injunctive relief, courts must consider whether the plaintiff's "future injuries are now too conjectural or hypothetical to satisfy the injury-in-fact requirement allowing [the plaintiff] to pursue injunctive relief." *Id.* at 1012. "A plaintiff may not rely 'on mere conjecture about possible governmental actions' to demonstrate injury, and must instead present 'concrete evidence to substantiate their fears.'" *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 825 (9th Cir. 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013).

Plaintiffs' allegations regarding the protests and law enforcement response by Defendants are not meaningfully different from the allegations and record facts the Court considered in previously holding that the facts were insufficient to show impending injury sufficient to claim future injunctive relief. Plaintiffs now argue that they sufficiently allege injury under the "deterrent effect doctrine" to seek future injunctive relief under the ADA and Rehabilitation Act. Under this doctrine, "[t]he first element of the Article III standing analysis—injury in fact—can be satisfied in ADA cases by showing that the plaintiff was deterred from attempting to visit a location or use a service because of alleged ADA noncompliance." *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1092 (9th Cir. 2020). The plaintiff must encounter a barrier that interferes with the plaintiff's full and equal enjoyment of the facility on account of the plaintiff's disability. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (en banc).

The Ninth Circuit further explained that under this doctrine

> a plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation. Just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's "existing or imminently threatened noncompliance with the ADA," a plaintiff who is deterred from patronizing a store suffers the ongoing "actual injury" of lack of access to the store.

*Id.* at 950; *see also Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1040-41 (9th Cir. 2008) (applying the deterrent effect doctrine when the plaintiff had visited the 7-11 store, encountered its accessibility barriers, been deterred from visiting further because of the accessibility barriers even though the store was conveniently located and the plaintiff's preferred store, and thus concluding there was "an actual or imminent threat that, during his planned future visits to Anaheim, [he] will suffer harm as a result of the alleged barriers").

Additionally, "an ADA plaintiff demonstrates a sufficient likelihood of future harm to establish standing to sue for an injunction when he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury." *Chapman*, 631 F.3d at 948. This is a second way in which an ADA plaintiff may show standing (or that a case is not moot), and Plaintiffs also argue that it applies.

Plaintiffs' arguments that these two methods of showing a live case or controversy apply here are unavailing. Plaintiffs allege that they are deterred from attending protests and that they would like to return to protesting but are concerned that they would suffer injury if they do. Such conclusory allegations of elements of a claim, however, are not accepted as true in considering a motion to dismiss. This case is not like the cases applying the deterrent effect doctrine or injury from an intent to return to a place with barriers because Plaintiffs do not allege a permanent architectural barrier or anything similar. Plaintiffs do not allege an *existing* or *imminent* barrier. The "barrier" alleged by Plaintiffs only occurs if there is a protest that is declared an unlawful assembly, that unlawful assembly results in police action, that police action results in excessive force, and that excessive force is directed at or near Plaintiffs. The string of events that must occur is too speculative at this point, when protests are sporadic, of those sporadic protests the ones declared unlawful assemblies are minimal, and of those few declared unlawful assemblies there are no allegations that any in the last several months involved excessive force. Thus, Plaintiffs fail to allege a barrier that will "likely" cause Plaintiffs to suffer injury upon their return, *see Chapman*, 631 F.3d at 948, or facts that show reasonable deterrence because Plaintiffs face "an actual or imminent threat" that during a future protest Plaintiffs "will suffer harm as a result of the alleged barriers." *Doran*, 524 F.3d at 1041; *see also Chapman*, 631 F.3d at 950. Accordingly, Plaintiffs' claims for equitable relief are dismissed.

PAGE 11 – OPINION AND ORDER

B.  **Claims for Monetary Damages**

  1.  **Legal Standards for a Damages Claim by a Private Plaintiff**

The Ninth Circuit held in *Ferguson v. City of Phoenix*, that "compensatory damages are not available under Title II . . . absent a showing of discriminatory intent." 157 F.3d 668, 674 (9th Cir. 1998). The panel declined to establish a standard for showing discriminatory intent, leaving open whether "deliberate indifference" or "discriminatory animus" could make the requisite showing. *Id.* at 675.

In *Duvall v. County of Kitsap*, the Ninth Circuit resolved that open issue and held that the "deliberate indifference" standard applies to prove the requisite intentional discrimination to "recover monetary damages under Title II of the ADA or the Rehabilitation Act." 260 F.3d 1124, 1138-39 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Id.* at 1139. The plaintiff must also "identify 'specific reasonable' and 'necessary' accommodations that the defendant failed to provide." *Id.*

A recent decision by the Supreme Court forecloses emotional distress damages under the Rehabilitation Act and thus likely also under the ADA, for which remedies are construed coextensively with the Rehabilitation Act. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022). This decision reiterated that other compensatory damages and injunctive relief are available and that punitive damages are unavailable. *See id.* at 1571.

  2.  **Whether Plaintiffs Allege Such a Claim**

No Plaintiff sufficiently alleges deliberate indifference. Plaintiffs' allegations do not show that the City or County knew that their law enforcement *policies and procedures* with respect to protests were *substantially likely* to harm a federally protected right. Regarding Plaintiff Durden, who is blind, and their sighted guide Plaintiff Tudela, Defendants' procedures

involve making many audio announcements (sometimes for hours) before any further action is taken. Plaintiffs do not explain how the many audio announcements are not sufficient for Plaintiffs Durden and Tudela to reach safety before further police action.

As for Plaintiff Wolfe, who is deaf, Plaintiffs allege that Defendants could implement accommodations such as a live ASL interpreter or mobile video boards. Plaintiffs allege that Defendants have done nothing other than implement a Twitter account that posts notifications. The Twitter account, however, is a visual medium that is accessible to deaf persons. Plaintiffs also fail to allege that their proposed accommodations are *reasonable* and *necessary*. *See Duvall*, 260 F.3d at 1139. As Defendants have explained, given the volatile and sometimes dangerous nature of protests, adding a live ASL translator is not safe and given the attacks on police vehicles and other property, having a mobile video screen was also considered and rejected. Because Plaintiffs fail to allege deliberate indifference, their claims for money damages are dismissed.

## CONCLUSION

The Court GRANTS the motions to dismiss filed by Defendants Multnomah County (ECF 152) and the City of Portland (ECF 153). Because Plaintiffs previously had a chance to amend and could not state a claim, this case is dismissed with prejudice.

**IT IS SO ORDERED**.

DATED this 10th day of June, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge